# DECLARATION OF J.R.H.L.

I, **J.R.H.L.**, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is **J.R.H.L.**. I wish to proceed in this lawsuit using my initials J.R.H.L.

2. I am 47 years old. I came to the U.S. in 2007, and have lived in Wyandanch, on Long Island, New York, basically ever since.

3. I have never had any contact with law enforcement or immigration enforcement. Prior to this incident, I have never been arrested.

4. I work six days a week as a landscaper with a company in Amityville, New York. I have worked there for five years. Previously, I worked in remodeling but changed because of the pandemic. Each day, I travel from Wyandanch to the company headquarters in Amityville by bus. The bus stop is a short walk from my home. I have lived in this house for almost 13 years. I have used this bus stop for the past 5 years to get to work. Many people in Wyandanch are Hispanic. So, many Latino men, like me, use this bus stop to get to and from work.

5. The walk takes me through a public parking lot that is just across the street from my home. I cross through this parking lot to get to the bus stop every day. The parking lot is large and has entrances from both sides, one right in front of my house, and one next to the bus station on the other side.

6. On June 7, 2025, at around 7:30 am, I left the house to go to work, as I always do. I crossed the street from my home into the parking lot as I did every other workday before this. The lot had some cars in it, but it was not completely full.

7. As I was walking through the middle of the parking lot, I saw four cars. Three were behind me, and one drove past me on my right and stopped in front of me. I turned around and the one car stopped behind me, blocking me in. There were two more cars stopped behind that one, a little further away. All four of the cars had black tinted windows, two were red and two were green. All four cars were unmarked and just looked like normal cars to me.

8. I was so surprised when the cars stopped in front and behind me. The cars weren't marked, so I felt overwhelmed and scared. I could not leave because the cars were blocking me in from the front and back.

9. A man came out of the car in front of me wearing a bullet-proof vest. It was really intimidating.

10. The man who came out of the car had a pistol at his belt and asked me in Spanish, "We are looking for someone, can you help us?" He then showed me a photo of a man and asked whether I had seen him around in the area. The man did not say whom he worked for or that he was ICE.

11. I was surprised when they stopped me and even more so when they surrounded me in the parking lot, and I was very worried that something was wrong. I was scared and couldn't go anywhere, so I followed their directions and looked at the photo they held up. After looking at the photo for some time I responded in Spanish that I thought I had seen the man in the photo around the area. The photo was of a younger Latino man probably in his early 20s with longer hair. The man in the photo did not look like me. I told them I was sorry that I couldn't help more and tell them his name, where he lived, or how to help them find him. The photo was of a Hispanic man, and Wyandanch is a very Hispanic town.

12. Immediately after I answered in Spanish, the officer asked me whether I had legal status. I never mentioned anything about my status or where I was from before this. He assumed I was from a different country. When he asked this, the four cars were still surrounding me and there were two other agents behind me. All of the agents were armed. When I answered his question, he asked if I had ID, and I gave my ID to him. He said he had to go to his car to check my documents and talk to his boss. At that point, three more armed officers came out of the three remaining vehicles and encircled me. In total there were six armed officers around me.

13. About two minutes later, the first officer came back. His supervisor, another man, came out of one of the cars. The first officer told me he had to arrest me. Then he searched my pockets, put handcuffs on me, and told me I was under arrest. The officer then took out his handcuffs from his pocket and told me I was under arrest.

14. The officers never told me who they were or where they were from before they stopped me and started asking me questions. It all happened so fast, I didn't think to ask. I couldn't go anywhere because the officers surrounded me, so I didn't resist and just tried to answer their questions to the best of my ability so I could continue on my way to work. Had I known they were ICE, I never would have said anything.

15. None of the agents at any point in the parking lot ever identified themselves, presented a warrant, explained why they stopped me, or indicated that they knew me or my name prior to stopping me. None of the agents asked me any questions about my connections to the community, how long I've been living and working in New York, my family here, or anything else about my life prior to putting handcuffs on me.

16. I was then placed into the green car and taken first to a fire station, where they took my fingerprints and a photo of my face. They then jailed me in Central Islip for a day, after which I was transferred to Nassau County Jail, where I stayed for five days. They did not let me shower, change my clothes, or brush my teeth at all during that time.
17. After that, the officers took me to Federal Plaza in Manhattan for a short period of time, like 30 minutes. Then they took me to Orange County Jail. While I was detained at Orange County Jail, I spoke with several people who said the same thing that happened to me happened to them, in Wyandanch and in other towns on Long Island. Several people told me that they were stopped by agents who told them they were looking for someone, shown a photo of a Hispanic man, and then arrested immediately after speaking Spanish or responding in a Spanish accent.
18. I have never been arrested in my life before this incident.
19. I remained at Orange County Jail until the Immigration Judge ordered me released me from custody on a $10,000 bond on August 4, 2025. I was then released on August 6, 2025.
20. As a result of my arrest and detention, I was away from my family for nearly two months, during which time I was unable to work.
21. Since my release, I have returned to my home in Wyandanch, New York. I went back to work at my old landscaping job. I take the same path from my house to the bus stop where ICE stopped and arrested me. I am very afraid of being arrested and detained by ICE again. Since my release, I rarely leave my home. Sometimes I will take an Uber or taxi. Sometimes when I see a car driving towards me, I worry there are agents coming to get me again. I get anxious just thinking about leaving my home. But, I have to work to survive, so I must leave my house despite my fear and anxiety.

22. I also still have to go to ISAP check-ins as a part of my release. I am very nervous being in the same room as immigration agents. I worry that I could be arrested at an ISAP check-in. I have to send a photo of my face every week. Once a month, I have to go to the ISAP office in-person. And an ISAP official will visit my home once a month.

23. I understand that in filing this lawsuit, I am seeking to be a class representative for other people who are or will be in a similar situation to me. If this case is certified as a class action, I am willing and able to represent the class and its interests, with the help of my lawyers.

24. I would like to continue under the initials J.R.H.L. I am working with my immigration attorney to seek immigration relief. As a result, I fear I would face retaliation and grave danger if my persecutors in my home country were to learn of my immigration claims through this lawsuit. I am also afraid of retaliation towards me if my identity were to become public due to my participation in this lawsuit. I am afraid I will be retaliated against and harassed by members of the public on social media given recent reports about people harassing noncitizens online.

25. This declaration was read to me in full in Spanish, the language I understand best on March 23, 2026, by Nelson Perez-Hamilton, a paralegal for The Legal Aid Society, I completely understand the content of this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Wyandanch, New York

Executed on 3/23/26
Date

J.R.H.L.

CERTIFICATE OF TRANSLATION

I, Nelson Perez-Hamilton, declare under penalty of perjury:

1. I am competent to interpret between English and Spanish and certify that I have read the attached Declaration of J.R.H.L. into Spanish.
2. The interpretation I provided is true and accurate to the best of my abilities.
3. J.R.H.L. stated that he understood the document's contents.

Dated: March 23, 2026

Nelson Perez-Hamilton