# DECLARATION OF L.R.C.

I, L.R.C., pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is L.R.C. I am making this declaration using my initials L.R.C. I am 48 years old, I am Latino, and I have lived in New York City since 2024. I was born in Venezuela, and I left to seek asylum in the United States.
2. In April of 2024, I spent three days in Border Patrol custody near El Paso, Texas. I was placed in non-detained removal proceedings and released.
3. On June 5, 2024, I filed an application for asylum, withholding of removal, and protection under the Convention Against Torture.
4. On December 4, 2024, my application for employment authorization was approved for a period from December 2, 2024, to December 1, 2029.
5. Following my release, I lived in several shelters in Brooklyn and in the Bronx. Each time I moved, I filed an E-33 change of address form telling ICE where I was living.
6. On June 11, 2025, I commuted three and a half hours from the Bronx to Long Island, where I was working six days a week, Monday through Saturday.
7. On June 11, 2025, around 8:30 a.m., I was standing by the Green Street Station in Glen Cove, in the parking lot. I often do this to find work. Many people gather there to do the same thing. There were around six of us that day, all standing separately. All of us were Latino. We were speaking in Spanish.
8. There was one car nearby that was parked for around ten minutes. It was not marked. One person came out of the car. He was just wearing a black sweater, and he did not approach us. I had a feeling something strange was about to happen. Around ten or fifteen minutes later, about seven unmarked cars arrived and surrounded us. People came out of the cars.

There were around 8 or 9 officers total. They were wearing bulletproof vests, some of them said "ICE" and some of them said "FBI." Two people in the group ran away, and three officers chased after them. I did not run away and remained standing where I had been, as did three others.

9. Three of the officers approached us. One officer immediately began to speak Spanish to us. They showed us a picture of a man they were looking for and asked if we knew him. The picture was of a white man with blonde hair. I look Latino, and my hair is much darker, and did not look anything like the man in the photo, nor did any of the other people standing there looking for work. All of us said we did not know the man.

10. The Spanish speaking officer asked me why I didn't run away like the others. I told him I had no reason to run and I have never committed any crime. I also knew that I had a valid work permit, so I believed that there was no reason to be afraid. But even if I wanted to leave, I could not have left, because there were so many officers with vests on near us, all of whom were armed with pistols, and their cars were surrounding us.

11. The officers then asked all of us for ID. I showed them my employment authorization card, which is valid until 2029. I don't think any of the other men I was with had work permits. The Spanish speaking officer asked me why I was all the way out in Long Island if I lived in the Bronx, I told him I work in Long Island. I pointed out that my work authorization was still valid and showed him the paperwork for my next check-in and immigration court date. The officials took my card and papers, went back to their car to check it on their computer.

12. When they returned, they said that "everything was fine," but I still "had to see the judge," and immediately placed all of us in handcuffs. I did not make any attempt to resist arrest.

There were four of us in total.

13. I don't understand why they detained me, because I have valid work authorization and I showed it to them.

14. At no point did any of the people identify themselves as immigration officers. I only guessed because of the vests.

15. None of the agents at any point ever identified themselves, presented a warrant, explained why they stopped me, or indicated that they knew me or knew my name prior to stopping me. They did not tell me I had the right to remain silent or anything. Nor did any of them ask me any questions about my ties to the community, how long I've been living and working in New York, my family here, or anything else about my circumstances.

16. After they handcuffed me, they took me to a facility in Long Island—I think it was Central Islip. I asked the officials there why I was being detained. They said it was probably just a mistake and that I would have to spend four days in detention before I could see a judge. This made me feel calm because I thought someone would figure out the mistake, and they would see that I had followed all the rules by applying for asylum and getting work authorization. In fact, I did not see a judge until 21 days later, and I was detained for over six months.

17. That same day, June 11, 2025, they moved me to 26 Federal Plaza. I was there for six days. There were a lot of people, maybe more than 65 people, in a very small area. The conditions were very bad. They gave us all just one blanket each, and we had to sleep on the floor. Because I slept on the floor, I grew fungus on my back. The conditions of the bathroom were horrible, so no one wanted to go in there. They gave us food maybe once or twice a day, some kind of soup that looked like combat rations from the military. After three days

at Federal Plaza, they allowed me to make a phone call, and I called my niece.

18. Afterward, I was taken to Nassau County Jail for three days. Then they brought me back to Federal Plaza for one day. Then they transferred me to the Metropolitan Detention Center ("MDC").

19. I remained at MDC until a federal judge granted my petition for habeas corpus, and I was released on December 19, 2025. Since my release, I have been required to check in with ICE at 26 Federal Plaza. I attended a check-in yesterday, and my next check-in is scheduled for June 9, 2026.

20. As a result of my arrest and detention, I was away from my family for months, and I lost nearly six months' wages.

21. Since my release, I now live in Manhattan with my niece, her husband and daughter.

22. To this day, I really don't understand why I have been detained. I am a law-abiding person in the United States. I have never even been arrested or charged with a crime. I have a pending asylum application I submitted in June 2024 and work authorization valid through 2029. I don't understand why I was detained, even after showing my valid work authorization.

23. I have not had any interactions with law enforcement. I have never been convicted of any crime/offense, and I have not had any issues with meeting deadlines or appearing in court in relation to my immigration case.

24. I am deeply fearful as a result of my illegal arrest and detention. I am terrified that ICE will stop, arrest and detain me again.

25. I believe I was stopped and arrested solely because of the color of my skin and my appearance, as it was clear that the arresting officer did not know who I was, did not present

any warrant, and did not say why I was stopped and/or why I was being arrested. Since I have been released, I have started working for a laundry company in Far Rockaway. I take the train to and from work five days each week. My walk from the train station to the building where I work is 12 minutes away. I have heard people saying that ICE has been seen in that area, and I am afraid that I will again encounter them on my way to or from work, and that they will stop and arrest me again for no reason.

26. Even though I have a valid work authorization, and should not have been arrested or detained before, showing it to the ICE agents did not protect me before. All I was doing when they stopped me was standing on the corner looking for work, and which I have to do in order to support myself. I am worried that even if I show ICE my employment authorization card, they will detain me again for no reason.

27. This declaration was read to me in full in Spanish on March 20, 2026, by Gabriela Ghaffar. I completely understand the content of this declaration.

28. Due to my pending application for asylum, withholding of removal, and protection under the Convention Against Torture, I fear I would face retaliation and grave danger if my persecutors in Venezuela were to learn of my immigration claims through this lawsuit. I am also afraid of retaliation towards me and my family may face if my identity were to become public as a result of my participation in this lawsuit. I am afraid that me and my family members will be retaliated against and harassed by members of the public on social media given recent reports about people harassing noncitizens online.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
Executed on March 20, 2026

L.R.C.

## CERTIFICATE OF TRANSLATION

I, Gabriela Chaffar, declare under penalty of perjury:

1. I am competent to interpret between English and Spanish and certify that I have read the attached Declaration of L.R.C. into SPANISH.
2. The interpretation I provided is true and accurate to the best of my abilities.
3. L.R.C. stated that he understood the document's contents.

Dated: March 20, 2026

[signature]

Signature of Translator