FILED
CLERK
5/12/2026 11:27 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X **Docket#**
BENITEZ et al., : 26-cv-02082-SJB-JMW
:
Plaintiff, :
:
- versus - : U.S. Courthouse
: Central Islip, New York
U.S. DEPARTMENT OF HOMELAND :
SECURITY et al., :
: May 11, 2026
Defendants :
-------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR HEARING
BEFORE THE HONORABLE JAMES M. WICKS
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**

**For the Plaintiffs:**

**Jeffrey Cao, Esq.**
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001

**Giovanni Scarcella, Esq.**
**Cecile Duncan, Esq.**
Covington & Burling LLP
30 Hudson Yards
New York, NY 10001

**Amy Belsher, Esq.**
**Wafa Junaid, Esq.**
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004

(Appearances continue on next page)

**Transcription Service:**

**Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

APPEARANCES CONTINUED

**For the Plaintiffs:**

**Evan Henley, Esq.**
**Brian Perbix, Esq.**
**Hasan Shafiqullah, Esq.**
**Meghna Philip, Esq.**
The Legal Aid Society
49 Thomas Street
New York, NY 10013

**Harold A. Solis, Esq.**
Make the Road New York
301 Grove Street
Brooklyn, NY 11237

**For the Defendants:**

**Diane C. Leonardo, Esq.**
**Thomas R. Price, Esq.**
United States Attorneys Office
Long Island Courthouse
610 Federal Plaza
Central Islip, NY 11722

THE CLERK: Calling civil case 26-cv-02082, *Benitez et al. v. U.S. Department of Homeland Security et al.*

Counsel, please state your appearances for the record.

MR. CAO: Good afternoon, your Honor. Jeffrey Cao; Covington & Burling, co-counsel to plaintiffs.

THE COURT: Afternoon, Mr. Cao.

MR. CAO: With me, your Honor, Giovanni Scarcella and Cecile Duncan from my firm; Amy Belsher and Wafa Junaid from the New York Civil Liberties Union; a number of attorneys from The Legal Aid Society, Evan Henley, Brian Perbix, Hasan Shafiqullah; as well as Harold Solis from Make the Road New York. And I apologize, Meghna Philip from The Legal Aid Society is here as well.

THE COURT: Okay. Apologies not needed. Welcome, everybody. And for the government?

MS. LEONARDO: Good afternoon, your Honor. Diane Leonardo and Thomas Price, Assistant United States Attorneys.

THE COURT: Afternoon to both of you.

Okay. So I saw the filing of today that came in around noon. I've been in and out of a conference myself but I did take a look at it. Looks like you're

close but not quite there. The sticking point seems to be the attorneys' eyes only provision, whether information could be used or disclosed to the United States but used.

And the concern of course from the plaintiffs' perspective as I understand it is proceedings, deportation and whatnot, that could result. Any movement since the letter was filed or no?

MR. CAO: Not since the letter was filed, your Honor. That is the concern that plaintiffs have that as currently written without the second sentence of paragraph 19 that information provided to the government even when provided on an attorneys' eyes only basis could still be used for purposes of immigration enforcement. And that's precisely the risk of retaliation, your Honor, that plaintiffs are seeking to forestall with --

THE COURT: Yes, I would think so.

So Ms. Leonardo, is it going to be you or Mr. Price speaking? Don't all speak at once.

MR. PRICE: I can jump in, your Honor.

Defendants have several concerns with the additional language which is basically the second half of paragraph 19 that was added by plaintiffs. From this --

THE COURT: Is that the carve out of the carve out?

MR. PRICE: That's the notwithstanding, from the not --

THE COURT: Yes, notwithstanding and foregoing.

MR. PRICE: -- notwithstanding and foregoing.

THE COURT: Yes, yes, yes.

MR. PRICE: We don't believe that as written it properly or fully protects the government from using it outside of just the immigration purposes that have been mentioned.

And honestly, initially I should say that we do reject, although we understand what they're saying, we reject the premise that a concern of government retaliation is something that needs to be protected here through this protective order as the Court --

THE COURT: Well, are you saying you don't believe their concern or it's not a legitimate concern if they do have that?

MR. PRICE: We don't think it's necessary to be protected, to be the subject of a protective order because as this Court is aware, there are many cases in this circuit are in this district right now where the government, you know, when there's an issue that's being brought before the courts and the courts are addressing it and we don't --

THE COURT: Let me just stop you there. Isn't

that precisely why they are concerned in the first instance because of the number of times that they've had to bring it to court?

MR. PRICE: Well, the allegations of retaliation, I don't know that they are there. I can't say that there are no cases but in terms of preemptively trying to stop retaliation when if there are instances that do occur, you know, they could address them at that point. To have the protective order we don't believe is truly necessary.

Additionally, it opens the door to a lot of litigation because quite frankly, the government is or believes it is aware of most of the identities of the plaintiffs that have been, whose names have been withheld. Therefore, the government is already in possession of information that should it need to, you know, some enforcement action, it wouldn't be prohibited by this protective order, but it would open the door to plaintiffs questioning every act that any of our agencies take from this point forward or from the point where this protective order is put in place. It creates a presumption --

THE COURT: But I guess if there's -- I guess if that's true then, why wouldn't a straight attorneys' eyes only protect the government?

MR. PRICE: Well, there are multiple issues with the attorneys' eyes only provision as well, your Honor.

First of all, as it is, it's limited to basically our office in DOJ personnel the way that paragraphs 9 and 10 were written.

THE COURT: Yes.

MR. PRICE: In theory we could have every single agency counsel out there sign under I believe it's 10(f) and Exhibit A separately.

THE COURT: Yes.

MR. PRICE: At the very least, the government would argue that all agency counsel should automatically be included under this protective order without having to individually sign.

But beyond that, and the bigger point for defendants is that the way that our agencies, and at least in particular ICE, have their system set up, they cannot agree to an attorneys' eyes only designation because others besides attorneys have access to the same systems. So they cannot prevent --

THE COURT: Well why couldn't you segregate it?

MR. PRICE: The way, as it's been explained to us, the way that their systems are set up, everything is shared because, you know, ERO, when they're looking to

see if they can remove somebody, they need to look and see if there's litigation involved with that person, if they're subject to an injunction somewhere in some district court or an appellate court.

So the way their systems are set up as we understand it, they cannot lock others out. So they could not represent that that information would solely be available to --

THE COURT: How would you handle, for example, if a court sealed something, sealed part of a record and directed that clients didn't see it?

MR. PRICE: I cannot --

THE COURT: How would that be dealt with?

MR. PRICE: I cannot tell your Honor how the agency would deal with that. I'm not privy to that having happened before, so I do not know how they would handle that particular situation.

THE COURT: Okay. Well, if you don't have agreement, I'm just going to have to make a ruling then on this. I'll further review the submissions and I'll issue an order on it. I mean there's not much more I can do here to try to get you to bridge the gap. Looks like you've made attempts. And I hear the concerns on both sides and there are legitimate concerns on both sides, and I'll have to make a ruling on it.

And there are two motions pending. One is for the non-party declarants, the other is for the party. But for purposes of the issues we're talking about today, I guess it affects both, right?

MR. PRICE: That's right, your Honor. I think the plaintiffs' motions present two different types of issues. One is pseudonymity with respect to the general public and --

THE COURT: Yes.

MR. PRICE: -- and pseudonymity with respect to the government. I think there's no, as much as we understand it, there's no dispute between the parties as to pseudonymity with respect to the general public. The only question is this very limited one of who within the government can receive access to identifying information.

THE COURT: Right, right, right.

UNIDENTIFIED SPEAKER: And your Honor, that is correct that we, although again we dispute the underlying need for the protection.

THE COURT: Yes.

UNIDENTIFIED SPEAKER: But as far as the general public, we're not opposed to having filings using the initials for pseudonymity to the extent that that protects or covers the concern about public access to this information.

And I would just stress that in terms of if the Court is going to address the issue, we do need to have agency counsel being able to see this information in order to defend the case. I mean we're going to need to be able to get information from them and for that we're going to need to be able to provide them with all of the relevant information regarding the individuals.

Again, while we believe that we know most of the individuals at least in terms of class representatives, we don't know that for certain. We only believe that we've been able to identify them. And agency counsel is the only way -- we do not have any direct access to any of their systems, so we could not get to the information without being able to share that with agency counsel.

THE COURT: Mr. Cao, what's the problem with agency counsel? You've sued them. Why can't you be able to defend?

MR. CAO: Yes, your Honor. We're not opposed to a limited disclosure to agency counsel. I think we could --

THE COURT: Why does it have to be limited disclosure to agency counsel?

MR. CAO: I think there's, as courts have recognized, the more information is disseminated within

the agency I think the greater risk of retaliation that arises. I think I'd direct your Honor to the *Aguilar* case that we cited in our motions papers where --

THE COURT: I've looked at the cases. But when you say limited, how would you limit it?

MR. CAO: We would propose limiting it only to agency counsel necessary for purposes of the litigation. I hear Mr. Price argue for disclosure to all agency counsel or agency counsel without some limitation and we'd request, your Honor, at minimum a limitation to agency counsel whose participation is reasonably necessary for purposes of defending --

THE COURT: Mr. Price, are you able to provide a list of the lawyers from the various agencies who are responsible in this case?

MR. PRICE: Yes and no, your Honor. I mean we could identify some. The problem is the way that the agencies do their --

THE COURT: (Indiscernible due to cross talk).

MR. PRICE: The way that the agencies assign these cases, you know, when one attorney isn't available, they just have somebody else take a look at it, you know, pick up the file and go. So there would be times presumably where they would need to have other attorneys put eyes on the files and take a look at the information

that's there who may not have been, you know, who may not have been at that point already designated which would lead to further delay. So I don't know that an all-inclusive list would be --

THE COURT: Let me stop you. You could set it up with a list of the lawyers who are involved in the case from the various agencies and to the extent that somebody else has to tap out or tap in you seek court intervention there if you can't get agreement from the plaintiffs. What's wrong with that?

MR. PRICE: Well, I would just note, your Honor, with the broad number of agencies involved plus the need for in a case like this, you know, DOJ involvement and you know, any sort of action that needs to be taken is going to be needed to be run through a lot of different levels of review. And knowing ahead of time say who in DOJ what level of review things would need to go up to, that can change.

So it certainly would -- being able to have the broader all agency counsel would definitely streamline things. Obviously, we will comply with whatever the Court orders.

THE COURT: But you see the difficulty in that. The all agency designation is awfully broad, isn't it? That's like if, forget the government, if Skadden Arps

were involved in the case and it were limited to certain lawyers and others couldn't look at it for conflict purposes, I mean how do you --

MR. PRICE: Well --

THE COURT: It's so broad.

MR. PRICE: Well, your Honor, I'd refer back to the language. And again, initially the majority of this language was from the government but this I believe was part of what was inserted by plaintiffs in our negotiations. But it allows for, you know, counsel plus those, you know, other personnel that are necessary to assist counsel in the action. So using that designation it would be presumed, if we're reaching out to someone or having them look at it, then they are necessary to assist us in the action and therefore they should be included.

THE COURT: And is there a --

MR. PRICE: So in fact the need --

THE COURT: -- a mechanism that you would let the plaintiffs know who you've shared it with?

MR. PRICE: There's no mechanism. So within the agreement as written, certain counsel and associated personnel are just presumed to be covered under Exhibit A. And then there's a list of others who would need to individually sign Exhibit A which is the statement, you know, that you're going to be bound by the

confidentiality.

So our position would just be that all agency counsel should fall under the first category which is that they are presumptively, as counsel, they are presumptively bound by the protective order if they are taking part in this action in any way.

THE COURT: So the other side wouldn't know who those counsel are?

MR. PRICE: Well, the other side's not going to tell us every time they send something to, you know, the new attorney on their side or, you know, someone else in their firm, and nor do we think that they should as long as they are, you know, following the protective order. They're only providing it to people with the need to know.

THE COURT: But the concern isn't that the other side is going to retaliate against the government. It's just the reverse. That's what led to this to begin with. There's no concern that needs to be allayed on the government's side.

MR. PRICE: Well, I'm not sure that that's completely the case in terms of as we said, by entering this protective order basically any enforcement action that the government might take through, you know, nothing learned through this case but everything the government's

going to do is going to open us up to a charge of retaliation and we could end up in court numerous times with claims of retaliation against, you know, that we retaliated when there's nothing there.

THE COURT: But see, that's why it's better for you then to have a limited who can look at -- who knows in terms of the anonymity. The more people that you encompass in this, you know, having a broad, for example, agency disclosure, then they've got real arguments that you've breached it. But I think it's just the reverse. If it's limited to certain lawyers within certain agencies who, you know, the attorneys' eyes only, then if independently the agency has information about particular declarants or even parties that came elsewhere and that has no attachment, didn't have access to this information, what's the concern for you then? I don't see any breach, I don't see any issue.

MR. PRICE: Well, I do understand what your Honor is saying in terms of if there's fewer people then there's potentially fewer arguments that there's been a breach. But one, we think any action is still going to subject us to a claim of a breach. And two, again, it just comes down to the way that the agencies do business and the way that they need to have review. There are few, if any, counsel that we could name that would have

the authority to necessarily bind the agency on every single thing. Depending upon the particular matter and the issue, you know, numerous different people may need to be involved. And we couldn't even decide who those people would be until, you know, issues arise throughout the litigation.

It's just we see it as something that's going to, if we have to identify each individual counsel, it's going to add an additional layer of inefficiency and then every time that we need to have somebody else weigh in we first have to --

THE COURT: But you (indiscernible due to cross talk) --

MR. PRICE: -- get the Court's permission.

THE COURT: -- the argument though. The more people that you give access to without letting the other side know, the more you open yourself up to retaliation claims I would think if they go after people independently even.

MR. PRICE: I do see what your Honor is saying.

THE COURT: And I don't know how -- you know, I'm not quite sure what the solution is.

UNIDENTIFIED SPEAKER: If I might, your Honor. I think number one, Mr. Price I think is reading paragraph 10A to be a little bit broader than it's

intended. I think 10A, the blanket inclusion that Mr. Price is referring to is intended to refer only to support personnel. I think the examples that are given are, for example, litigation support, paralegals, et cetera. So I don't think that's contemplating a very broad blanket inclusion.

Moreover, I don't think the inclusion of what's written in paragraph 10A counsels for a broader inclusion of all agency counsel who aren't counsel of record for the reasons your Honor stated.

THE COURT: Okay. All right. Anything else from either side? How about from plaintiff. Mr. Cao, anything further from you?

MR. CAO: Nothing further, your Honor.

THE COURT: All right. Mr. Price?

MR. PRICE: Your Honor, I would just, you know, request to the extent back at paragraph 19 that whatever order your Honor enters that it try to be as specific as possible. What was represented here is that the concern is, you know, I believe sole removal proceedings. From a broader perspective the government is concerned with anything in here that may prevent otherwise lawful law enforcement activities. And this is obviously worst case scenario and I don't think in any way encompassed by what plaintiffs were intending. But you know, we could get

information that someone has been involved in a murder or is planning a school shooting or something else.

And to the extent that this language could arguably be read as we cannot use that information or provide it to other law enforcement, we want to just make absolutely clear that any limitation in here is limited to use of materials provided in this litigation for civil enforcement that otherwise the government would not have had the same information or other information to take the same action.

MR. CAO: If I could respond to that, your Honor? I think the hypothetical that Mr. Price is posing is that it's both not intended and also well beyond the scope of what's in the second sentence of paragraph 19 to begin with. I think as written on the page I think the terms, the protection extends only to any individual's identifying information that is disclosed or produced by the plaintiffs and designated confidential attorneys' eyes only in this action.

So to the extent the government identifies information of the type that Mr. Price is hypothesizing, I think that is not within the scope, that is neither intended to be within the scope of the second sentence of paragraph 19, nor is it included on the plain terms of the provision.

THE COURT: It seems to make sense to me as I read it. Mr. Price?

MR. PRICE: As long as that's clear. You know, we can see how someone could argue for a broader inclusion, but if it's clear that that is the very limitation that we're talking about here then --

THE COURT: Well, you get a representation on the record now.

MR. PRICE: Yes, your Honor.

THE COURT: So do you want me to decide this or do you want to sign off on it?

MR. PRICE: We cannot sign off on it as is.

THE COURT: Okay. I'll decide it. All right. Anything further, Mr. Cao?

MR. CAO: No, your Honor. Thank you.

THE COURT: Mr. Price?

MR. PRICE: No, your Honor.

THE COURT: All right. Good to see you all. I will review the submissions once again and I'll issue an order as to the scope.

MR. PRICE: Thank you, your Honor.

MR. CAO: Thank you, your Honor.

THE COURT: Thank you, all. Take care.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **12th** day of **May**, 2026.

Mary Greco

Transcriptions Plus II, Inc.