**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
RENE ANTONIO BENITEZ, J.R.H.L.,
DARWIN GARCIA MEDRANO,
H.L.A.O., A.M.C., HESLER ASAF GARCIA LANZA,
R.C.R., and F.R.P., on behalf of themselves and others
similarly situated, and
WORKERS' CENTER OF CENTRAL NEW YORK,

                                       *Plaintiffs,*


                   -against-


U.S. DEPARTMENT OF HOMELAND SECURITY;
MARKWAYNE MULLIN, in his official capacity as
Secretary of the U.S. Department of Homeland Security;
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;
TODD M. LYONS, in his official capacity as
Senior Official Performing the Duties of Director of
U.S. Immigration and Customs Enforcement;
KENNETH GENALO, in his official capacity as
Director of Enforcement and Removal Operations,
U.S. Immigration and Customs Enforcement,
New York City Field Office; TAMMY MARICH, in her
official capacity as Acting Director of Enforcement and
Removal Operations, U.S. Immigration and Customs
Enforcement, Buffalo Field Office; U.S. CUSTOMS AND
BORDER PROTECTION; RODNEY S. SCOTT, in his
official capacity as Commissioner of U.S. Customs and
Border Protection; U.S. BORDER PATROL; MICHAEL W.
BANKS, in his official capacity as Chief of U.S. Border
Patrol; U.S. DEPARTMENT OF JUSTICE; TODD
BLANCHE, in his official capacity as the Acting Attorney
General of the United States; FEDERAL BUREAU OF
INVESTIGATION; KASH PATEL, in his official capacity
as Director of the Federal Bureau of Investigation; U.S.
MARSHALS SERVICE; and GADYACES S. SERRALTA,
in his official capacity as Director of the United States
Marshals Service,
                                       *Defendants.*
-------------------------------------------------------------------------X

**WICKS,** Magistrate Judge:

**FILED**
**CLERK**

**5/15/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM**
**AND ORDER**

2:26-cv-2082 (SJB) (JMW)

Plaintiffs bring this action against a number of federal agencies and officials (collectively, "Defendants" or "the Government") asserting that the Government's alleged "campaign of suspicionless stops and warrantless immigration arrests without probable cause" violates, *inter alia*, the Fourth and Fifth Amendments. (*See generally* ECF No. 1.) Presently before the Court are two motions filed by Plaintiffs, namely, Motion to Proceed Under Pseudonyms and for Protective Order (ECF No. 7; "Plaintiffs' Motion for Plaintiffs") and Motion for Non-Plaintiff Declarants to Proceed Under Pseudonyms and for Protective Order (ECF No. 24; "Plaintiffs' Motion for Non-Party Declarants"). For the reasons stated below, the motions, as refined, narrowed and modified in Plaintiffs' subsequent Letter Motion at ECF No. 40, are GRANTED.

## FACTUAL BACKGROUND

Plaintiffs Rene Antonio Benitez, J.R.H.L., Darwin Garcia Medrano, H.L.A.O., A.M.C., Hesler Asaf Garcia Lanza, R.C.R., and F.R.P. are individuals of Latino ethnicity who were allegedly stopped and arrested, without warrants, by U.S. Immigration and Customs Enforcement ("ICE") agents or other Government immigration officers. (ECF No. 1, ¶¶ 11–18.) Plaintiff Workers' Center of Central New York is an organization focused on "worker empowerment" particularly among "low-wage, predominately immigrant workers" in the New York area. (*Id.*, ¶ 19.) It alleges that "Defendants' policies of racial profiling, suspicionless stops, and warrantless arrests have" harmed its members. (*Id.*)

Defendants include various executive-branch agencies and officials, including ICE, U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), U.S. Border Patrol ("USBP"), U.S. Department of Justice ("DOJ"), U.S. Federal Bureau of Investigation ("FBI"), and U.S. Marshals Service. According to the Complaint, these agencies

are responsible for enforcing immigration laws (in the case of ICE, DHS, CBP, and USBP) or, more generally, enforcing federal laws (in the case of DOJ, FBI, and U.S. Marshals Service). (*Id.*, ¶¶ 20–35.)

The Complaint challenges what it calls DHS's "unprecedented deportation campaign" since January 20, 2025. (*Id.*, ¶ 36.) According to the Complaint, "Defendants no longer require immigration officers to obtain a supervisor's prior approval for an arrest, or even to fill out a form with information about the person they arrest"—representing a shift "from targeted enforcement to broad street sweeps." (*Id.*, ¶ 41.) "Across New York State," the Complaint continues, "ICE and CBP agents—sometimes accompanied by FBI agents and U.S. Marshals—carry out dragnet operations in targeted locations, where they stop and quickly make warrantless arrests of people whom they are not searching for, and do not know. These dragnets are only directed at people of color, particularly Latinos[.]" (*Id.*, ¶ 52.) Plaintiffs maintain that these stops—"based wholly or primarily on . . . race," and without having identified "specific articulable facts . . . that reasonably warrant suspicion of a violation of immigration law"—violate, *inter alia*, the Fourth Amendment. (*Id.*, ¶¶ 63–66 (internal citation omitted).)

## PROCEDURAL BACKGROUND

The Complaint was filed on April 8, 2026. (ECF No. 1.) That same day, Plaintiffs filed one of the two motions at issue here, Plaintiffs' Motion for Plaintiffs. (ECF No. 7.) Through this motion, Plaintiffs seek to conceal from both the Government and the public at large the identities of certain Plaintiffs.

A few days later, on April 13, 2026, Plaintiffs moved for a preliminary injunction and to certify a class. (ECF Nos. 21 and 22.) Also that day, Plaintiffs filed the second motion at issue here, Plaintiffs' Motion for Non-Party Declarants. (ECF No. 24.) Through this motion,

Plaintiffs seek to conceal from both the Government and the public at large the identities of certain non-party individuals who filed affidavits in support of Plaintiffs' preliminary-injunction motion (the "Non-Party Declarants").

The Court scheduled oral argument on both motions for May 11, 2026. Defendants did not file briefs in opposition, because the parties were hopeful they could resolve the matter out of court. On May 8, 2026, Defendants represented as follows:

> The parties now appear to agree on most of the substantive terms of a proposed protective order . . . . The parties hope to have a final proposed protective order ready to submit by or before the status conference with Your Honor which is scheduled for Monday, May 11, 2026, at 3:00 p.m. Alternatively, should a final agreement not be reached before then, the parties intend to seek the Court's guidance on any remaining issues.

(ECF No. 39.)

On May 11, 2026, a few hours before the argument, Plaintiffs advised the Court that the parties still had not reached an agreement. (ECF No. 40.) In recent weeks, Plaintiffs explained that the parties had been exchanging drafts of a proposed protective order. (*Id.*) The protective order provides that a produced document can be marked "Confidential" or "Confidential— Attorneys' Eyes Only," and, for each designation, delineates exactly whom the receiving party may reveal it to. (ECF No. 40-1, ¶¶ 8–10.) Hence, the parties came close to a contractual resolution that would allay Plaintiffs' concerns of personally identifying information ("PII") falling into the wrong hands.

Negotiations began to break down, however, when the Government insisted on adding the following carveout:

> Nothing contained in this Protective Order prevents or in any way limits or impairs the right of counsel for the United States to disclose to any agency of the United States any document or information regarding any potential violation of law or regulation or regarding any matter within that agency's jurisdiction or, subject to procedures that maintain the confidentiality of Protected Material consistent with this Protective Order, prevent or limit in any way the use of such documents and

4

information by an agency in any proceeding regarding any potential violation of law or regulation or regarding any matter within that agency's jurisdiction.

(*Id.*, ¶ 19.)

That provision would allow Defendants to "use" Plaintiffs' PII, as well as "disclose" it to other Government agencies, in the context of "any potential violation of law or regulation or regarding any matter within that agency's jurisdiction." Plaintiffs balked at the proposed carveout, as it would effectively eviscerate the protective order. (ECF No. 40.) Plaintiffs note that the carveout would permit disclosure of PII to facilitate deportations—the precise type of retaliation Plaintiffs are trying to avoid. (*Id.* at 2.)

Accordingly, Plaintiffs proposed what might be called a "carveout to the carveout," adding the following text (Plaintiffs' addition in bold):

Nothing contained in this Protective Order prevents or in any way limits or impairs the right of counsel for the United States to disclose to any agency of the United States any document or information regarding any potential violation of law or regulation or regarding any matter within that agency's jurisdiction or, subject to procedures that maintain the confidentiality of Protected Material consistent with this Protective Order, prevent or limit in any way the use of such documents and information by an agency in any proceeding regarding any potential violation of law or regulation or regarding any matter within that agency's jurisdiction. **Notwithstanding the foregoing, and for the avoidance of doubt, in no event may any individual's identifying information that is Disclosed or produced by Plaintiffs and designated Confidential–Attorneys' Eyes Only Information be used for purposes of immigration enforcement—i.e., arrest, detention, and/or deportation—or to effect ongoing removal proceedings, if such proceedings exist, as to any individual whose identity is designated by Plaintiffs as Confidential–Attorneys' Eyes Only Information or their immediate family members**.

(ECF No. 40-1, ¶ 19.)

Plaintiffs maintain that this language strikes a suitable balance, protecting Plaintiffs and the Non-Party Declarants from retaliatory deportations without hamstringing the Government's legitimate law-enforcement capacity. The Court agrees.

## **LEGAL STANDARD**

Plaintiffs seek to conceal the identities of two groups of people—Plaintiffs and the Non-Party Declarants—from two groups of people, the Government and the general public. Thus, although Plaintiffs' motions conflate these topics, they are best understood as requesting four distinct types of relief: concealing Plaintiffs from the public, concealing Plaintiffs from the Government, concealing the Non-Party Declarants from the public, and concealing the Non-Party Declarants from the Government. The first category—concealing Plaintiffs from the public—is straightforwardly addressed under the Second Circuit's *Sealed Plaintiff* framework. The third category—concealing the Non-Party Declarants from the public—also seems to fit under this framework. The other two, which seek to withhold information from the Government, belong under the framework of a protective order instead.

## I. The Sealed Plaintiff Framework for Pseudonymity as to the Public

Federal Rule of Civil Procedure 10(a) requires a complaint to "name all the parties." Fed. R. Civ. P. 10(a). Sometimes, however, using a party's real name to pursue litigation could impair the very rights the person seeks to protect, so courts have permitted individuals to proceed under pseudonyms when privacy rights are at issue. *See, e.g.*, *Smith v. Doe*, 538 U.S. 84 (2003) (pseudonym used to challenge sex offender registration and notification system). The Second Circuit has recognized that, while it is sometimes appropriate for a litigant to proceed under a pseudonym, Rule 10(a)'s requirement "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008). Pseudonyms are therefore "the exception and not the rule," and a party seeking to "receive the protections of anonymity . . . must make a case rebutting" the "presumption of disclosure." *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020).

When considering a plaintiff's request to proceed anonymously, a court must balance "the plaintiff's interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff*, 537 F.3d at 189. Even where the defendant does not oppose the motion, the court must still conduct this balancing test, because judicial transparency is a matter of public interest. *See, e.g.*, *Doe v. Fashion Inst. of Tech.*, No. 25 CIV. 950 (JPC), 2025 WL 3102351, at *2 (S.D.N.Y. Nov. 6, 2025) (denying plaintiff's motion to proceed under a pseudonym even though defendant did not oppose it). The Second Circuit has set forth a non-exhaustive list of ten factors to guide courts in balancing these interests. *Sealed Plaintiff*, 537 F.3d at 189–90. A district court considering a request to proceed anonymously need not "list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191.

*Sealed Plaintiff* and its progeny involved a *party* seeking to proceed anonymously, which makes sense since *Sealed Plaintiff* is an exception to Rule 10's requirement that "the title of a complaint must name all the parties." *Sealed Plaintiff*, 537 F.3d at 188 (quoting Fed. R. Civ. P. 10(a)) (citation modified). That said, a substantially similar standard seems to govern motions to anonymize non-party declarants. *See Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2026 WL 851337, at *1 (S.D.N.Y. Mar. 27, 2026) (permitting non-parties, who were "brought into the case by the service of subpoenas[,]" to proceed anonymously under *Sealed Plaintiff*); *Doe v. Trs. of Columbia Univ. in City of New York*, No. 25-CV-1108 (ER), 2025 WL 2476304, at *7–8 (S.D.N.Y. Aug. 28, 2025) (applying *Sealed Plaintiff* to pseudonymize non-party former students); *cf. Giuffre v. Maxwell*, 146 F.4th 165, 171 (2d Cir. 2025) (discussing pseudonymization of "non-parties whose privacy, reputational or other interests may be implicated by the unsealing").[1]

---

[1] Courts in other circuits have applied functionally similar tests to *Sealed Plaintiff* in the exact circumstances raised here. *See New York v. McMahon*, No. 1:25-CV-10601-MJJ, 2025 WL 1478387 (D.

Accordingly, this is the appropriate framework under which to consider Plaintiffs' Motion for Non-Party Declarants too, at least vis-à-vis *public* disclosure.

What is less clear, however, is whether *Sealed Plaintiff* allows the Court to conceal the identities of Plaintiffs and the Non-Party Declarants from *Defendants*. The primary thrust of *Sealed Plaintiff* and its progeny is public disclosure. As the Second Circuit there explained, the default requirement that a complaint name the parties "serves the vital purpose of facilitating public scrutiny of judicial proceedings[,]" as "'identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.'" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir.1997) (Posner, J.)). Here, however, Plaintiffs and the Non-Party Declarants seek anonymity not only from the public but also from Defendants themselves. It is not clear whether *Sealed Plaintiff* can do this work—though there are courts that apparently understood it that way. *See Doe v. Epiq eDiscovery Sols., Inc.*, No. 24-CV-9880 (MKV), 2025 WL 2613826, at *4 (S.D.N.Y. Sept. 10, 2025) (implicitly assuming that granting the motion would prevent the defendants from "know[ing] who their accuser is"); *Doe v. Combs*, No. 25 CIV. 1652 (LAP), 2025 WL 1993598, at *5 (S.D.N.Y. July 17, 2025) (finding the "prejudice to defendants" factor "weighs heavily against anonymity" where the defendant is "unaware of even Plaintiff's identity and would not be able to conduct a thorough investigation without it").

---

Mass. Mar. 21, 2025) ("[T]he Doe Declarants have carried their burden to overcome the presumption against the use of a pseudonym, as the Doe Declarants' fears of retribution and retaliation in this context is reasonable."); *Washington State Ass'n of Head Start & Early Childhood Assistance & Educ. Program v. Kennedy*, No. C25-781-RSM, 2025 WL 1685420, at *2 (W.D. Wash. June 16, 2025) ("[G]ranting Plaintiffs leave to proceed anonymously with the above Declarants is appropriate. The Declarants' fears of retaliation, both personal and on the involved programs, are reasonable and severe.").

Fortunately, the Court need not decide at this juncture how far *Sealed Plaintiff* extends. Plaintiffs' motions vis-à-vis Defendants fit comfortably under the rubric of a protective order— which is anyway the procedural device upon which the parties have settled.

## II.     **Protective Orders**

"Parties seeking cover from discovery may avail themselves of a motion for a protective order which, in effect, is the flip side of a motion to compel." *C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 268 (E.D.N.Y. 2023). Rule 26(c) affords protection for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause.").

The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005). "If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* at 55. "Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed." *Fowler-Washington v. City of New York*, No. 19-CV-6590 (KAM) (JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5, 2020) (internal quotation and citation omitted). "Such an order may include a prohibition against the use of privileged information inadvertently produced in discovery." *Walsh*

*v. Versa Cret Contracting Co., Inc.*, No. 21-CV-5697 (JMA) (JMW), 2022 WL 2987086, at *2 (E.D.N.Y. July 28, 2022) (quoting *Fuller v. Interview, Inc.*, No. 07 Civ. 5728(RJS)(DF), 2009 WL 3241542, at *7 (S.D.N.Y. Sep. 30, 2009) (granting a protective order against the use of privileged information inadvertently disclosed and directing documents to be destroyed)).

Relevant here, Plaintiffs seek a designation of "attorneys' eyes only." (ECF No. 40-1, ¶¶ 8–10.) "A protective order may require that certain material obtained in discovery be kept confidential or disclosed only to attorneys. . . . An 'Attorneys' Eyes Only' ('AEO') provision allows certain information produced in discovery to be shared only with lawyers for the party receiving discovery, not their clients." *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2025 WL 815364, at *1-2 (S.D.N.Y. Mar. 13, 2025) (entering protective order including AEO provision, despite objection of the other party); *see also, e.g.*, *River Light V, L.P. v. Olem Shoe Corp.*, No. 1:20-CV-07088-LGS, 2021 WL 355061, at *1 (S.D.N.Y. Feb. 1, 2021) (entering protective order including AEO provision). Pursuant to Rule 26(c), courts can order AEO designation at the request of just one party even where the other party disagrees. *See, e.g.*, *Medacist Sols. Grp., LLC v. Omnicell, Inc.*, No. 09CIV6128PGGPED, 2010 WL 11655322, at *3 (S.D.N.Y. Oct. 5, 2010) (citing Fed. R. Civ. P. 26(c)). This Court has noted that AEO designation is typical in cases involving trade secrets, but even there, "good cause must nevertheless be established by the party seeking that level of protection." *Multi-State P'ship for Prevention, LLC v. Kennedy*, No. 24-CV-00013 (JMW), 2024 WL 5146067, at *4 (Wicks, J.) (E.D.N.Y. Dec. 17, 2024) (denying motion for AEO protection).

## **DISCUSSION**

Plaintiffs articulate two concerns applicable to both the party Plaintiffs and the Non-Party Declarants: retaliation from the Government, and retaliation from the general public. Although

the rubrics under which Plaintiffs' motions fall may differ—*Sealed Plaintiff* for some, protective order for others—the Court proceeds to analyze them together, because the factual bases are the same.

With respect to retaliation from the Government, Plaintiffs state that federal agents in Portland, Maine recently "scanned an observer's face with a smartphone, appeared to record her car plate number, called her a domestic terrorist, and told her she would be added to a domestic terror watchlist." (ECF No. 7-1 at 4–5 (citing *Hilton v. Noem*, No. 2:26-cv-00092 (D. Maine Feb. 23, 2026), ECF No. 3-5); ECF No. 24-1 at 4–5 (same).) Plaintiffs also point to Mahmoud Khalil, a Palestinian activist at Columbia University, whose recent deportation seems to have been due to his political speech. (ECF No. 7-1 at 5; ECF No. 24-1 at 5.) Plaintiffs cite some other examples as well.

With respect to retaliation from the general public, Plaintiffs cite that "[f]ollowing the killing of Renee Good by a federal immigration officer in Minneapolis and subsequent reporting on her involvement with her son's school, teachers and staff members of the school received threats and had their names and addresses posted on social media." (ECF No. 7-1 at 5 (citing ECF Nos. 7-4, 7-5); ECF No. 24-1 at 5 (citing ECF Nos. 7-4, 7-5).) Plaintiffs also reference a woman who, after her husband was deported and her address publicized, moved her children to a safehouse. (ECF No. 7-6.) "'I don't feel safe when the government posts my address, the house where my family lives, for everyone to see, especially when this case has gone viral and people have all sorts of opinions,'" the cited article quotes her as saying. "'So, this is definitely a bit terrifying. I'm scared for my kids.'" (*Id.*) Finally, Plaintiffs point to a Massachusetts baker who, after decorating cookies with the words "F--- ICE," received arson and death threats. (ECF No. 7-1 at 5 (citing ECF No. 7-3 ("'People have wished illness and death on my family and my children,' Moran said.

11

'We've gotten a lot of death threats, hoping me and all my female employees get raped and my male employees get robbed, that they're going to lock me in the building and burn the place down with me inside.'")); ECF No. 24-1 at 5 (same).)

Under ordinary circumstances, a handful of anecdotes cherrypicked from across a country of over 330 million people would not get much traction rebutting Rule 10's presumptive requirement that parties use their real names. *See Daing v. BNP Paribas S.A.*, No. 1:25-CV-9750 (LTS), 2026 WL 637030, at *7 (S.D.N.Y. Mar. 6, 2026) (denying pseudonymity where plaintiff's concerns were "speculative and based on generalized harm"); *Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 272 (E.D.N.Y. 2015) (finding newspaper articles insufficient to show that "these particular Plaintiffs" will face retaliation). But these are not ordinary circumstances. Courts have noted "recent high-profile immigration cases" where litigants faced "harassment and intimidation" in the United States. *Molina v. U.S. Dep't of Homeland Sec.*, No. CV 25-3417, 2025 WL 2800807, at *1 (D.D.C. Oct. 1, 2025) (granting pseudonymity because "disclosure carries a serious risk of harm for Plaintiffs and their families"). Indeed, "the news is replete with reports of deportations," leading courts to conclude that "the fear of retaliation" against plaintiffs in immigration cases "is not speculative[.]" *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 726 (D. Md. 2025) (granting pseudonymity); *see also N. v. United States Dep't of Health & Hum. Servs.*, No. CV 26-577, 2026 WL 571216, at *2 (D.D.C. Mar. 2, 2026) (granting pseudonymity due to fear of retaliation including "arrest, deportation, or physical harm" from, *inter alia*, "members of the American public who are hostile to immigrants"). Accordingly, this factor weighs in favor of pseudonymity.

In the same vein, *Sealed Plaintiff* instructs courts to consider "whether the plaintiff is particularly vulnerable to the possible harms of disclosure[.]" 537 F.3d at 190. Plaintiffs and Non-

Party Declarants come from a uniquely vulnerable segment of society, so this factor weighs heavily in their favor. *See A.J.M.C. v. Genalo*, No. 26-CV-2717 (LAK), 2026 WL 905649, at *1 (S.D.N.Y. Apr. 2, 2026) (noting that migrants detained by ICE and facing removal proceedings "fall[] within a particularly vulnerable class").

Next, the Court considers "whether the suit is challenging the actions of the government or that of private parties[.]" *Sealed Plaintiff*, 537 F.3d at 190. "Usually, where plaintiffs are suing the government, such suits involve no injury to the Government's 'reputation,' whereas the mere filing of a civil action against other private parties may cause damage to their good names and reputation[.]" *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, No. 12 CIV. 6152 VM KNF, 2012 WL 5899331, at *7 (S.D.N.Y. Nov. 26, 2012) (internal citation omitted). Hence, this factor weighs in Plaintiffs' favor as well. *See S.D. v. Decker*, No. 22CV3063VSBBCM, 2022 WL 1239589, at *3 (S.D.N.Y. Apr. 27, 2022) (noting that "the fact that petitioner is litigating against the government weighs in his favor" but denying the motion on other grounds).

Another factor is "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities[.]" *Sealed Plaintiff*, 537 F.3d at 190. This factor also favors Plaintiffs, as cases challenging immigration policies tend to hinge more on "pure question[s] of law" than on particular facts. *Doe v. Townes*, No. 19CV8034ALCOTW, 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020); *accord H.A. v. Genalo*, No. 26 CIV. 2706 (AT), 2026 WL 1159512, at *2 (S.D.N.Y. Apr. 28, 2026).

Plaintiffs also argue for anonymity on the basis that their claims involve "'matters that are highly sensitive and of a personal nature[.]'" (ECF No. 7-1 at 2 (quoting *Sealed Plaintiff*, 537 F.3d at 190); ECF No. 24-1 at 2–3 (same).) On this point, Plaintiffs are wrong. "Courts have found that cases relating to birth control, abortion, homosexuality, welfare rights of illegitimate children,

and abandoned families are highly sensitive and of a personal nature." *Doe v. Townes*, No. 19CV8034ALCOTW, 2020 WL 2395159, at *3 (S.D.N.Y. May 12, 2020). Sexual assault or harassment are "paradigmatic examples" of sensitive matters. *Doe v. D'Onofrio Gen. Contractors Corp.*, No. 1:26-CV-02860 (JLR), 2026 WL 1146030, at *2 (S.D.N.Y. Apr. 28, 2026) (internal citation omitted); *Doe v. Trs. of Columbia Univ. in the City of New York*, No. 25-CV-1108 (ER), 2025 WL 2319513, at *5 (S.D.N.Y. Aug. 12, 2025) ("[M]atters involving sexual harassment [are] highly sensitive and personal."). Where such circumstances are absent, the case usually does not qualify as sensitive or personal. *See Doe v. NBCUniversal Media, LLC*, No. 25-CV-5690 (JPO), 2025 WL 1936894, at *2 (S.D.N.Y. July 15, 2025) ("Nor is the litigation particularly sensitive in the sense that it involves allegations of sexual misconduct or the disclosure of potentially embarrassing information."); *Doe v. Zinsou*, No. 19 CIV. 7025 (ER), 2019 WL 3564582, at *5 (S.D.N.Y. Aug. 6, 2019) (finding allegations not sensitive because they "involve neither sexual misconduct nor minors"); *Michael v. Bloomberg L.P.*, No. 14-CV-2657 TPG, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) ("Nor is this the type of unusual case involving matters of a highly sensitive or personal nature—*i.e.,* claims involving sexual orientation, pregnancy, or minor children—in which courts have justified anonymous plaintiffs proceeding pseudonymously."). Accordingly, this factor weighs against Plaintiffs.

Finally, the Court considers prejudice to Defendants. *See Sealed Plaintiff*, 537 F.3d at 190 ("whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously"). This factor tilts rather heavily in favor of Plaintiffs. The Government has failed to articulate any prejudice that might ensue from anonymity. Indeed, at oral argument, the Government stipulated to "pseudonymity with respect to the general public." (ECF No. 41 at 9:13.) Accordingly,

14

Plaintiffs' motions are granted vis-à-vis the general public. Plaintiffs and the Non-Party Declarants may proceed under pseudonyms.[2]

Next, the Court turns to Plaintiffs' motions vis-à-vis the Government. The framework for addressing these is the protective order, as noted above. To briefly reiterate, the proposed draft permits information (such as PII) to be designated Attorneys' Eyes Only. Information so designated may be disclosed only to a very narrow group of individuals, such as "[c]ounsel of record" and "necessary" DOJ support staff. (ECF No. 40-1, ¶ 10.a.)

At oral argument,[3] the Government stated that it "cannot agree to an attorneys' eyes only designation because others besides attorneys have access to the same systems." (ECF No. 41 at 7:19–21.) Apparently, according to Government counsel, the way Government agencies, or "at least in particular ICE," "have their system set up" is that "others besides attorneys have access to the same systems." (*Id.* at 7:17–21.) Systems are shared so that "when they're looking to see if they can remove somebody, they need to look and see if there's litigation involved with the person, if they're subject to an injunction somewhere," for example. (*Id.* at 7:25–8:3.) "So the way their systems are set up . . . , they cannot lock others out." (*Id.* at 8:5–6.)

For a similar reason, the Government does not want to limit information to only counsel of record, because "when one attorney isn't available, they just have somebody else take a look at it, you know, pick up the file and go." (*Id.* at 11:21–23.) "So there would be times presumably where they would need to have other attorneys put eyes on the files and take a look at the information

---

[2] To reiterate, the fact that Defendants consented does not in itself entitle the Court to allow Plaintiffs to use pseudonyms. Rule 10 requires a complaint to "name all the parties." Fed. R. Civ. P. 10(a). Exceptions can be made only after balancing the interests articulated in *Sealed Plaintiff*, as the Court did above.

[3] The Government did not file a brief in opposition, so the Court's understanding of the Government's position is gleaned only from representations made at oral argument.

that's there who may not have been . . . at that point already designated, which would lead to further delay." (*Id.* at 11:23–12:3.) "[W]ith the broad number of agencies involved plus the need for . . . DOJ involvement . . . , any sort of action that needs to be taken is going to need to be run through a lot of different levels of review. . . . [B]eing able to have the broader 'all agency counsel' would definitely streamline things." (*Id.* at 12:12–21 (citation modified).)

Finally, the Government fears that the proposed AEO designation could open the Government up to even more litigation. The Government believes it already knows the identities of "most" of the Plaintiffs whose names have been withheld. (*Id.* at 6:11–15.) But if the Government uses that information—acquired innocuously without any violation of the protective order—in law enforcement proceedings, "it would open the door to Plaintiffs questioning every act that any of our agencies take from this point forward[.]" (*Id.* at 6:18–21.) People will assume the Government only learned those individuals' identities by illicitly snooping on the PII obtained in this case, when in fact the Government had planned to investigate them even before the protective order. (*See id.* at 14:21–15:4.) Legitimate enforcement actions could be cast in doubt, with the Government being accused of violating the protective order. This would be especially problematic if the Government happens to "get information that someone has been involved in a murder or is planning a school shooting or something else." (*Id.* at 17:25–18:2.)

The legitimacy of these concerns is questionable. With respect to inefficiency issues, that argument is belied by what private law firms routinely do: erect ethical walls and segregate information to cordon off conflicted attorneys. *See, e.g.*, Dominick V. Manetta, *"No Conflict Here Counsel, Scout's Honor": The Third Circuit Sets the Standard for Reviewing Retention of Counsel Under 11 U.S.C. S 327 in in Re Boy Scouts of America*, 68 Vill. L. Rev. 97, 105–06 (2023) (addressing screening actions taken to create ethical walls within a firm); *see also* N.Y. Rule of

Professional Conduct 1.10 (imputation of conflicts). The Government was unable to articulate why the same could not hold true for Government agencies.

With respect to the risk of misunderstandings and false accusations, the proposed protective order actually *helps, not harms,* the Government. The fewer people who know Plaintiffs' and Non-Party Declarants' identities, the less credible an accusation that the Government illicitly used PII toward its own ends. If DHS or ICE agents need to arrest someone who coincidentally is involved in this litigation, it is unlikely one would conclude they discovered the person by stealing PII obtained through the litigation. And that's because everyone will know that the PII was appropriately sealed off. Furthermore, counsel for Plaintiffs stipulated on the record that the draft protective order would not extend to such circumstances:

> I think the hypothetical that [counsel for the Government] is posing is . . . both not intended and also well beyond the scope of what's in the second sentence of paragraph 19 to begin with. . . . [T]he protection extends only to any individual's identifying information that is disclosed or produced by the plaintiffs and designated confidential attorneys' eyes only in this action. So to the extent the government identifies information of the type that [counsel for the Government] is hypothesizing, I think that is . . . neither intended to be within the scope of the second sentence of paragraph 19, nor is it included in the plain terms of the provision.

(*Id.* at 18:12–25.)

Counsel for the Government effectively conceded that, with this proviso, the protective order is reasonable. (*Id.* at 19:3 ("As long as that's clear.").)

Accordingly, the Court adopts in full the draft protective order set forth at ECF No. 40-1.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Plaintiffs (ECF No. 7) and Plaintiffs'

Motion for Non-Party Declarants (ECF No. 24) are **GRANTED**, as is their supplemental Motion

for Protective Order at ECF No. 40. The Court adopts the draft protective order set forth at ECF

No. 40-1.

Dated: Central Islip, New York
May 15, 2026

**S O   O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
