UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

RENE ANTONIO BENITEZ, *et al.*

            *Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al*.,

            *Defendants*.

Case No. 2:26-cv-2082-SJB-JMW

**DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR JUDITH ALMODOVAR**

1

I, Judith Almodovar, hereby declare as follows:

1.        I am employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) as a Deputy Field Office Director (DFOD) with the New York City Field Office. I have held this position since January 28, 2024.

2.        The majority of ERO's immigration enforcement operations take place in the interior of the country. ERO manages all logistical aspects of the removal process by identifying, apprehending, and, when appropriate, detaining removable aliens during the course of immigration proceedings and pending their physical removal from the United States. This includes locating and taking into custody fugitive aliens and at-large criminal aliens, as well as identifying aliens in federal, state, and local prisons and jails and working with those authorities to transfer them to ICE custody without releasing them into the community. When aliens are ordered removed, ERO is responsible for safely repatriating them or otherwise overseeing their departure from the United States.

3.        Upon reasonable suspicion that an individual is unlawfully present in, or otherwise removable from, the United States, ERO officers are authorized to briefly stop the individual for further investigation into his or her immigration status. ERO officers are trained to identify and articulate when there is reasonable suspicion to warrant a brief stop. ERO officers may develop reasonable suspicion in any number of ways, including but not limited to: subjects making incriminating statements or exhibiting suspicious behavior during consensual encounters; subjects failing to produce any documentation during consensual encounters or producing documentation suspected to be fraudulent; information from open-source investigations, other law enforcement agencies, informants, and surveillance; and information

2

Case 2:26-cv-02082-SJB-JMW   Document 53   Filed 05/29/26   Page 3 of 6 PageID #: 1153

individual is unlawfully present in the United States, the individual may be arrested upon issuance of an administrative arrest warrant or a determination that the individual is likely to escape before an arrest warrant can be obtained.

4.     For example, while conducting targeted law enforcement operations, ICE officers may encounter additional aliens for whom probable cause is established that they are present in violation of the immigration laws or otherwise removable. Officers must consider whether a Form I-200 Warrant for Administrative Arrest of Alien ("I-200") can be timely obtained. Supervisory immigration officers, not first-line officers, are authorized to issue arrest warrants. If an authorized supervisory immigration officer is present or otherwise accessible, he or she may immediately issue an I-200 for the alien after probable cause of removability is established. If no supervisor is available to issue an arrest warrant, or a supervisor cannot timely issue an arrest warrant, then officers must consider whether a warrantless immigration arrest is permissible.

5.     ICE officers may conduct warrantless arrests if there is reason to believe that the alien to be arrested is present in the United States in violation of any U.S. immigration law and is likely to escape before an I-200 can be obtained. *See* 8 U.S.C. § 1357; *see also* Memorandum from Todd M. Lyons, *Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests* at 1-2, n.6. (Jan. 28, 2026). These determinations must be made before a warrantless arrest is effectuated.

6.     ERO officers receive initial training that covers, among other topics, the Fourth Amendment and I C E ' s  arrest authorities. ERO officers also receive training on the statutory and regulatory provisions of the Immigration and Nationality Act and relevant DHS and ICE policies. ERO officers continue to receive refresher trainings on ICE's arrest authorities,

3

7.     Officers are instructed to follow procedures emphasizing targeted investigations and arrests of aliens with final removal orders and/or serious criminal histories. Nevertheless, ERO officers have the statutory authority to arrest any alien based on probable cause to believe he or she is unlawfully present in, or is otherwise removable from, the United States, regardless of any criminal history. This often happens when a target is encountered with other aliens illegally present.

8.     DHS policy prohibits reliance on generalized assumptions or stereotypes involving a person's race, ethnicity, and other protected characteristics except in limited circumstances. The exceptions include where there is trustworthy specific information, with sufficient details, regarding factors including locality, and time frame to provide assurance that the information is reliable and links persons possessing a particular listed characteristic to a violation of Federal immigration law.  A person's race or ethnicity alone may not serve as basis for law enforcement action against the individual.

9.     Conversely, nationality, *i.e.*, country of citizenship or nationality, is not a protected characteristic and may be considered in immigration law enforcement activities where nationality is expressly relevant to the administration or enforcement of a statute, regulation, or executive order, or in individualized discretionary use of nationality as a screening, investigation, or enforcement factor.

10.     ICE enforcement operations are conducted based on operational planning, law enforcement intelligence, and investigative leads.

**Information Regarding the Individual Plaintiffs**

11.     I have reviewed and considered documents and information available to me in

4

Darwin Garcia Medrano, Hesler Asaf Garcia Lanza, A.M.C., H.L.A.O., Rene Antonio Benitez, and J.R.H.L.

12.     The following is information regarding several of these arrests:

a.      **Darwin Garcia Medrano:** Immigration officers encountered Garcia Medrano on January 17, 2026, during a targeted enforcement operation at 5th Avenue and Suffolk Avenue in Brentwood, New York, where the target was known to frequent the area. Officers approached Garcia Medrano, and during the consensual encounter, they inquired about the target. In the ensuing discussion, officers determined that although not the target, Garcia Medrano was unlawfully present in the United States. After confirming the relevant records, officers called supervisory immigration officer and requested that he issue an I-200. Once it had been issued, the immigration officers placed Garcia Medrano under arrest pursuant to the I-200 issued for immigration violations.

b.      **Hesler Asaf Garcia Lanza**: Immigration officers encountered Garcia Lanza on January 3, 2026, during a targeted enforcement operation in Hempstead, New York. During a consensual encounter, immigration officers determined that while he was not the target of the operation, he was unlawfully present in the United States. The SDDO, who was present during the encounter, then issued an I-200. Officers then placed Garcia Lanza under arrest for the immigration violation.

c.      **A.M.C.:** Immigration officers encountered A.M.C. on February 24, 2026, during a targeted enforcement operation in Brooklyn, New York. Their aim was to locate an alien subject to a final order of removal who had pending sex offense charges. While conducting surveillance at the primary target's last known address, the officers approached

5

an I-200 that had been issued by a supervisory immigration officer for an immigration violation.

> d. **H.L.A.O.**: Immigration officers encountered H.L.A.O. on February 4, 2026, during a targeted enforcement operation in Greenport, New York. While conducting surveillance at the primary target's last known address, officers observed an individual believed to be the target departing the residence in a vehicle. This was due to the fact that H.L.A.O. resembled the target. The officers conducted a vehicle stop based on the reasonable suspicion that the target was in a vehicle. The officers identified themselves and spoke with the individual. During the encounter, the officers determined that although he was not the target, H.L.A.O. was unlawfully present in the United States. Officers then requested an I-200 from a supervisory immigration officer who was not at the scene. Once the I-200 had been issued, the officers placed H.L.A.O. under arrest for the immigration violation.

13. ICE has not arrested any of the named Plaintiffs subsequent to the arrests discussed above.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 28th day of May 2026 in Brooklyn, New York.

JUDITH C ALMODOVAR

Digitally signed by JUDITH C ALMODOVAR
DN: cn=JUDITH C ALMODOVAR, o=U.S.
Government, ou=People,
email=Judith.C.Almodovar@ice.dhs.gov,
c=US
Date: 2026-05-29T00:00:16-0400

_____

Judith Almodovar
Deputy Field Office Director
ERO New York

6