**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RENE ANTONIO BENITEZ, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.* <br><br> *Defendants*. | Case No. 26-cv-02082 |

**REPLY IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION AND**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Dated: June 11, 2026

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 1

   I.    DEFENDANTS DO NOT MEANINGFULLY DISPUTE THE EXISTENCE OF THE ALLEGED WARRANTLESS ARREST POLICY ........................................................ 1

       A.  Defendants' Written Guidance in Fact Demonstrates the Policy Plaintiffs Allege. ........ 3

       B.  Defendants' Policy Is Pervasive and Ongoing .................................................................. 6

       C.  Defendants Unlawfully Arrested All Individual Plaintiffs Without Warrants. ............... 8

   II.   PLAINTIFFS HAVE STANDING ....................................................................... 11

       A.  Legal Standard ................................................................................................................ 11

       B.  Individual Plaintiffs Have Standing Because They Face a Substantial Risk of Re-Arrest Pursuant to Defendants' Unlawful Policy ............................................................ 13

       C.  Plaintiff Workers Center of Central New York Has Standing ....................................... 18

       D.  Plaintiffs' Injuries Are Traceable to the DOJ Defendants. ........................................... 22

       E.  Plaintiffs' Claims for Injunctive Relief Are Not Moot. ................................................. 23

  III.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................................ 25

       A.  Defendants' Warrantless Arrest Policy Is Final Agency Action. .................................. 25

       B.  The Court Has Jurisdiction to Grant the Requested Relief. ........................................... 27

  IV.  PLAINTIFFS FACE IRREPARABLE HARM ABSENT AN INJUNCTION ............... 30

   V.   THERE IS NO PUBLIC INTEREST IN UNLAWFUL IMMIGRATION ENFORCEMENT, AND COMPLIANCE WITH THE LAW DOES NOT HARM DEFENDANTS. ................................................................................................... 31

CONCLUSION ............................................................................................................... 33

**Page(s)**

**Cases**

*African Cmtys. Together v. Lyons*,
2026 WL 1382944 (S.D.N.Y. May 18, 2026) .......................................................................31

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
651 F.3d 218 (2d Cir. 2011).............................................................................................20

*Amadei v. Nielsen*,
348 F. Supp. 3d 145 (E.D.N.Y. 2018) ..............................................................................25

*Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016)..........................................................................................................27

*Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*,
88 F.4th 344 (2d Cir. 2023) ..............................................................................................22

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003)........................................................................................12, 13

*Benitez v. Genalo*,
No. 26-cv-1122 (SJB) (E.D.N.Y. May 19, 2026) ........................................................4, 24

*Bennett v. Spear*,
520 U.S. 154 (1997)..........................................................................................................22

*Burlington N. & Santa Fe Ry. v. United States*,
556 U.S. 599 (2009)..........................................................................................................23

*Castañon Nava v. DHS*,
435 F. Supp. 3d 880 (N.D. Ill. 2020) ..........................................................................26, 30

*Ceesay v. Bondi*,
2025 WL 1435615 (S.D.N.Y. May 16, 2025) ..................................................................29

*Centro de la Comunidad Hispana de Locust Valley v. Oyster Bay*,
868 F.3d 104 (2d Cir. 2017)..........................................................................................12, 21

*Chevron Corp. v. Donzinger*,
833 F.3d 74 (2d Cir. 2016)................................................................................................22

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)........................................................................................................15, 16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)................................................................................................16, 17

*Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*,
167 F.4th 605 (2d Cir. 2026) ..........................................................................................20

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)........................................................................................................27

*Curimilma Quille v. Blanche*,
2026 WL 1453889 (E.D.N.Y. May 22, 2026) ...................................................................7

*Dep't of Educ. v. Brown*,
600 U.S. 551 (2023)........................................................................................................12

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)............................................................................................................28

*Do No Harm v. Pfizer Inc.*,
126 F.4th 109 (2d Cir. 2025) ....................................................................................12, 19

*Doe v. McDonald*,
128 F.4th 379 (2d Cir. 2025) ....................................................................................12, 24

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
2026 WL 1256234 (D.D.C. May 7, 2026) ............................................................ *passim*

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) ......................................................................... *passim*

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)............................................................................................30

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)........................................................................................................20

*Forschner Grp., Inc. v. Arrow Trading Co.*,
124 F.3d 402 (2d Cir. 1997)............................................................................................32

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)........................................................................................................24

*Garcia Lanza v. Noem*,
2026 WL 585130 (E.D.N.Y. Mar. 3, 2026) .....................................................................8, 9

*Gopie v. Lyons*,
2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025)...........................................................5, 9, 24

*Hakim v. Chertoff*,
447 F. Supp. 2d 325 (S.D.N.Y. 2006)......................................................................12

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)................................................................................20, 21

*Hunt v. Wash. State Apple Advertising Comm'n*,
432 U.S. 333 (1977)......................................................................................19

*Hussen v. Noem*,
2026 WL 657936 (D. Minn. Mar. 9, 2026) ............................................................17

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ......................................................................................28

*La Franca v. Immigr. & Naturalization Serv.*,
413 F.2d 686 (2d Cir. 1969)..............................................................................11

*Laird v. Tatum*,
408 U.S. 1 (1972)..........................................................................................22

*League of Women Voters of the U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ..............................................................................31

*Lugo v. City of Troy*,
114 F.4th 80 (2d Cir. 2024) ..............................................................................12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..................................................................................11, 12

*M-J-M-A- v. Hermosillo*,
2026 WL 562063 (D. Or. Feb. 27, 2026)........................................................ *passim*

*Mahdawi v. Trump*,
136 F.4th 443 (2d Cir. 2025) ............................................................................28

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010)............................................................................2, 30

*Murthy v. Missouri*,
603 U.S. 43 (2024).........................................................................................13

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
684 F.3d 286 (2d Cir. 2012)..........................................................................18, 21

*New York v. U.S. Dep't of Homeland Sec.*,
969 F.4th 42 (2d Cir. 2020) ..............................................................................21

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)..................................................................12

*Noem v. Vasquez Perdomo*,
146 S. Ct. 1 (Sept. 8, 2025)............................................................16, 32

*Ozturk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) ...............................................................28

*Parada Cruz v. Mullin*,
2026 WL 1027441 (E.D.N.Y. Apr. 16, 2026) ............................9, 13, 17

*Pen Am. Ctr., Inc. v. Trump*,
448 F. Supp. 3d 309 (S.D.N.Y. 2020)....................................................19

*R.F.M. v. Nielsen*,
365 F. Supp. 3d 350 (S.D.N.Y. 2019).....................................................25

*Ramirez Ovando v. Mullin*,
No. 25-cv-03183, slip op. (D. Colo. May 12, 2026)...............................24

*Ramirez Ovando v. Noem*,
810 F. Supp. 3d 1209 (D. Colo. 2025)............................................. *passim*

*Reno v. Am.-Arab Anti–Discrimination Comm.*,
525 U.S. 471 (1999)...............................................................................28

*Sanchez Alfaro v. Mullin*,
2026 WL 734348 (E.D.N.Y. Mar. 16, 2026),
*clarified on denial of reconsideration*,
*Sanchez Alfaro v. Mullin*, 2026 WL 1142478 (E.D.N.Y. Apr. 27, 2026)........................ *passim*

*Sauceda Henriquez v. Noem*,
2026 WL 111665 (E.D.N.Y. Jan. 15, 2026) ............................................29

*Silva v. Farrish*,
47 F.4th 78 (2d Cir. 2022) ..............................................................11, 12

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016)................................................................................11

*State of New York v. ICE*,
431 F. Supp. 3d 377 (S.D.N.Y. 2019)....................................................26

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023).........................................................................18, 19

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)................................................................................................19

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)................................................................................................15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)................................................................................................12

*United Farm Workers v. Noem*,
2026 WL 892070 (E.D. Cal. Apr. 1, 2026).....................................................24, 32

*United Farm Workers v. Noem*,
785 F. Supp. 3d 672 (E.D. Cal. 2025)....................................................................13

*United States v. Cantu*,
519 F.2d 494 (7th Cir. 1975) .................................................................................10

*United States v. Schaffer*,
851 F.3d 166 (2d Cir. 2017)...................................................................................23

*United States v. Texas*,
599 U.S. 670 (2023)................................................................................................16

*Velesaca v. Decker*,
458 F. Supp. 3d 224 (S.D.N.Y. 2020)....................................................................25

*Villatoro v. Noem*,
2025 WL 2880140 (E.D.N.Y. Oct. 9, 2025)..........................................................29

*Villatoro v. Shanahan*,
2026 WL 948297 (E.D.N.Y. Apr. 7, 2026) ...........................................................29

*Warth v. Seldin*,
422 U.S. 490 (1975)................................................................................................18

*Yeleshev v. Larocco*,
2026 WL 1353806 (E.D.N.Y. May 14, 2026) ..................................................10, 24

**Statutes**

5 U.S.C. § 702.............................................................................................................27

5 U.S.C. § 704.............................................................................................................27

5 U.S.C. § 706.............................................................................................................25

8 U.S.C. § 1252......................................................................................................27, 28

8 U.S.C. § 1357...................................................................................................*passim*

**Other Authorities**

8 C.F.R. § 241.2 ..................................................................................................29

8 C.F.R. § 287.8 ..................................................................................................29

8 C.F.R. § 1236.1 ..............................................................................................5, 9

*Castañon Nava v. Department of Homeland Security*,
   No. 1:18-cv-03757, Appendix A at 1 (Feb. 7, 2022), DE 155-1 .......................11, 29

Fed. R. Civ. P. 12(b)(1)....................................................................................2, 30

Fed. R. Civ. P. 12(b)(6)..........................................................................................2

Restatement (Second) of Torts, § 875............................................................23

# PRELIMINARY STATEMENT

In seeking to dismiss Plaintiffs' claims, Defendants largely avoid discussion of the merits and principally argue that Plaintiffs lack standing. The argument fails. Because Defendants have a policy of arresting first and asking questions later, both the Individual Plaintiffs and the members of Plaintiff Workers Center of Central New York ("WCCNY") face a substantial risk that Defendants will again subject them to unlawful warrantless arrests in the future. Plaintiffs satisfy both the pleading and preliminary injunction standards for standing.

Defendants' opposition to Plaintiffs' motion for a preliminary injunction or stay fails for similar reasons. Defendants do not dispute that immigration officers must have probable cause to believe someone is likely to escape before they make a warrantless arrest. They argue only that they have no policy or practice of making arrests without the required probable cause. But the overwhelming, and largely undisputed, record establishes that this unlawful policy and practice exists.

In enjoining this same unlawful conduct, courts across the country have rejected the very same arguments that Defendants recycle here, finding that Defendants' policies and practices exist, that they are final agency action, that the balance of equities weighs in the plaintiffs' favor, and that the plaintiffs and putative classes are irreparably harmed by their unlawful arrests. *See* pp. 25–32, *infra*. This Court should reach the same conclusion and, on that basis, deny Defendants' motion to dismiss and preliminarily enjoin or stay Defendants' unlawful warrantless arrest policy.

# ARGUMENT

## I. DEFENDANTS DO NOT MEANINGFULLY DISPUTE THE EXISTENCE OF THE ALLEGED WARRANTLESS ARREST POLICY.

Defendants' arguments opposing Plaintiffs' motion for a preliminary injunction or stay and in support of their motion to dismiss largely rest on the incorrect premise that Defendants do not

have a policy and practice of making warrantless arrests without probable cause.[1] DE 54 at 11–12, 14–15, 24–30. But, in so arguing, Defendants ignore the vast majority of Plaintiffs' allegations and evidence.

Defendants make no attempt to dispute 25 sworn declarations in the record, describing dozens of arrests across the state conducted without a warrant and probable cause as to risk of escape.[2] *See* DE 21-1 at 5–10, 16–18. As to Plaintiff WCCNY, Defendants do not dispute Ms. Maxwell's sworn account of how this policy has impacted WCCNY members, DE 21-11 ¶¶ 25–26, 29–32, incorrectly attempting to dismiss her testimony as "inadmissible hearsay," DE 54 at 20, even though it is well established that "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction," *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). Defendants also fail to address the nearly 30 news articles and reports describing Defendants' policy and the widespread increase in unlawful arrests that has resulted from the policy. *See* DE 21-1 at 4–5; *see generally* DE 23 (and exhibits cited therein). Perhaps most conspicuously, Defendants fail to explain or disavow *their own statements* sanctioning the arrest of anyone believed to be present unlawfully (irrespective of escape risk) and threatening increased community/collateral arrests in New York State. DE 21-1 at 3–5. Finally, Defendants also have no

---

[1] Defendants confuse the standard of review, arguing that Plaintiffs' claims "are unlikely to succeed" because "Plaintiffs fail to state a claim" or "adequately allege" that the challenged policy exists. DE 54 at 29–30. But Defendants moved only under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6), DE 50, and rely on extrinsic evidence when making these arguments, DE 54 at 30. In any event, Plaintiffs have more than adequately alleged the challenged policy in their Complaint. *See* DE 1 at 11–13, 39–49.

[2] Defendants' failure to dispute this evidence is particularly glaring in light of their demands that Plaintiffs reveal the identities of the pseudonymous declarants, *see* DE 43 at 2, which Plaintiffs provided pursuant to the protective order entered by Judge Wicks, *see* DE 40-1.

explanation for the rulings of multiple federal courts that have relied upon similar evidence to find that Defendants have implemented this same policy and practice across the country.

In the face of this evidence, Defendants make three meritless arguments: (1) that, contrary to fact, their formal policy is to assess probable cause of escape risk before making warrantless arrests; (2) that certain Plaintiffs' arrests were lawful; and (3) that they are subject to related orders by other courts in this District.

**A.**   **Defendants' Written Guidance in Fact Demonstrates the Policy Plaintiffs Allege.**

Defendants' assertion that they "agree" with the Plaintiffs on the scope of their warrantless arrest authority, DE 54 at 29; *see also* DE 56-1 ¶ 5, is mistaken both factually and legally. First, the Lyons Memo does not demonstrate compliance with 8 U.S.C. § 1357(a)(2) (as Defendants suggest) but rather is further proof that Defendants are not requiring probable cause of escape risk prior to effectuating warrantless arrests. Defendants fail to address Plaintiffs' arguments that the Lyons Memo misstates the probable cause standard for assessing escape risk and significantly departs from ICE's prior policy, outlined in the Broadcast Statement of Policy. *See* DE 21-1 at 4, 17, 22. A federal court recently concurred, finding Defendants did not "agree" with the plaintiffs "on the correct definition of 'escape risk'" because the Lyons Memo "does not properly" instruct agency officers on how to conduct the escape risk inquiry and "provides no guidance on considering an individual's ties to his or her community." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 2026 WL 1256234, at *11–12 (D.D.C. May 7, 2026). The court therefore prohibited DHS "from relying on the probable cause standard or analytical approach set forth in the Lyons Memo when conducting civil immigration arrests without a warrant in [the D.C.] District." *Id.* at *18 (cleaned up). Here too, given the legal shortcomings of the Lyons Memo, the

parties do not "agree" on the correct legal standard, and the Lyons Memo is evidence of Defendants' unlawful policy.

Second, the Court should reject Defendants' arguments about training that DHS agents purportedly receive on the probable cause standard. DE 56-1 ¶ 8; DE 52 ¶¶ 6–7. Any such training cannot save Defendants because it necessarily incorporates the incorrect standard outlined in the Lyons Memo. *See Escobar Molina*, 2026 WL 1256234, at \*17–18; *see also Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1234–35 (D. Colo. 2025) (finding a policy and practice of conducting warrantless arrests without probable cause of escape risk notwithstanding the argument that ICE agents were trained on the correct legal standard). Moreover, the training that agents allegedly receive bears no correspondence to the facts on the ground. The evidence at the May 19, 2026 hearing on Plaintiff Rene Antonio Benitez's individual habeas corpus petition is a case in point. *See* Declaration of Amy Belsher ("Belsher Decl."), Ex. 1, Hr'g Tr. ("Tr."), *Benitez v. Genalo*, No. 26-cv-1122 (SJB) (E.D.N.Y. May 19, 2026). There, one of the arresting officers testified that he had probable cause to arrest Mr. Benitez without a warrant and without undertaking any escape risk inquiry, based solely on the belief that Mr. Benitez was present unlawfully in the country. Tr. at 73:14–17. The officer's misunderstanding of the law demonstrates that he was not trained in the correct legal standard.

Similarly, another ICE officer involved in processing Mr. Benitez's arrest stated that he attended one mandatory training on civil immigration arrests when he first joined ICE in 2022, and that follow-up training—which he has not attended—is optional. Tr. at 84:13–21; 105:1–25; 106:1–4. He further testified that he believed, based on his training, that it is permissible to begin the NTA process *after* conducting an immigration arrest, Tr. 167:13–22, even though doing so

violates ICE's own regulations,[3] *see Gopie v. Lyons*, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025). Plainly, any training has failed. *See Ramirez Ovando*, 810 F. Supp. 3d at 1235 (stating that testimony from an ICE officer who "was trained on § 1357(a)(2)" yet "could not seemingly recall the correct standard [for conducting warrantless arrests] . . . does not imbue the Court with great confidence that ICE rigorously applies the individualized-flight-risk-assessment requirement and instead supports plaintiffs' contention that ICE has a pattern or practice of failing to make such determinations"); *see also, e.g.*, *Sanchez Alfaro v. Mullin*, 2026 WL 734348, at *6 (E.D.N.Y. Mar. 16, 2026) ("Law enforcement officers cannot uphold laws of which they are unaware or do not understand."), *clarified on denial of reconsideration*, *Sanchez Alfaro v. Mullin*, 2026 WL 1142478 (E.D.N.Y. Apr. 27, 2026).

Third, this Court should not credit Defendants' recitation of the applicable legal standard, where the facts overwhelmingly demonstrate that Defendants are implementing an unlawful warrantless arrest policy that violates this standard. *See M-J-M-A- v. Hermosillo*, 2026 WL 562063, at *21–22 (D. Or. Feb. 27, 2026) (ruling that although defendants assert "with a straight face they are complying with the law," anecdotes of unlawful warrantless arrests and defendants' public statements demonstrated that defendants were implementing an unlawful "pattern and practice of arresting people without a warrant and without the required probable cause determinations"); *see also Escobar Molina*, 2026 WL 1256234, at *12 ("Whatever defendants may represent to this Court as the correct interpretation of the Lyons Memo, defendants' officers have not received the

---

[3] Defendants ask this Court to read the plain language of the regulation in question—8 C.F.R. § 1236.1—which permits arrest only "[at] the time of issuance of the notice to appear" ("NTA") or thereafter, to permit them to arrest people *before* that required paperwork is issued and to complete the NTA up to a full day later. DE 54 at 30 n.9. But the regulation plainly does not permit that reading. Moreover, the requirement Defendants seek to disregard is in place for a reason—as Defendants note, the NTA requires detailed documentation and evidence of removability, including information bearing on whether detention is permissible or required. *Id.*

same message."). If it were the case that Defendants' mere regurgitation of the legal standard could supplant Plaintiffs' unrefuted factual evidence, government agencies could easily and routinely insulate their actions from judicial review.

### B.        Defendants' Policy Is Pervasive and Ongoing.

Defendants also attempt to dispute the existence of a policy by vaguely alluding to purported changes to their arrest policy.[4] DE 54 at 14–15, 30. But recent reporting and events confirm the existence of Defendants' ongoing policy and practice. DHS agents continue to make a high number of warrantless arrests that follow the same pattern described in Plaintiffs' allegations and supporting evidence: DHS agents abruptly stop individuals—disproportionately Latino people—and arrest them during "moments as mundane as buying milk, walking their dog, taking out the trash or picking up their children from soccer practice." Belsher Decl., Ex. 2 (Hogan et al.). These sudden encounters have "ramped up in recent months." *Id.* Border Czar Tom Homan confirmed that these street arrests in New York will continue, promising to "flood the zone." *Id.*, Ex. 3 (Moeller). On May 28, 2026, following New York State's ban of 287(g) agreements purporting to permit local law enforcement agencies to carry out immigration enforcement functions, Homan announced plans to "send more officers into the street to look for more people" to serve the Trump Administration's goals to "arrest [noncitizens] in the state of New York, . . . put them on a plane and move them out of state, away from their families, away from what they have there." *Id.*, Ex. 4 (Giaritelli). On June 8, Homan repeated these threats, claiming, "You are going to see more ICE agents than you have ever seen in New York City. And it's coming . . . . I just reviewed an operational plan. I'm not going to tell you exactly when it's going to happen, but it's coming." *Id.*, Ex. 5 (Daly).

---

[4] This assertion implicitly concedes that the policy Plaintiffs allege was at least previously in place.

An incident last month in the Bronx demonstrates how Defendants have continued to carry out their *arrest everyone* policy after the complaint's filing date. Immigration agents tackled, handcuffed, and transported U.S. citizen Jeury Concepcion to another location without inquiring into his immigration status or escape risk. *See id.*, Ex. 6 (Watson & Harp). Video evidence shows Mr. Concepcion walking slowly away from the agents before they surround him, throw him to the ground, and handcuff him. *See id.*, Ex. 7 (Watson). DHS did not attempt to defend the validity of this warrantless arrest, apparently predicated on mistaken identity; instead, it made the Orwellian claim that its agents' violent takedown and handcuffing of Mr. Concepcion was not an arrest at all. *See id.*, Ex. 6 (Watson & Harp).

Similarly, on April 30, 2026, in Patchogue, Defendants arrested Oscar Alexander Curimilma Quille outside his home without a warrant or probable cause that he was likely to escape.[5] *Curimilma Quille v. Blanche*, 2026 WL 1453889, at *1, 5–6 (E.D.N.Y. May 22, 2026). Defendants' only basis for contending that Mr. Curimilma Quille was an escape risk was that he "exited" a vehicle (and had access to that same vehicle). *See id.* at *5–6. Defendants clearly did not consider Mr. Curimilma Quille's community ties at the time of his warrantless arrest because, later, when preparing a custody form, they blatantly disregarded evidence regarding them (his employment, his girlfriend, and his one-year-old U.S. citizen child). *See id.* at *5.

Defendants fail to acknowledge, let alone refute, the evidence demonstrating that Defendants are continuing to implement an unlawful warrantless arrest policy and practice.[6]

---

[5] The court disregarded the government's claims that the petitioner had tried to flee, finding them unsupported in the record. *Curimilma Quille*, 2026 WL 1453889, at *6.

[6] For similar reasons, Plaintiffs' claims are not moot. *See* Section II.E, *infra.*

**C.      Defendants Unlawfully Arrested All Individual Plaintiffs Without Warrants.**

Defendants assert that Individual Plaintiffs Darwin Garcia Medrano's, Hesler Asaf Garcia Lanza's, A.M.C.'s, and H.L.A.O.'s arrests were not warrantless arrests. DE 54 at 30. But they fail to offer any direct evidence to substantiate this claim, and the conclusory assertions in Deputy Field Director Almodovar's declaration, DE 56-1 ¶ 12, are contradicted by the evidence in the record and in Plaintiffs' individual habeas proceedings. Initially, it is uncontested that Defendants did not present any Plaintiffs with a warrant or conduct individualized escape risk determinations before arresting them. *Compare* DE 56-1 ¶ 12, *with* DE 21-4, 21-5, 21-7, 21-8; *see also H.L.A.O. v. Francis*[7] ("ICE did not serve [H.L.A.O.] with a warrant until *after* he had arrived at the Central Islip ICE processing center," and "[a]t no point did anyone at DHS or ICE determine that [H.L.A.O.] presented a flight or safety risk." (emphasis in original)). For example, ICE agents targeted Plaintiff Hesler Asaf Garcia Lanza for arrest not because they had a warrant but "simply because he looked like someone else for whom the agents were purportedly searching." *Garcia Lanza v. Noem*, 2026 WL 585130, at *1 (E.D.N.Y. Mar. 3, 2026). And after being presented with proof that Mr. Garcia Lanza had a legitimate immigration classification and USCIS work authorization, ICE agents nevertheless proceeded to detain him. *See id.* Worse, evidence from Mr. Garcia Lanza's and Mr. Benitez's habeas proceedings shows that Defendants issued warrants *after* the arrests in an apparent effort to paper over their misconduct. *See id.* ("As bureaucratic cover for the arrest, agents completed a post-arrest administrative warrant and then commenced baseless removal proceedings against him."); Tr. 151:16–19 (officer stated he "decided to create" an arrest warrant for Mr. Benitez after he was already arrested). As this Court has observed, "[u]sing an after-the-fact warrant to justify a prior arrest is constitutionally problematic. It also is statutorily

---

[7] Plaintiffs have not provided the citation to this decision due to privacy concerns and the protective order in this action, DE 40-1, but will provide it to the Court and Defendants' counsel upon request.

prohibited under the INA." *Parada Cruz v. Mullin*, 2026 WL 1027441, at \*3 (E.D.N.Y. Apr. 16, 2026).

Rather than disproving the existence of the challenged policy, Plaintiffs' arrests are emblematic of the policy. *See* DE 1 ¶¶ 130–32 (alleging that, pursuant to the challenged policy, Defendants arrest individuals "without warrants or with unlawful ex-post facto warrants, issued after the individual was already in handcuffs or otherwise detained, and without first having made the required probable cause determinations."); *see also* Belsher Decl., Ex. 8 (Dias) (describing detention of Latino U.S. citizen without a warrant and without any probable cause determinations); *Garcia Lanza*, 2026 WL 585130, at \*1 ("[A]pprehending an individual for undefined reasons and then issuing an administrative arrest warrant and an NTA" is a "gross[] abuse" of ICE's authority.); *Parada Cruz*, 2026 WL 1027441, at \*6 (noting ICE's practice of "detaining individuals" and "figuring out the reasons later" has been "documented in case after case").

Even if immigration agents issued warrants for these Plaintiffs, they did so only after the arrest, as in the case of Mr. Garcia Lanza, or prior to the issuance of an NTA, in violation of Defendants' own regulations, 8 C.F.R. § 1236.1(b)(1),[8] or both. Mr. Benitez's case is again illustrative and epitomizes Defendants' practice of issuing ex post facto warrants to justify unlawful warrantless arrests. At the time of his arrest, Mr. Benitez had not been issued an NTA. *See* Tr. 156:9–17. Nonetheless, one of the arresting officers testified that he "requested" a warrant but "didn't wait until [he] had the physical copy of it" before arresting Mr. Benitez. Tr. at 74:15–

---

[8] Deputy Director Almodovar does not contend that Defendants initiated the removal process for any Plaintiff via an NTA before issuing an administrative warrant. DE 56-1 ¶ 12. Tellingly, Defendants concede this requirement in a footnote, claiming that it is not feasible to issue an NTA before making an arrest in the field and implicitly admitting that the warrants preceded the NTAs for these four Plaintiffs. *See* DE 54 at 30–31 n.8; *see also Gopie*, 2025 WL 3167130, at \*1 n.3 ("[T]here is no leeway to avoid issuance of an NTA prior to arrest for a discretionary § 1226(a) removal.").

17. During the hearing, ICE officials revealed that another officer, who was not on the scene and not made available for questioning, had issued three separate warrants in response to this request, none valid. The first two warrants—which were issued before Mr. Benitez's arrest—contained an entirely different name, *see* Tr. 113:1–119:4, and were thus invalid, *see Yeleshev v. Larocco*, 2026 WL 1353806, at *8 (E.D.N.Y. May 14, 2026) (ruling that "false statement" in administrative warrant "render[ed]" petitioner's arrest and detention based on that warrant "unlawful"). The third warrant, which did reflect Mr. Benitez's name, was issued well after his arrest and did not note—as required—the basis for the arrest. *See* DE 6-1 at 4, No. 26-cv-1122; Tr. 97:19–21, 150:15–17.

Defendants similarly admit that no warrant was issued prior to J.R.H.L.'s arrest. DE 54 at 30. Defendants' claim that these arrests were nevertheless "effective in good faith notwithstanding errors in process," DE 54 at 30, calls into serious question their unsubstantiated claims regarding Mr. Garcia Medrano's, Mr. Garcia Lanza's, A.M.C.'s, and H.L.A.O.'s arrests. The "process" that Defendants seek to brush aside is legally required. *See United States v. Cantu*, 519 F.2d 494, 496–97 (7th Cir. 1975) (finding 8 U.S.C. § 1357(a)(2)'s escape risk prong "is a statutory limitation" that "is always seriously applied").

It is undisputed that Defendants' agents arrested the remaining two Individual Plaintiffs without a warrant. *See* DE 54 at 30. Defendants claim that the warrantless arrests of Plaintiffs F.R.P and R.C.R—a married couple with stable lawful employment who live in Buffalo with their nineteen-year-old daughter and near F.R.P.'s elderly mother—were lawful because CBP officers had probable cause that they would "escape." DE 54 at 30. Specifically, Defendants argue that the fact that their car had Florida plates and they allegedly lied once before to immigration authorities about some undisclosed issue equates to having probable cause that they were likely to flee. DE 52 ¶ 10. But this assessment does not satisfy ICE's Broadcast Statement of Policy, which makes

clear that the "likelihood of escape" determination must include examination of an individual's "ties to the community (such as a family, home, or employment) or lack thereof." *Castañon Nava v. Department of Homeland Security*, No. 1:18-cv-03757, Appendix A at 1 (Feb. 7, 2022), DE 155-1.[9] Nor does it satisfy the definition of escape risk that has been widely accepted by courts. *See, e.g.*, *La Franca v. Immigr. & Naturalization Serv.*, 413 F.2d 686, 689 (2d Cir. 1969) (observing that petitioner's status as an "owner and operator of a bakery in Jersey City" weighed against likelihood of escape before warrant could be obtained); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 47 (D.D.C. 2025); *Ramirez Ovando*, 810 F. Supp. 3d at 1241. Not only did officers rely upon some factors that do not relate to the proper escape risk inquiry, they also failed to ask *any* affirmative questions germane to escape risk, DE 21-10 ¶ 13-14, and ignored information demonstrating familial ties, DE 21-10. ¶ 12. Notably, during a conversation with Plaintiffs' English-speaking daughter during the arrest, the arresting agent told her that he "did not need a warrant" and that "he was going to create a warrant" once he took her parents to his office. *Id.*

## II.     PLAINTIFFS HAVE STANDING.

### A.        Legal Standard

"To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision.'" *Silva v. Farrish*, 47 F.4th 78, 86 (2d Cir. 2022) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016)). An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). And an injury is "fairly traceable" if there is

---

[9] To the extent Defendants claim that the Lyons Memo sets forth the appropriate inquiry, they are mistaken for the reasons set forth at Section I.A, *supra*.

"a causal connection between the injury and the conduct complained of." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting *Lujan*, 504 U.S. at 560). Where multiple plaintiffs seek the same relief, only one must have standing. *Centro de la Comunidad Hispana de Locust Valley v. Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (citation omitted).

A plaintiff who seeks "'forward-looking, injunctive relief'" to prevent future harm must show that the risk of such harm is "'sufficiently imminent and substantial'" to satisfy the injury-in-fact requirement. *Silva*, 47 F.4th at 86 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)). If an established government policy authorizes the challenged actions, there is an increased likelihood that future injury will occur. *Baur v. Veneman*, 352 F.3d 625, 640–41 (2d Cir. 2003). And while past injuries alone cannot establish a plaintiff's standing to seek injunctive relief, they are relevant to the question of "whether the plaintiff is likely to be harmed again in the future in a similar way." *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

"Standing is determined as of the filing of the complaint." *Doe v. McDonald*, 128 F.4th 379, 384–87 (2d Cir. 2025).[10] It must be demonstrated "'with the manner and degree of evidence required at the successive stages of the litigation.'" *Doe*, 128 F.4th at 384 (quoting *Lujan*, 504 U.S. at 561). To survive a motion to dismiss, a complaint must contain "plausible" and "nonconclusory" allegations regarding standing. *Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). On a motion for preliminary injunction, a plaintiff must set forth specific facts by affidavits or other evidence—taken as true for purposes of the motion, *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119 (2d Cir.

---

[10] However, when a plaintiff brings a claim for injunctive relief, courts may consider events that occur soon after the filing of the complaint, especially where the post-filing events confirm pre-filing actions. *Hakim v. Chertoff*, 447 F. Supp. 2d 325, 328 (S.D.N.Y. 2006) (citing *Baur*, 352 F.3d at 637 n.11).

2025)—that clearly show that the plaintiff is likely to have standing. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

**B.      Individual Plaintiffs Have Standing Because They Face a Substantial Risk of Re-Arrest Pursuant to Defendants' Unlawful Policy.**

Defendants' primary contention is that Plaintiffs have not suffered an injury in fact. DE 54 at 7. They have. Plaintiffs have a "real and immediate" risk of being unlawfully re-arrested due to Defendants' pervasive policy and practice of arresting first and asking questions later. *Escobar Molina*, 811 F. Supp. 3d at 33 (finding similarly situated plaintiffs had standing to challenge same policy). This case is on all fours with *Escobar Molina*. The Court should follow it and the multiple other district courts that have concluded, under similar circumstances, that previously arrested plaintiffs have standing given their risk of re-arrest under Defendants' continuing policy. *See, e.g.*, *M-J-M-A-*, 2026 WL 562063, at *15–16; *Ramirez Ovando*, 810 F. Supp. 3d at 1226; *see also United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 709 (E.D. Cal. 2025) (stating that defendants did not argue that plaintiffs failed to show an injury in fact and causation).

First, Defendants are engaging in a "systemic policy and practice of making warrantless arrests without individualized determinations" of escape risk. *See Escobar Molina*, 811 F. Supp. 3d at 33; Section I, *supra.* In addressing this practice, this Court has stated, "Police and law enforcement cannot operate as roving bands, detaining individuals, figuring out the reasons later, and papering over their failures afterwards." *Parada Cruz*, 2026 WL 1027441, at *5. Yet, under Defendants' *arrest everyone* policy, that is exactly what is happening. Defendants' policy makes it significantly more likely that Plaintiffs' injuries will recur, *see Baur*, 352 F.3d at 637, 640–41; *Escobar Molina*, 811 F. Supp. 3d at 33, particularly in light of Defendants' stated goal to arrest and deport large numbers of noncitizens, *see* DE 23-2; DE 23-3; DE 23-5.

Second, Plaintiffs are among the group of people targeted by Defendants for civil immigration arrests. *Escobar Molina*, 811 F. Supp. 3d at 33–34. Defendants systematically target Latinos and Plaintiffs' neighborhoods for immigration enforcement. *See, e.g.*, DE 21-36 (providing a cab driver's observations of immigration stops and arrests in the Hempstead area). Plaintiffs live, work, and perform daily activities in areas where Defendants admit that they conduct this unlawful immigration enforcement. *See* DE 52 ¶ 9 (stating that Border Patrol staked out a Walmart in Cheektowaga because it "is known to be frequented by [undocumented persons] not familiar with the area"); DE 56-1 ¶ 12 (stating that Defendants stopped and arrested four Plaintiffs while looking for other individuals). The vast majority of people whom Defendants arrest on New York streets, sidewalks, and other public areas are Latino, and Defendants target Latino neighborhoods. *See, e.g.*, Belsher Decl., Ex. 2 (Hogan et al.); *id.*, Ex. 9 (Shoemaker).[11]

Third, Defendants stopped and arrested Plaintiffs while they were engaging in quotidian conduct that they cannot reasonably avoid repeating. *See Escobar Molina*, 811 F. Supp. 3d at 34; DE 21-3 ¶¶ 6–9 (stopped and arrested while driving daughter to school); DE 21-4 ¶ 4 (stopped while getting gas); DE 21-5 ¶¶ 2–5 (stopped and arrested en route to work); DE 21-6 ¶¶ 6, 13–14 (same); DE 21-7 ¶¶ 6–8 (same); DE 21-8 ¶¶ 8, 14 (stopped and arrested outside his apartment building on the way home from work); DE 21-9 ¶¶ 7, 11–12 (stopped and arrested after buying groceries). Plaintiffs are therefore "'realistically threatened by a repetition of [their] experience.'"

---

[11] The risk to Plaintiffs is exacerbated because Defendants' agents frequently claim to stop Latinos because they resemble other, targeted, individuals. *See, e.g.*, *Sanchez Alfaro*, 2026 WL 734348, at *2 n.6 (collecting cases) ("As in *Garcia Lanza*, the officer testified under oath that he had mistaken Petitioner for another unidentified, undescribed individual for whom the officers were allegedly searching . . . . This rationale has become so commonplace in cases involving ICE enforcement efforts that such testimony must be examined carefully."). Indeed, Defendants' agents stopped both Plaintiffs Garcia Lanza and Benitez because of their purported resemblance to a target. *See id.*; Tr. 19:1–10.

*Escobar Molina*, 811 F. Supp. 3d at 34 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). As in *M-J-M-A-*, "Plaintiffs are in danger the moment they open their front doors." 2026 WL 562063, at \*15.

The protection that some Plaintiffs have against re-detention due to their release on habeas or bond does not mitigate this risk because Defendants' agents arrest everyone and do not perform the inquiry that would be necessary to uncover these protections. The re-arrest of G.E.V.S. in Geneva provides a stark illustration of Defendants' *arrest everyone* policy in practice. *See* DE 21-13 ¶¶ 16–18. After his first warrantless arrest, which resulted in his spending over two months in detention, G.E.V.S. was released with conditions, including an ankle monitor. *Id.* ¶¶ 11, 15. On his way to work, immigration agents stopped the car he was riding in and aggressively removed and handcuffed him and the other occupants without asking them any questions. *Id.* ¶¶ 16–18. The agents re-detained G.E.V.S. for an hour before releasing him. *Id.* ¶ 19. As G.E.V.S.'s ordeal demonstrates, under Defendants' policy, protections against re-detention are irrelevant at the time of arrest; agents arrest first and ask questions later. *See Sanchez Alfaro*, 2026 WL 734348, at \*4 ("Here, ICE officers presume that they will effect an arrest *unless* they can discover cause *not* to do so by performing a records check . . . . [O]ne officer testified that such treatment would equally apply to citizens, who would be arrested unless able to prove their citizenship . . . ."). Moreover, Defendants have not shown that they have the necessary systems in place to prevent re-arrests.

For these reasons, Plaintiffs face a substantial risk of harm and have established an injury in fact. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (stating that allegations of future injury "may suffice if . . . there is a substantial risk that the harm will occur") (citation and internal quotation marks omitted). *Escobar Molina* thoroughly refutes most of Defendants' arguments to the contrary. 811 F. Supp. 3d at 34–37 (distinguishing *Lyons*, Justice Kavanaugh's

concurrence in *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2–3 (Sept. 8, 2025), *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), and *United States v. Texas*, 599 U.S. 670 (2023)).

First, *Lyons*—a case Respondents cite for the generic proposition that suffering a wrong in the past does not make one likely to suffer it in the future— is materially different from this case. That holding turned on the absence of any pattern and practice or policy that would subject the plaintiff to the same violence again. Here, there are written and oral pronouncements and evidence showing a pattern of immigration agent behavior that indicate that Defendants' official policy not only permits, but in fact directs immigration agents to make warrantless arrests without individualized considerations of escape risk. *Compare* Section I, *supra*, *with Lyons*, 461 U.S. at 110, n.9. Because Defendants have a policy and practice of conducting warrantless arrests without individualized consideration of escape risk; because Defendants target Plaintiffs' ethnic group and neighborhoods; and because Plaintiffs cannot reasonably avoid the conduct that led to their original stops and arrests, Plaintiffs face a substantial risk that they will encounter immigration officers who will subject them to an unlawful warrantless arrest in the future. *See Escobar Molina*, 811 F. Supp. 3d at 34–35; *see also M-J-M-A-*, 2026 WL 562063, at *15 (distinguishing *Lyons* because, among other reasons, Defendants have a pattern of conducting unlawful warrantless arrests).

Second, unlike in *Vasquez Perdomo*, Plaintiffs do not challenge the application of certain factors to them; they allege that Defendants flout a statutory requirement. Whatever deference a court should give to Justice Kavanaugh's concurrence[12] when deciding a case with similar facts, it is inapposite here. *Escobar Molina*, 811 F. Supp. 3d at 36. Third, *Clapper* and *Texas*[13] are

---

[12] No other Justice joined the concurrence.

[13] Relatedly, Defendants' assertion that Plaintiffs "confirm the preliminary relief they request is . . . about ensuring others are not unlawfully arrested without a warrant," DE 54 at 15, is false. These

likewise inapposite because in those cases, the plaintiffs "could not show that they were subject to the policy being challenged." *Id.* Also, in contrast to *Clapper*, Plaintiffs do not rest on speculation as to how an officer will exercise discretion. 568 U.S. at 412. Instead, they have provided ample evidence of how Defendants' policy operates in practice: they were arrested without any individualized consideration of their likelihood of escape. *See* DE 21-1 at 6–9 (and declarations cited therein). Now, they face a concrete future risk of re-arrest pursuant to the policy.

Finally, the decision in *Hussen v. Noem* confirms rather than undermines Plaintiffs' standing.[14] In *Hussen,* the court found that immigration officials adopted unlawful stop and arrest policies in Minnesota between mid-December 2025 and mid-January 2026. *Hussen v. Noem*, 2026 WL 657936, at *37–40 (D. Minn. Mar. 9, 2026). It nonetheless declined to grant injunctive relief because it found that the defendants were not likely to stop or arrest the plaintiffs again under these policies. *Id.* at *41. In reaching that conclusion, the court placed great weight on (a) the fact that no plaintiff or declarant had been arrested a second time and (b) the fact that Defendants were reducing the intensity of their enforcement operations in the Twin Cities metropolitan area. *Id.* at *27, 41. These factors alone distinguish this case. As described above, immigration agents arrested G.E.V.S. again without a warrant following a seemingly random stop and without asking him any

---

statements in Plaintiffs' declarations clearly relate to their adequacy to be class representatives, *i.e.*, they are ready to fight to protect not only their rights, but the rights of class members. *See, e.g.*, DE 21-3 ¶ 15; DE 21-5 ¶ 23.

[14] Nor does the decision in *Sanchez Alfaro*, 2026 WL 734348, undermine Plaintiffs' standing. In that decision, Judge Brown concisely articulated why probable cause of escape risk did not exist for one individual. *See id.* at *5. Given Defendants' disregard of the large body of caselaw interpreting 8 U.S.C. § 1357(a)(2) and other INA requirements prior to this decision, it is implausible that a decision regarding one individual in one District would change Defendants' policies statewide. *See, e.g.*, *Parada Cruz*, 2026 WL 1027441, at *5; *see also* DE 21-1 at 15–16 (discussing cases defining "likely to escape").

questions whatsoever. DE 21-13 ¶¶ 16–18. And Defendants have continued to make immigration arrests in New York at an elevated pace since last summer.[15] *E.g.*, Belsher Decl., Ex. 10 (Levy & Sun). Further, Defendants have expressed an intent to *increase* enforcement in New York State, not reduce it. *E.g.*, DE 1 ¶ 62 (quoting senior White House Official as stating that "CA and NY" were "next" for aggressive enforcement); Belsher Decl., Ex. 4 (Giaritelli) (quoting Homan as stating that he is working on a plan to send more immigration agents into New York streets). All Plaintiffs thus face a substantial risk of re-arrest due to Defendants' random, arbitrary, and aggressive practices.

### C.　Plaintiff Workers Center of Central New York Has Standing.

Contrary to Defendants' claims, *see* DE 54 at 18–22, the allegations in the complaint and the preliminary injunction record are sufficient to establish WCCNY's associational and organizational standing. An organizational plaintiff can satisfy Article III's standing requirements "[e]ither" by "claim[ing] that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)); *see also N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).

WCCNY has associational standing because its members face the same imminent risk of future injury as the Individual Plaintiffs. *See* Section II.B, *supra*. For associational standing, an organization "must demonstrate that '(a) its members would otherwise have standing to sue in their

---

[15] "The pace of immigration arrests in the New York City area has remained at an elevated level since last summer—a contrast to the operations in Chicago and Minneapolis, where arrests skyrocketed for a month or two and then calmed down . . . . In Minnesota, [arrests] fell from more than 80 a day in January to just about three a day. At the same time, arrests in the New York City area went from about 30 a day in January to about 28 a day in early March." Belsher Decl., Ex. 10 (Levy & Sun).

own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Students for Fair Admissions, Inc.*, 600 U.S. at 199 (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). Defendants only argue that WCCNY falls short on the first prong. *See* DE 54 at 19–20. To satisfy the first prong, WCCNY need only identify "at least one association member" who meets the test for individual standing. *Do No Harm*, 126 F.4th at 118; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (describing organizational plaintiff's burden "to identify members who have suffered the requisite harm").

Here, because WCCNY has identified at least three such members, including one who is identified by his true name, and provided detailed descriptions of their warrantless immigration arrests without probable cause of escape risk (including that the arrests occurred while the members were performing everyday activities), the first prong is satisfied. *See* DE 21-11, ¶¶ 25–32; *cf. Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 320–22 (S.D.N.Y. 2020) (applying associational standing test). Just like Individual Plaintiffs, WCCNY's members have made a clear showing that they have a substantial risk of re-arrest. *See Escobar Molina*, 811 F. Supp. 3d at 37 (finding associational standing where organizational plaintiff's members "are also subject to defendants' allegedly unlawful policy, are among the group of individuals that defendants target, and cannot avoid repeating the quotidian conduct that led to their original arrests"); *see also* DE 21-11 ¶ 25 (describing WCCNY member Jane Doe 2's arrest while driving to pharmacy to pick up medication for her sick child), ¶¶ 29–30 (describing WCCNY member John Doe 4's arrest while driving to work), and ¶ 32 (describing WCCNY member Luis Enrique Gomez Garcia's arrest while driving to work after dropping off his daughters at their elementary school).

Defendants do not dispute that WCCNY satisfies the second and third prongs of the associational standing test. In any event, the interests WCCNY seeks to protect in this litigation are germane to its mission "to empower and support low-wage workers from all backgrounds to combat workplace abuses and to fight for improved wages and working conditions through policy advocacy, leadership development, organizing, and popular education," as well as its "core activities," which include "provid[ing] referrals to legal" services, and its "operation of an immigration emergency hotline." DE 21-11 ¶¶ 4–6. Additionally, WCCNY's individual members' participation is unnecessary in the lawsuit because the organization "seek[s] an injunction barring enforcement" of Defendants' policy, and individualized members' proof is not required because Defendants' warrantless arrest policy is the subject of the inquiry. *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 229 (2d Cir. 2011).[16]

Defendants' challenge to WCCNY's organizational standing, *see* DE 54 at 20–21, fares no better. "[O]rganizations may have standing 'to sue on their own behalf for injuries they have sustained,'" provided they "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, n.19 (1982)); *see also Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 167 F.4th 605, 616 (2d Cir. 2026) (stating that an organization must show that "it was directly injured as an organization"). In other words, an organization must show a perceptible impairment of its core business activities. *All. for Hippocratic Med.*, 602 U.S. at 395.

---

[16] It is irrelevant that no Individual Plaintiff is a member of WCCNY. *See* DE 54 at 19. Because associational standing requires the participation of individual members to be unnecessary, the named member(s) of the association need not serve as plaintiffs.

Defendants' warrantless arrest policy directly impairs WCCNY's ability to carry out its primary responsibilities.[17] *See Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 110–11; *N.Y. Civil Liberties Union*, 684 F.3d at 295. Defendants do not only frustrate WCCNY's abstract "mission," DE 54 at 21, they prevent it from successfully carrying out its day-to-day operations, akin to the impairment of HOME's housing counseling service in *Havens*, *see* 455 U.S. at 379. WCCNY's core activities and responsibilities include "providing worker rights and occupational health and safety trainings, assistance with wage theft and OSHA complaints, referrals to immigration legal services providers, and emergency housing assistance for displaced workers." DE 1 ¶ 151; *see also* DE 21-11 ¶¶ 5, 13, 16, 19. Because of Defendants' policy of making warrantless arrests without probable cause of escape risk—carried out by roving bands of immigration agents—WCCNY's members are too scared to come to its office to attend meetings and trainings and receive services. DE 1 ¶ 156; DE 21-11 ¶¶ 21–23. As described above, WCCNY's members face the same substantial risk of unlawful warrantless arrests as Individual Plaintiffs. Due to this risk and the resultant chilling effect, which prevents its members from accessing its services, WCCNY can no more provide effective training, referrals, and assistance to members than HOME could provide effective housing counseling. *See* DE 1 ¶ 156; DE 21-11 ¶¶ 21–24; *cf. New York v. U.S. Dep't of Homeland Sec.*, 969 F.4th 42, 59–60 (2d Cir. 2020) (holding that injury caused by chilling effect could establish standing).

Moreover, Defendants' warrantless arrests policy is causing WCCNY's injury. WCCNY's members are chilled from accessing WCCNY's services because they are both aware of the

---

[17] The direct harm to WCCNY is caused by Defendants' warrantless arrest policy operating hand in hand with its policy of stopping people based on their perceived ethnicity and without reasonable suspicion of an immigration violation. *See, e.g.*, DE 1 ¶ 156. However, the suspicionless stops policy is not at issue in these motions.

consequences of the policy *and* are at substantial risk of unlawful arrest because they are targeted by the policy. *See, e.g.*, DE 1 ¶¶ 151–156; DE 21-11 ¶¶ 12, 20–35; *cf. Laird v. Tatum*, 408 U.S. 1, 11 (1972) (holding that a party may have standing based on a chilling effect where "the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging"). Therefore, WCCNY also has direct organizational standing.

### D. Plaintiffs' Injuries Are Traceable to the DOJ Defendants.

Defendants contest traceability only to the Department of Justice ("DOJ") Defendants (DOJ, Todd Blanche, Federal Bureau of Investigation ("FBI"), Kash Patel, U.S. Marshals Service, and Gadyaces Serralta). DE 54 at 8–18. Traceability is not an onerous standard; it is less than proximate cause. *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 352–53 (2d Cir. 2023). The defendant's actions need not be the last step in a chain of causation that results in an injury. *Bennett v. Spear*, 520 U.S. 154, 168 (1997). Instead, the question is whether the "asserted injury could have been a consequence of the actions of the defendant rather than being attributable to the independent acts of some other person not before the court." *Chevron Corp. v. Donzinger*, 833 F.3d 74, 121 (2d Cir. 2016).

Plaintiffs have shown the requisite de facto causality as to the DOJ Defendants. *See Ateres Bais Yaakov Acad. of Rockland*, 88 F.4th at 353 (citation omitted). Their injuries are a direct consequence of the DOJ Defendants' actions (along with the actions of the other Defendants). Plaintiffs allege—and establish in the submitted declarations—that FBI agents and U.S. Marshals are part of the roving bands of federal agents that stop and arrest people across New York. DE 1 ¶¶ 2, 52, 58, 80, 86, 146, 319; DE 21-8 ¶¶ 9, 12, 15 (FBI); DE 21-12 ¶¶ 9, 15, 23 (U.S. Marshals); DE 21-15 ¶¶ 8–12 (FBI). When present at the scene of an arrest, FBI agents and U.S. Marshals

participate in the arrest by, at minimum, forming part of the show of authority and/or force that significantly constrains the individual's freedom of movement. *See, e.g.*, *United States v. Schaffer*, 851 F.3d 166, 174 (2d Cir. 2017) (citation omitted); DE 1 ¶ 58 (video still showing FBI agent pointing gun at roofer); *id.* ¶ 86 (FBI officers among the many officers and cars that surrounded L.R.C.); DE 21-12 ¶ 15 ("I said that I had things to do and asked to leave, but an officer with a vest that said 'U.S. Marshal' blocked my path. I did not feel free to leave because he was blocking me, and other officers with guns were surrounding me."). These arrests did not result because of the "independent action of some third party not before the court." DE 54 at 18. Rather, the FBI and U.S. Marshals, component agencies of DOJ, were active and joint participants in the arrests.[18]

FBI agents and U.S. Marshals have participated and continue to participate in civil immigration enforcement operations in New York, which Defendants do not dispute. Therefore, as joint participants in carrying out the challenged warrantless arrest policy, the DOJ Defendants are jointly responsible for the harm to Plaintiffs and should be subject to the same injunction as all other defendants. *Cf. Burlington N. & Santa Fe Ry. v. United States*, 556 U.S. 599, 614 (2009) (citations omitted) ("[W]here two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm."); Restatement (Second) of Torts, § 875 (same).

**E.      Plaintiffs' Claims for Injunctive Relief Are Not Moot.**

Defendants contend that two decisions in this District—one of which postdates the Complaint—reduce the chance that Plaintiffs will be unlawfully arrested in the future. *See* DE 54

---

[18] For the same reason, Defendants' claim that Plaintiffs "fail to address any statute, regulation or policy that DOJ defendants (FBI and USMS) have violated" (DE 54 at 31) fails. *See Escobar Molina*, 811 F. Supp. 3d at 50 n.47 ("Defendants' argument that plaintiffs fail to state a plausible claim against defendant Drug Enforcement Administration ("DEA") fails" because "plaintiffs have proffered evidence that the DEA is one of the federal agencies enlisted to assist in immigration enforcement and the sworn declaration of an individual plaintiff that an agent involved in his challenged arrest wore a vest that said 'DEA.'" (citations omitted)).

at 14–15; *see also* n.14, *supra* (discussing impact of the March 16, 2026, *Sanchez Alfaro* decision). This argument represents a reversal from the position previously taken by the government, that pronouncements of law made in decisions granting other habeas petitions do not direct or compel the government to pursue specific actions. *See* DE 12 at 3, *Benitez v. Genalo*, No. 2:26-cv-1122 (SJB) (E.D.N.Y. Apr. 12, 2026) (arguing that *Gopie*, 2025 WL 3167130, "should not be construed to apply to all cases alleging improper detention under the Immigration and Nationality Act"). And indeed, this Court's May 14, 2026, decision in *Yeleshev*[19] has no bearing on Plaintiffs' standing or mootness. *See Doe*, 128 F.4th at 384. To render Plaintiffs' claims moot, the decision would need to deprive Plaintiffs of a "personal stake in the outcome of the lawsuit." *Id.* It does not. Defendants have not articulated any changes they have made in response to the *Yeleshev* decision (or any decision) in this (or any other) District, let alone made it "made it absolutely clear that violations could not reasonably be expected to recur" statewide. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 171 (2000) (citation omitted).[20] To the contrary, Defendants have a pattern of failing to abide by court orders in this precise context. *See, e.g.*, *Ramirez Ovando v. Mullin*, No. 25-cv-03183, slip op. at 58 (D. Colo. May 12, 2026) (granting, in part, motion to enforce preliminary injunction); *Escobar Molina*, 2026 WL 1256234, at *21 (D.D.C. May 7, 2026) (granting motion to enforce preliminary injunction); *United Farm Workers v. Noem*, 2026 WL 892070, at *40 (E.D. Cal. Apr. 1, 2026) (granting, in part, motion to enforce preliminary injunction).

---

[19] 2026 WL 1353806.

[20] During the evidentiary hearing in *Benitez v. Genalo*, ICE's officer testified that the claimed shift toward obtaining warrants in advance of arrests is not reflected in "any [policy] directive or document," and that nothing would prevent ICE from returning to its prior practice. Tr. 159:19–162:17.

Defendants' violations of 8 U.S.C. § 1357(a)(2) are not only presently recurring, but with more agents roving New York's streets, *e.g.*, Belsher Decl., Ex. 4 (Giaritelli), and Defendants' policy still in place, violations are likely to increase in the near future. Plaintiffs' claims are not moot.

## III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

While Defendants dispute the challenged policy's existence, they do not dispute that if such a policy and practice did exist, it would be contrary to law, in excess of statutory authority, and arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A), (C); DE 21-1 at 13–23. On the merits, Defendants argue only that the challenged policy is not final agency action and that the Court lacks jurisdiction to grant the requested relief. These arguments fail.[21]

### A. Defendants' Warrantless Arrest Policy Is Final Agency Action.

In disputing that the policy satisfies the APA's requirement that the challenged action marks the consummation of the agency's decision-making process, Defendants contend that Plaintiffs have identified no unlawful final agency action to challenge because the only written directive Plaintiffs cite, the Lyons Memo, urges compliance with § 1357(a)(2). DE 54 at 23–24. They are wrong. Initially, Defendants are incorrect that the APA does not permit challenges to largely unwritten, de facto policies like the one challenged here. DE 54 at 26–27. Courts in this Circuit have repeatedly entertained APA challenges to unwritten agency policies. *See, e.g., Velesaca v. Decker*, 458 F. Supp. 3d 224, 243 (S.D.N.Y. 2020) ("[F]inality can be gleaned from agency action and the effects thereof and does not require any written evidence."); *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 373–75 (S.D.N.Y. 2019); *Amadei v. Nielsen*, 348 F. Supp. 3d 145,

---

[21] Defendants also contend that Plaintiffs have failed to adequately allege violations by the DOJ Defendants. That argument fails for the same reason their traceability argument fails. *See* Section II.D, *supra*.

166 (E.D.N.Y. 2018). Here, the surge in warrantless arrests and Defendants' arrest practices are inconsistent with case-by-case judgment and "necessarily suggests" a centralized policy, "not merely case-by-case guidance to individual officers," *State of New York v. ICE*, 431 F. Supp. 3d 377, 387–88 (S.D.N.Y. 2019).

Defendants cite no Second Circuit authority to the contrary, relying on out-of-circuit decisions arising from very different records. But they acknowledge, as they must, that every court to consider *this* policy has found reviewable final agency action, notwithstanding that no single written document captures its entirety. DE 54 at 26 & n.5; *see Escobar Molina*, 811 F. Supp. 3d at 42–43, 48–49; *M-J-M-A-*, 2026 WL 562063, at *15–16; *Ramirez Ovando*, 810 F. Supp. 3d at 1236–37; *Castañon Nava v. DHS*, 435 F. Supp. 3d 880, 902–03 (N.D. Ill. 2020).

Second, far from undermining Defendants' policy, the Lyons Memo confirms it. The memorandum wrongfully repudiates ICE's prior interpretation of the phrase "likely to escape" as "incorrect," replacing it with erroneous guidance that falls far short of the probable cause standard. Lyons Memo at 4. Specifically, the Lyons Memo redefines "likely to escape" so broadly as to reach virtually anyone encountered in public and omits the community-ties factors ICE had identified as central to the escape-risk inquiry. *See* DE 21-1 at 4, 22; Lyons Memo at 2. The court in *Escobar Molina* found the Memo's definition of escape risk "flawed," its guidance on the "scene of the encounter" legally insufficient, and its failure to address community ties a direct violation of the preliminary injunction order. *Escobar Molina*, 2026 WL 1256234, at *10–14.

And since the issuance of the Lyons Memo, the practice of warrantless arrests has continued, leading to the unlawful arrests of Plaintiffs H.L.A.O., A.M.C., and Benitez in February 2026. DE 21-1 at 6–7. Accordingly, the Lyons Memo has neither cured the unlawful policy nor altered Defendants' practice.

Defendants do not meaningfully contest the second requirement for finality, as unlawful warrantless arrests undoubtedly determine "rights or obligations" and result in "legal consequences." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024). The arrest and incarceration of Plaintiffs and thousands of putative class members are the "direct and appreciable" consequences of the challenged policy. *Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). Defendants' counterargument that the policy may not "affect Plaintiffs" if officers "encounter them again," DE 54 at 28, asks the wrong question: finality looks to whether the challenged action has determined rights and produced legal consequences, not whether future injury is certain, *cf. Corner Post, Inc.*, 603 U.S. at 807–08 ("While § 702 equips injured parties with a cause of action, § 704 limits the agency actions that are subject to judicial review."). Plaintiffs have addressed those standing arguments above. *See* Section II.B, *supra.*

**B.      The Court Has Jurisdiction to Grant the Requested Relief.**

Defendants' contention that 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) remove this Court's subject matter jurisdiction to enter an injunction "limit[ing] ICE's authority to detain an alien who is subject to a final order of removal," DE 54 at 22, ignores both the statutory text and controlling precedent and misunderstands the requested relief.

As is evident from their plain text, the cited provisions only bar injunctive relief if the person suing is challenging either the validity of a final order of removal or removal proceedings. Sections 1252(b) and 1252(b)(9) state that, "[w]*ith respect to review of an order of removal,*" "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove a[] [noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section," 8 U.S.C. § 1252(b)(9) (emphasis added), and section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals .

. . shall be the sole and exclusive means for judicial review of *an order of removal* entered or issued under any provision of this chapter," 8 U.S.C. § 1252(a)(5) (emphasis added). Section 1252(g) mandates that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General *to commence proceedings, adjudicate cases, or execute removal orders* against any [noncitizen] under this chapter" except through a petition for review of a final order of removal. 8 U.S.C. § 1252(g) (emphasis added).

Controlling case law interpreting these limitations—which Defendants do not acknowledge, *see* DE 54 at 22–23—makes clear that they do not bar this Court from issuing the requested injunction, even as applied to noncitizens subject to a final order of removal. Section 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 285 (2018) (plurality opinion) (Alito, J.); *id.* at 355 (Breyer, J., dissenting)). Similarly, "[s]ection 1252(a)(5) bars district court review 'of an order of removal,'" and thus does not apply where "no order of removal is at issue." *Mahdawi v. Trump*, 136 F.4th 443, 453 (2d Cir. 2025). And the Supreme Court has repeatedly rejected the "'implausible'" claim that section 1252(g)'s "narrow" limitation "covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Regents of the Univ. of Cal.*, 59 U.S. at 19 (quoting *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999)); *see also Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025) (rejecting government's claim that habeas petitioner's detention arises from "the commencement, adjudication, or execution of removal proceedings" as "likely mistaken").

Plaintiffs do not seek to challenge any aspect of their own, or any class members', removal proceedings, let alone the validity of a final order of removal. *See* DE 1 at 92–95. Instead, Plaintiffs' challenge is limited to the lawfulness of Defendants' warrantless arrests policy. To obtain that relief, Plaintiffs have sought a preliminary injunction that would enjoin Defendants "from making warrantless immigration arrests in New York State unless, pre-arrest, the arresting agent has probable cause to believe that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), and requiring any warrantless immigration arrests in New York State to "comply with all requirements set forth in DHS's 'Broadcast Statement of Policy' on compliance with 8 U.S.C. § 1357(a)(2)." DE 21-2 at 2; *see also Castañon Nava*, No. 1:18-cv-03757, Appendix at 1 (Feb. 7, 2022), DE 155-1. Unlike the habeas petitioners in the district court opinions cited by Defendants, *see* DE 54 at 22–23 (citing *Villatoro v. Shanahan*, 2026 WL 948297 (E.D.N.Y. Apr. 7, 2026); *Sauceda Henriquez v. Noem*, 2026 WL 111665 (E.D.N.Y. Jan. 15, 2026); *Villatoro v. Noem*, 2025 WL 2880140 (E.D.N.Y. Oct. 9, 2025); *Ceesay v. Bondi*, 2025 WL 1435615 (S.D.N.Y. May 16, 2025)), no plaintiff or putative class member seeks to challenge the validity of their detention in this action or otherwise obtain release from custody.

In any event, the INA's statutory limitation on Defendants' warrantless arrest authority requires probable cause that the noncitizen "is likely to escape before a *warrant* can be obtained for his arrest," regardless of whether removal proceedings have been commenced, or a final order of removal has been issued. 8 U.S.C. § 1357(a)(2) (emphasis added). An injunction requiring compliance with this requirement would not bar Defendants from making a warrantless arrest of any class member with a final order of removal upon probable cause that they are likely to escape before a warrant of removal can be obtained. *See* 8 C.F.R. § 241.2(a)(1) (authorizing issuance of

29

Form I-205); *Escobar Molina*, 811 F. Supp. 3d at 37–42 (rejecting argument that 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) deprived the district court from entering a substantially identical preliminary injunction). Accordingly, this Court should enter the requested injunction.[22]

## IV. PLAINTIFFS FACE IRREPARABLE HARM ABSENT AN INJUNCTION.

As for irreparable harm—"the single most important prerequisite for the issuance of a preliminary injunction," *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)—Defendants simply repeat their standing arguments, *see* Section II, *supra*. Defendants do not dispute that the harm Individual Plaintiffs and many of WCCNY's members have already been subjected to—unlawful arrest—is irreparable. *See* DE 21-1 at 24–25; DE 21-3 ¶¶ 6–9; DE 21-7 ¶¶ 5, 7-13; DE 21-11 ¶¶ 25-26. Nor do Defendants dispute that their enforcement operations continue apace in the very cities and neighborhoods where Individual Plaintiffs and WCCNY's members were arrested, creating an imminent risk that they, alongside members of the putative class, will be subject to an unlawful warrantless arrest. *See Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) ("threat of irreparable harm" suffices); *see also Escobar Molina*, 811 F. Supp. 3d at 51 (finding irreparable harm established where plaintiffs' quotidian and necessary activities place them at direct and imminent risk of immigration arrest). To the contrary, Defendants have clearly and repeatedly threatened to *increase* these immigration enforcement tactics in New York. *See* Section I.B, *supra*.

---

[22] As to Plaintiffs' warrantless arrest claim that is the subject of the pending motion for a preliminary injunction, Defendants argue only that the INA's jurisdiction-stripping provisions limit the scope of available injunctive relief for individuals with a final order of removal and do not move pursuant to Rule 12(b)(1) for dismissal of the claim. *See* DE 54 at 22–23. In any event, such claims would be meritless. *See Castañon Nava*, 435 F. Supp. 3d at 888–95 (rejecting Rule 12(b)(1) arguments for dismissal of similar warrantless arrest claim pursuant to the same INA provisions).

**V.    THERE IS NO PUBLIC INTEREST IN UNLAWFUL IMMIGRATION ENFORCEMENT, AND COMPLIANCE WITH THE LAW DOES NOT HARM DEFENDANTS.**

Defendants' claim that the government's "interest in the steady enforcement of its immigration laws," DE 54 at 33, outweighs the numerous, uncontested harms its warrantless arrest policy inflicts on Plaintiffs and the broader public, *see* DE 21 at 10–12, is flawed, since "the steady enforcement" of "immigration laws" should include compliance with 8 U.S.C. § 1357(a)(2).

"'There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.'" *African Cmtys. Together v. Lyons*, 2026 WL 1382944, at *7 (S.D.N.Y. May 18, 2026) (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The public would benefit from—and, conversely, Defendants would not be harmed by—an order requiring them to comply with their own statutory and regulatory obligations. *See Ramirez Ovando*, 810 F. Supp. 3d at 1239 ("Neither the government nor the public can claim any legitimate interest in the systematic violation of § 1357(a)(2)'s prohibition against warrantless arrests except upon individualized probable cause of flight risk, and that is all this Court enjoins."); *see also Escobar Molina*, 811 F. Supp. 3d at 52–53 (rejecting same argument and finding balance of equities in plaintiffs' favor).

Defendants attempt to have it both ways, arguing that their warrantless arrests comply with § 1357(a)(2)'s escape risk requirement, *see* DE 54 at 1 (noting "the parties closely align on key issues" and that "[t]he policies Plaintiffs seek are already in place"), while simultaneously arguing that an order from this Court requiring such compliance would "throw a central element of immigration enforcement-immigration arrests into intolerable uncertainty," and "inflict irreparable

harm,"[23] DE 54 at 33–34. The order sought here would not "[p]reven[t] the Executive Branch from implementing a major enforcement priority," DE 54 at 33, unless Defendants believe they can only do so while continuing to violate § 1357(a)(2).

Moreover, Defendants grossly overstate the impact of the limited, tailored relief that Plaintiffs seek. Plaintiffs do not ask this Court to "usurp[]" Defendants' immigration enforcement authority. DE 54 at 34. Defendants remain free to conduct *lawful* immigration arrests—even warrantless arrests—and cannot object to being ordered to comply with their own statutes, regulations, and prior guidance in doing so. *Escobar Molina*, 811 F. Supp. 3d at 52–53 (noting injunction "would allow all aspects of immigration enforcement to continue"). As for the limited compliance-related reporting and training Plaintiffs seek, such measures have proven necessary due to Defendants' pervasive noncompliance with similar court orders across the country. *See, e.g., Ramirez Ovando*, 25-cv-03183, slip op. at 58 (granting, in part, motion to enforce preliminary injunction); *Escobar Molina*, 2026 WL 1256234, at *21 (granting motion to enforce preliminary injunction); *United Farm Workers,* 2026 WL 892070, at *40 (granting, in part, motion to enforce preliminary injunction). These reasonable and minimally intrusive requirements are necessary to ensure that Defendants' conduct conforms to the requirements of § 1357(a)(2). *See, e.g.*, *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d Cir. 1997).

---

[23] Defendants cite to Justice Kavanaugh's concurrence in *Vasquez Perdomo* for the proposition that "[a]ny time that the Government is enjoined by a court from effectuating statutes . . . it suffers irreparable injury." DE 54 at 34 (citing *Vasquez Perdomo,* 146 S. Ct. at 4). But Plaintiffs do not ask this Court to enjoin any statute, *see Ramirez Ovando*, 810 F. Supp. 3d at 1239 ("[T]he relief ordered by this Court does not enjoin the government "from effectuating statutes" . . . it compels the opposite."); rather, they seek compliance with a statutory interpretation with which *Defendants* purport to *agree*, DE 54 at 1.

**CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiffs' request for preliminary relief and enjoin or stay Defendants' policy and practice of making warrantless immigration arrests without the required individualized assessment of probable cause.

Dated: June 11, 2026
      New York, NY

Amy Belsher
Ifeyinwa Chikezie
Wafa Junaid
Molly Biklen
NEW YORK CIVIL LIBERTIES UNION
125 Broad Street, 19th Floor
New York, NY 10004
Phone: 212-607-3300
Fax: 212-607-3318

Philip Desgranges
Hasan Shafiqullah
Evan Henley
Brian Perbix
THE LEGAL AID SOCIETY
49 Thomas Street, 10th Floor
New York, NY 10013
Phone: 212-577-3300

/s/ Mark Gimbel
Mark Gimbel
Giovanni Scarcella
Cecile Duncan
COVINGTON & BURLING LLP
30 Hudson Yards
New York, New York, 10001
Phone: 212-841-1000

Jeffrey Cao (admitted pro hac vice)
Jillian Feirson (admitted pro hac vice)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
Phone: 202-662-6000

Paige Austin
Harold A. Solis
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: 718-418-7690

## RULE 7.1(c) CERTIFICATION

The undersigned certifies that, using the "word count" feature of Microsoft Word and excluding the caption, table of contents, table of authorities, and signature blocks, the Reply Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction and Opposition to Defendants' Motion to Dismiss contains 10,931 words.

Dated: June 11, 2026
       New York, New York

/s/ Mark Gimbel