UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------x

RENE ANTONIO BENITEZ, et al.,

                      Plaintiffs,                Civil Action No.
           v.                    26-cv-2082 (SJB)(JMW)

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

                      Defendants.

--------------------------------------------------------------------------x


# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO <u>DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

                      JOSEPH NOCELLA, JR.
                      United States Attorney
                      Eastern District of New York
                      271-A Cadman Plaza East
                      Brooklyn, New York 11201
                      *Attorney for Defendants*


Thomas Price
Marika Lyons
Philip DePaul
Justin Kirschner
Assistant United States Attorney
*Of Counsel*

June 19, 2026

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT............................................................................................ 1

ARGUMENT ......................................................................................................................... 1

    I.      PLAINTIFFS FAILED TO ESTABLISH STANDING .......................................... 1

           A.      Individual Plaintiffs Have Not Proven Standing ........................................ 1

                    i.      Plaintiffs Have Not Shown A Sufficient Likelihood Of Future Injury ........................................................................................ 1

                    ii.      Plaintiffs Have Not Traced Any Unlawful Future Conduct To The DOJ Defendants........................................................................ 3

           B.      WCCNY Still Lacks Standing .................................................................... 4

    II.     PLAINTIFFS HAVE NOT MET THE APA'S REQUREMENT OF "FINAL AGENCY ACTION" ...................................................................................... 5

    III.    PLAINTIFFS DO NOT ADEQUATELY ALLEGE A VIOLATION OF THE STATUTES OR REGULATIONS GOVERNING WARRANTLESS ARRESTS ......................................................................................................... 8

CONCLUSION...................................................................................................................... 12

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*Alfaro v. Mullin*,
   No. 26-0766, 2026 WL 734348 (E.D.N.Y. Mar. 16, 2026) ....................................................... 10

*Bennett v. Spear*,
   520 U.S. 154 (1997)............................................................................................................... 6

*Biden v. Texas*,
   597 U.S. 785 (2022)............................................................................................................... 7

*Connecticut Fair Hous. Ctr. v CoreLogic Rental Prop. Sols., LLC*,
    167 F.4th 605 (2d Cir. 2026) ................................................................................................ 4

*Core Care Health Services, Inc. v. Shalala*,
   No. 98-CV-5812, 1999 WL 124419 (E.D. Pa. March 4, 1999) ..................................................... 9

*Devenpeck v. Alford*,
   543 U.S. 146 (2004) ............................................................................................................. 11

*District of Columbia v. Wesby*,
   583 U.S. 48 (2018)............................................................................................................... 11

*Escobar Molina v. DHS*,
   811 F. Supp. 3d 1 (D.D.C. 2025) ..........................................................................................*passim*

*Escobar Molina v. DHS*,
   No. CV 25-3417, 2026 WL 1256234 (D.D.C. May 7, 2026) ....................................................... 5

*Farm Sanctuary v. United States Dep't of Agric.*,
   No. 24-382-cv, 2026 WL 1030616 (2d Cir. Apr. 16, 2026) ........................................................ 4

*Food and Drug Admin. v All. for Hippocratic Medicine*,
   602 U.S. 367 (2024) ............................................................................................................... 4

*Habitat for Horses v. Salazar*,
   No. 10 CIV. 7684, 2011 WL 4343306 (S.D.N.Y. Sept. 7, 2011) ................................................. 6

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)............................................................................................................... 4

*Hussen v. Noem*,
   822 F. Supp. 3d 944 (D. Minn. 2026) ..................................................................................... 6

*Illinois v. Gates*,
   462 U.S. 213 (1983)............................................................................................................. 11

*Indep. Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004) .................................................................................. 7

*Kamen v. American Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986) .................................................................................. 8

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) .................................................................................. 8

*Maryland v. Pringle*,
    540 U.S. 366 (2003) .......................................................................................... 11

*M-J-M-A- v. Hermosillo*,
    822 F. Supp. 3d 1147 (D. Or. 2026) ...................................................................... 5

*Nava v. DHS*,
    435 F. Supp. 3d 880 (N.D. Ill. 2020) ...................................................................... 5

*Noem v. Perdomo*,
    146 S. Ct. 1  (2025) ........................................................................................... 10

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ......................................................................................... 6, 7

*Ramirez Ovando v. Noem*,
    810 F. Supp. 3d 1209 (D. Colo. 2025) .................................................................... 5

*RCM Techs., Inc. v. DHS*,
    614 F. Supp. 2d 39 (D.D.C. 2009) ......................................................................... 7

*6801 Realty Co., LLC v. United States Citizenship & Immigr. Servs.*,
     719 F. App'x 58, 60 (2d Cir. 2018) ...................................................................... 5

*U.S. ex rel Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) ........................................................................................... 8

*Whren v. United States*,
    517 U.S. 806 (1996) .......................................................................................... 11

**Federal Statutes**

5 U.S.C. § 704 ................................................................................................... 5

8 U.S.C. § 1357(a)(2) ........................................................................................... 9

**Federal Regulations**

8 C.F.R. § 287.8(c)(2)(ii) ..................................................................................... 9

<u>**PRELIMINARY STATEMENT**</u>

Defendants respectfully submit this reply memorandum of law in further support of Defendants' motion to dismiss for lack of subject matter jurisdiction. *See* Docket Entries ("DE") 50-54, 56.

<u>**ARGUMENT**</u>

**I.     PLAINTIFFS FAILED TO ESTABLISH STANDING**

**A.     Individual Plaintiffs Have Not Proven Standing**

**i.     Plaintiffs Have Not Shown A Sufficient Likelihood Of Future Injury**

The parties agree that, to have standing, Plaintiffs' evidence needed to show that their risk of future unlawful warrantless arrest is "sufficiently imminent and substantial," and it "will occur." Defs. Br. at 8; Pls. Br. at 11-12. The parties also agree that Plaintiffs' alleged "past injuries alone" do not carry Plaintiffs' evidentiary burden, and Plaintiffs do not contest that their "subjective apprehensions" of future unlawful warrantless arrests do not either. Pls. Br. at 12; Defs. Br. at 9-13.

Shorn of those allegations, Plaintiffs claim a "real and immediate" risk of being arrested under a "dragnet" "arrest everyone" "arrest[] first and ask[] questions later" "policy and practice" because such a policy allegedly exists, targets Plaintiffs, and Plaintiffs' daily activities expose them to such alleged policy. Pls. Br. at 12-14. That argument borrows from the playbook in *Escobar Molina v. DHS*, 811 F. Supp. 3d 1 (D.D.C. 2025), and Plaintiffs contend "[t]his case is on all fours with *Escobar Molina*," which (in their view) "thoroughly refutes most" (but apparently not all) "of Defendants' arguments." Pls. Br. at 13, 15.

Defendants respectfully disagree with *Escobar Molina*, where the Government has appealed. *See Escobar Molina v. DHS*, No. 26-5045 (D.C. Cir. Feb. 5, 2026). Regardless, this case is not "on all fours" with *Escobar Molina*. There, the plaintiffs challenged an alleged "policy and

1

practice" of warrantless immigration arrests in Washington, D.C., absent necessary probable cause findings. *See* 811 F. Supp. 3d at 34. The Court there held that the evidence showed three facts supporting standing: "defendants 'are engaging'" in unlawful "warrantless arrests," "plaintiffs are likely among those targeted, and [] plaintiffs likely cannot avoid repeating the conduct that led to their original injuries." *Id.* at 33, 35.

Here, however, Plaintiffs have not shown that there is a "real and immediate" risk that their fear of future unlawful warrantless arrest will materialize.

***No Evidence Challenged Alleged Policy Is Operative.*** In *Escobar Molina*, the plaintiffs "presented evidence that defendants 'are engaging'" – in the present tense – in warrantless arrests that fail the statutory requirements. *See* 811 F. Supp. 3d at 33. But here, the last time any Plaintiff was arrested was February 26, 2026 (*see* ECF No. 21-3 ¶ 5), some four months ago and six-plus weeks before Plaintiffs sought a preliminary injunction. There is no evidence that since then any Plaintiff was arrested, much less arrested without a warrant, much less unlawfully arrested without a warrant under a supposed policy. If Plaintiffs were so targeted and exposed to the arrest process they claim is unlawful then why has no Plaintiff been arrested again? Many of the Plaintiffs are subject to court orders that prohibit, or put limitations on, their redetention. *See* Defs. Br. 16-17. Plaintiffs have no answer, which defeats their unsupported narrative that Defendants will violate Court orders in the future. Here, there is no evidence a policy exists, much less threatens Plaintiffs in the future.

***No Evidence Plaintiffs Are Targeted.*** In *Escobar Molina*, the plaintiffs presented purported "evidence" of a statement to CNN from a government official that Plaintiffs were being

targeted due to their apparent race, type of employment, and location of residence.[1] 811 F. Supp. 3d at 33-34. By contrast, Plaintiffs' "evidence" (Pls. Br. at 14) of racial, professional, or residency targeting is "a cab driver's observations" of unspecified arrests at unspecified times and locations, and articles from "The City" and the "Investigative Post," neither of which purport to quote a government official stating a racial profiling policy, but one of which (ECF No. 59-3 at 19) quotes Plaintiffs' counsel's commentary that an "outrageous racial profiling policy" is tainting immigration arrests. Plaintiffs' sources are all hearsay (which they do not dispute) and offer far less indicia of reliability than the "evidence" of press clippings in *Escobar Molina*. Indeed, they show only self-serving bias towards Plaintiffs from their own counsel.

*No Evidence Plaintiffs' "Quotidian" Conduct Exposes Them To Arrest.* The *lack* of any subsequent arrest of any Plaintiff disproves the notion that Plaintiffs are exposed to a future unlawful warrantless arrest just by setting foot outside their home to go about "quotidian" tasks. At bottom, that no Plaintiff has been arrested again speaks volumes to show that Defendants' alleged warrantless arrest dragnet targeting Plaintiffs going about daily life is nothing more than a baseless narrative. Plaintiffs have not shown the likelihood of future injury necessary for standing.

### ii. Plaintiffs Have Not Traced Any Unlawful Future Conduct To The DOJ Defendants

Defendants showed that no Plaintiff claims a U.S. Marshal or FBI agent arrested them in the past, and none claims to fear arrest by the Marshals or FBI in the future. Defs. Br. at 18. Plaintiffs nonetheless contend that FBI agents and Marshals being "present at the scene of an arrest" suffices to trace allegedly unlawful warrantless arrests to them. Pls. Br. at 22-23. But they cite no case or other authority drawing that conclusion, instead relying on a criminal evidence

---

[1] It is worth noting that while Plaintiffs emphasize alleged targeting in their Complaint, their motions for preliminary injunction and provisional class certification are not predicated on the alleged "Discriminatory Treatment Class" mentioned in the Complaint, ¶ 481.

suppression hearing case and joint and several liability doctrine. *Id.* at 23. There is still no evidence any DOJ Defendant will be present at, participate in, or make any future allegedly unlawful warrantless arrest.

### B. WCCNY Still Lacks Standing

WCCNY still fails to establish associational or organizational standing. As for associational standing, WCCNY, like the Individual Plaintiffs, does not identify any certainly impending threatened injury. *See* Defs. Br. at 19. Instead, WCCNY asserts that some of its members—only one it identifies by name—have been detained. *See* Pls. Br. at 19 (relying on Maxwell Decl., ¶¶ 25-32). WCCNY fails to allege admissible facts tying these alleged stops to the purported policy it challenges. *Id.* The mere fact that some WCCNY members may have been detained is not enough to create an imminent threat of future injury to other members. *Farm Sanctuary v. United States Dep't of Agric.*, No. 24-382-cv, 2026 WL 1030616, at \*3 (2d Cir. Apr. 16, 2026) (associational standing claim failed where the "record lacks any indication that [member] faces an injury that is actual or imminent").

WCCNY also lacks organizational standing. WCCNY fails to address any of Defendants' arguments as to its alleged direct, non-speculative injuries, which, in any event, are insufficient for standing. *Compare* Defs. Br. at 21-22 *with* Pls. Br. at 18-22. Instead, WCCNY baldly asserts that Defendants' alleged policies "*frustrate WCCNY's abstract mission.*" Pls. Br. at 21 (quotation marks omitted; emphasis added). Defendants previously explained that "frustration of mission" injuries are exactly those that the Supreme Court and Second Circuit have recently rejected as bases for standing. Defs. Br. at 21 (citing *Food and Drug Admin. v All. for Hippocratic Medicine,* 602 US 367, 394 (2024); *Connecticut Fair Hous. Ctr. v CoreLogic Rental Prop. Sols., LLC,* 167 F4th 605, 618-619 (2d Cir. 2026)). Rather than address Defendants' argument, WCCNY contends that the decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) provides a basis for standing.

4

Pls. Br. at 21. But the Supreme Court made clear in *Hippocratic Medicine* that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Hippocratic Medicine*, 602 U.S. at 396. Accordingly, WCCNY lacks standing.

## II. PLAINTIFFS HAVE NOT MET THE APA'S REQUREMENT OF "FINAL AGENCY ACTION"[2]

Plaintiffs themselves highlight why their APA challenge fails for lack of finality. While Plaintiffs assert that "every court to consider *this* policy has found reviewable final agency action" (Pls. Br. at p. 26) (emphasis in original), in fact, it's not clear that any *court* has ever had occasion to consider "*this* policy" because it is not even clear what "*this* policy" is. As an initial matter, the action Plaintiffs assert they are challenging is the purported "final decision by CBP and ICE's New York City and Buffalo Field Offices as to how to conduct warrantless immigration arrests in New York State . . ." Motion for PI [DE 21], p. 19. A policy regarding arrests in New York State was not the subject of any of the cases Plaintiffs cite. *See M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1178 (D. Or. 2026) (challenging alleged warrantless arrest policy "in Oregon"); *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1215 (D. Colo. 2025) (alleged practice being challenged was arresting of individuals "in Colorado"); *Escobar Molina*, 811 F. Supp. 3d at 14 (challenging alleged practice of conducting warrantless civil immigration arrests "in the District of Columbia"); *Nava v. DHS*, 435 F. Supp. 3d 880, 885 (N.D. Ill. 2020) (challenging policy "in the context large-scale enforcement actions in the Chicago area").

Additionally, all of the cases cited by Plaintiff involved challenges to ICE actions which pre-dated the Lyons Memo. *Id.* Indeed, one court explicitly made clear that the Lyons Memo was

---

[2] While the question of "whether the APA's 'final agency action' requirement, 5 U.S.C. § 704, is jurisdictional is an open question in [the Second] Circuit," the Second Circuit has "conclude[d] that § 704 is a question of 'statutory standing' that permits 'resolving the case on threshold, non-merits grounds.'" *6801 Realty Co., LLC v. United States Citizenship & Immigr. Servs.*, 719 F. App'x 58, 60 (2d Cir. 2018).

*not* the policy being challenged. *Escobar Molina v. DHS*, No. CV 25-3417 (BAH), 2026 WL 1256234, at *17 (D.D.C. May 7, 2026) ("Plaintiffs, however, have not amended their complaint to challenge the Lyons Memo under the APA . . ."). Here, Plaintiffs' Response Memorandum, while not completely clear, suggests that Plaintiffs are at least in part vaguely challenging some portion of the Lyons Memorandum. Pls. Br. at p. 26 (stating that "no single written document captures its [i.e., the purported policy's] entirety" and that "the Lyons Memo confirms it"). Thus, whatever policy Plaintiffs are challenging, it is not the same as the one challenged in the prior cases they cite.[3]

Finally, to the extent Plaintiffs are speaking broadly about challenges to allegedly unlawful arrest policies, it is not true that "every court" to have considered such policies have found them to be final agency actions. At least one court found that the plaintiffs challenging such policies had not established final agency action. *Hussen v. Noem*, 822 F. Supp. 3d 944, 1003 (D. Minn. 2026) (where plaintiffs alleged defendants had unlawful policies and practices of (1) conducting stops without reasonable suspicion; (2) conducting arrests without probable cause of removability; and (3) conducting arrests without probable cause of likelihood of escape risk, finding that plaintiffs had not shown that agency action was "final" under either prong of *Bennett v. Spear*, 520 U.S. 154 (1997)).

As set forth in the Defendants' Brief, Plaintiffs are really challenging various arrests which they assert were warrantless and unlawful (Defs. Br. at p. 26-27); that is, they are attempting a "preclude[d] 'broad programmatic attack[ ]'" based on a series of discrete acts. *Habitat for Horses v. Salazar*, No. 10 CIV. 7684 WHP, 2011 WL 4343306, at *6 (S.D.N.Y. Sept. 7, 2011) (citing

---

[3]  To the extent Plaintiffs are raising an APA challenge to the Lyons Memo itself, Defendants respectfully submit that the Lyons Memo should survive such a challenge because it tracks the requirements of the applicable statute and regulation, and is not arbitrary or capricious.

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). "[A] 'programmatic challenge [is not] made justiciable by the fact that the [plaintiffs] identified some specific [actions] in their pleadings that they argue are final agency actions.' . . . Plaintiffs may not 'challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program.' . . . Thus, the fact that Plaintiffs also challenge discrete agency actions does not render their policy and practice claims viable by association." *Id.* (citations omitted).

Nor have Plaintiffs shown that the alleged policy and practice has "direct consequences" for them. Plaintiffs suggest that this requirement is met even where "future injury is[n't] certain" (Pls. Br. at p. 27) but they miss the point of the Defendants' initial argument – that the purported action must "bind" or "compel" agency employees to act a certain way. Defs. Br. at p.28 (citing *Biden v. Texas*, 597 U.S. 785, 808–09 (2022); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 426 (D.C. Cir. 2004)). Here, as set forth in Defendants' opening brief, Plaintiffs have not shown that Defendants have *required* that all warrantless arrests in New York be made *without* assessing the statutory factors. There is no policy that predetermines the outcome before the encounter happens—i.e., that mandates an unlawful, warrantless arrest. "If a policy is 'permissive' or if officials are 'free to exercise their discretion' pursuant to the policy—even if officials are 'encouraged' to act a certain way—then 'rights or obligations' have not been determined . . . Practical consequences of a non-binding agency policy or de facto compliance with such a policy do not constitute *legal* consequences." *RCM Techs., Inc. v. DHS*, 614 F. Supp. 2d 39, 46 (D.D.C. 2009) (citations omitted) (emphasis in original).

In sum, neither condition for final agency action is met.

**III. Plaintiffs do not adequately allege a violation of the statutes or regulations governing warrantless arrests**

To the extent that Plaintiffs seek to undermine the jurisdictional argument that there is no final agency action that would support Plaintiffs' *Accardi* claim, they are mistaken in asserting that Defendants' argument falls under 12(b)(6) and not 12(b)(1). *See* n.1. Plaintiffs' assertion that Defendants "confuse the standard of review, arguing the Plaintiffs' claims 'are unlikely to succeed' because 'Plaintiffs fail to state a claim' or 'adequately allege' that the challenged policy exists," Pls. Br. at n.1, misconstrues Defendants' argument and ignores Plaintiffs' own arguments. In their motion for a preliminary injunction, Plaintiffs assert that they are "also likely to succeed on their *Accardi* claim—that the defendant agencies have failed to follow their own regulations". Motion for PI, n.1 (citing *U.S. ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954)); *see also* Complaint [DE 1] (third and fourth causes of action, asserting claims of violations of § 1357(a)(2) pursuant to the *Accardi* doctrine under the APA).

Defendants' argument in opposition to Plaintiffs' *Accardi* claims, and Defendants' argument that Plaintiffs have no actual non-speculative harm, in sum and substance, is that Plaintiffs have failed to identify any policy that Defendants have violated because all of the Plaintiffs were arrested either pursuant to warrant, or, in the case of the arrests by CBP officers, were made after a probable cause determination was made that the respective Plaintiffs were likely to escape before a warrant could be obtained. *See* Defs. Br. at 30; *see also* Exhibit ("Exh") 1 (Mascia declaration) (addressing H.L.A.O. arrest); Exh 2 (Rey decl.) (Medrano arrest); Exh 3 (Petito decl.) (Garcia-Lanza arrest); Exh 4 (Cuni decl.) (A.M.C. arrest). To the extent Plaintiffs assert that the Court cannot consider the declarations submitted by Defendants, Plaintiffs are wrong. Pls. Br. at n.1 ("Defendants moved only under [Rule] 12(b)(1) … and rely on extrinsic evidence when making [their *Accardi*] arguments"). However, where the existence of subject

matter jurisdiction turns on a factual issue, the court is permitted to look beyond the complaint itself and may "refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (stating that "evidentiary matter may be presented by affidavit or otherwise" on a Rule 12(b)(1) motion)). The district court may consider these outside materials "to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Core Care Health Services, Inc. v. Shalala*, No. 98-CV-5812, 1999 WL 124419, at *1 (E.D. Pa. March 4, 1999) (quotations omitted).

Significantly, even if one or more of the above-referenced warrants were determined to be invalid for any reason (clerical errors, timing issues, etc.), the invalidity of which Defendants do not concede, that does not alter the fact that Defendants initiated each of the arrests in question pursuant to a warrant, or while a warrant was in the process of being obtained. Thus, the warrantless arrest procedure was never appliable to those arrests. Similarly, even if the likely to escape probable cause determinations are contested as having been insufficient, that does not support Plaintiffs' claims that Defendants have a policy of making warrantless arrests without conducting a probable cause determination regarding likelihood of escape. Instead, as argued by Defendants, Defs. Br. at 30, at most any such alleged errors would merely constitute evidence of isolated incidents of misapplied warranted arrest procedures or probable cause standards, which is not the same as intentionally enforcing a policy of warrantless arrests without conducting any probable cause determinations at all – the only allegation made by Plaintiffs here. *See Escobar Molina*, 811 F. Supp. 3d at 59 (recognizing that errors in assessing probable cause are substantively different than not performing an assessment at all).

Plaintiffs' contention that Defendants are "mistaken both factually and legally" in asserting that the parties agree on the scope of § 1357 warrantless arrest policy, Pls. Br. at 3, because "the

Lyons Memo does not demonstrate compliance with [§ 1357(a)(2)]", *id.*, and "the facts overwhelmingly demonstrate the Defendants are implementing an unlawful warrantless arrest policy that violates [the applicable legal] standard", *id.* at 5, misconstrues Defendants' argument.[4]

Instead, as set forth above, Plaintiffs' arrests here were conducted pursuant to warranted arrest procedures by ICE, or warrantless arrest procedures by CBP with probable cause determinations as to likelihood of escape. Thus, there has been no evidence offered by Plaintiffs, let alone "overwhelming[]" evidence, that Defendants are intentionally conducting warrantless arrests contrary to training and policy without first conducting probable cause determinations.

Plaintiffs' assertions that "Defendants also attempt to dispute the existence of the policy by vaguely alluding to purported changes to their arrest policy," and that such references "implicitly concedes that the policy Plaintiffs allege was at least previously in place," misinterpret Defendants' argument. Pls. Br. at 6. Plaintiffs refer to Defendants' noting that all of Plaintiffs' arrests pre-dated the decision in *Alfaro v. Mullin*, No. 26-0766, 2026 WL 734348, *5 (E.D.N.Y. Mar. 16, 2026) (Brown, J.), Defs. Br. at 14-15, and that J.R.H.L.'s arrest in June 2025 occurred "months before the issuance of the Lyons Memo[]", *id.* at 30, as evidence of purported policy changes. However, Defendants never asserted that their warrantless arrest authority, as expressly set forth in § 1357(a), ever changed, and it has not. Instead, Defendants refer to decisions of this Court, and other judges

---

[4] On this point, the parties are essentially in agreement that Defendants need to comply with 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) (the first provision of the proposed PI). However, the rest of the proposed injunction goes well beyond simple compliance with statutory and regulatory authority. For example, Plaintiffs seek to have their counsel essentially oversee and regulate immigration arrests in New York State – again, not something that finds supports in the applicable statute and regulations, and which is both burdensome and intrusive and would interfere with Defendants' ability to "effectuat[e] statutes enacted by representatives of its people." *Noem v. Perdomo*, 146 S. Ct. 1, 4 (2025). Thus, while Plaintiffs suggest that they simply seek an order "requiring [Defendants] to comply with their own statutory and regulatory obligations," Pl. Br. at p.31, and to "comply with § 1357(a)(2)'s escape risk requirement", Pl. Br. at p.31, this mischaracterizes the relief Plaintiffs seek.

in this district, that have applied § 1357(a) in ways that greatly reduce the likelihood that any Plaintiff will be redetained. *See* Defs. Br. at 14-15. Similarly, the Lyons Memo clarifies how to apply § 1357(a)(2), but it is not a change in that fundamental policy. *See* Defs. Br. at 14-15, 30. In any event, Defendants comply with § 1357(a)(2) when conducting warrantless arrests. *See* Defs. Br. at 29 (setting forth parameters for warrantless arrests).

Further, probable cause is an objective standard that requires only a fair probability viewed from the standpoint of an objectively reasonable officer that a crime has been, is being, or will be committed. It is a practical, common-sense, "totality-of-the-circumstances" inquiry based on the facts and circumstances within the officer's knowledge at the moment of arrest. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018); *see also Illinois v. Gates*, 462 U.S. 213, 230-32 (1983). It does not require a separate, formalized pre-arrest determination, checklist recitation, specific contemporaneous documentation, or that the officer correctly articulate the precise crime at the scene. The inquiry turns solely on the existence of articulable facts known to the officer that support a reasonable belief. *Devenpeck v. Alford*, 543 U.S. 146, 153-155 (2004) (officer's subjective state of mind and stated reason for arrest are irrelevant so long as objective facts establish probable cause for any offense); *see also Whren v. United States*, 517 U.S. 806, 812-13 (1996).

Here, the ICE officers' arrests were based on objective facts known at the time that supplied probable cause to believe that the individuals were unlawfully present (e.g. results of database checks, prior removal order, admission, or other reliable indicators), and the officers accordingly sought warrants. Moreover, even where an officer intends to obtain a warrant (and conduct an arrest with a warrant), he may also at the same time have probable cause for escape risk for warrantless arrest if the totality of circumstances provided probable cause that the alien was likely

to escape before a warrant could be obtained. "Likely to escape" is not limited to active flight; it encompasses circumstances in which the individual is unlikely to remain at the scene of the encounter or at any clearly identifiable location long enough for an administrative warrant (Form I-200) to be secured and executed.[5]

In sum, Plaintiffs have not identified a supposed policy of warrantless arrests without making a probable cause determination.

## <u>CONCLUSION</u>

For the reasons stated herein, as well as those set forth in Defendants' opening brief, the action should be dismissed for lack of subject matter jurisdiction.

Dated:    Brooklyn, New York
        June 19, 2026

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
*Attorney for Defendants*
271-A Cadman Plaza East
Brooklyn, New York 11201

By:    <u>*/s/ Thomas Price*</u>
Thomas Price
Marika Lyons
Philip DePaul
Justin Kirschner
Assistant United States Attorneys
(631) 715-7893
thomas.price@usdoj.gov

---

[5] Thus, in general, regardless if officers had attempted to obtain warrants prior to the arrests, an arrest could be justified based upon probable cause, based on the totality of circumstances, that delay would enable escape.

# CERTIFICATE OF COMPLIANCE

The foregoing Defendants' Memorandum of Law in Opposition to Individual Plaintiffs' Motion for Provisional Class Certification contains 3,783 words, including footnotes but excluding the cover, tables and signature block.

Dated: Central Islip, New York
June 19, 2026

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
*Attorney for Defendants*

By:  /s/ *Thomas R. Price*
THOMAS R. PRICE
Assistant U.S. Attorney
(631) 715-7893
thomas.price@usdoj.gov