# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

| | |
|---|---|
| RENE ANTONIO BENITEZ,<br><br>Plaintiff,<br><br>-against-<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | 26-CV-02082(SJB)<br><br>United States Courthouse<br>Central Islip, New York<br><br>June 18, 2026<br>11:00 a.m. |

- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Plaintiff:

THE LEGAL AID SOCIETY
49 Thomas Street, Floor 10
New York, New York 10013
BY: BRIAN PERBIX, ESQ.

MAKE THE ROAD NEW YORK LEGAL
301 Grove Street
Brooklyn, New York 11237
BY: HAROLD A. SOLIS, ESQ.

THE NEW YORK CIVIL LIBERTIES UNION
25 Broad Street, 19th Floor
New York, New York 10004
BY: IFEYINWA CHIKEZIE, ESQ.

COVINGTON & BURLING, LLP
30 Hudson Yards
New York, New York 10001
BY: GIOVANNI SCARCELLA, ESQ.

A P P E A R A N C E S: (Continued)

For the Defendant: UNITED STATES ATTORNEYS OFFICE
610 Federal Plaza
Central Islip, New York 11722

BY: DIANE C. LEONARDO, ESQ.
THOMAS PRICE, ESQ.
MARIKA LYONS, ESQ.

Court Reporter: DENISE PARISI, RPR, CRR
100 Federal Plaza - Suite 570
Central Islip, New York 11722
Telephone: (631) 712-6101
E-mail: DeniseParisi72@gmail.com

Proceedings recorded by computerized stenography. Transcript produced by Computer-aided Transcription.

*　*　*　*　*

every other circumstance, with some exceptions that are referred to as outliers or whatever, we issue arrest warrants prior to arrests and on the basis of a notice to appear.

And I think this covers this, the plaintiffs are arguing about an existence of a policy that doesn't exist. I think the plaintiffs would say, the policy does exist and the policies the defendant identified are honored in the breach only. In other words, there is 1357, there may be a policy document that says you only do warrantless arrests in these circumstances and, for example, flight risk or other things are not being analyzed when an arrest is made.

There is absolutely no reason we should be operating in the dark on this. We know -- or the defendants know -- who has been arrested in the Eastern District of New York. Why do I say the Eastern District of New York? Well -- we can discuss this part at oral argument -- I have a real question about whether or not injunctive relief could or should exist outside of the Eastern and Southern Districts in the entire state of New York. In other places, it makes sense where there is literally the District of Colorado and the District of Oregon and the District of Columbia, and so a judge there sits with full jurisdiction over the -- is coextensive

We have a couple of declarations, one of which we will talk about in great detail, that, I believe, attempt to say some of the things I mentioned earlier: ICE's policy is to always abide by 1357. There's training to abide by 1357. We don't do warrantless arrests unless the requirements of 1357 have been satisfied. We obtain arrest warrants in advance. ICE officers know this. This is how they've been trained. This is always how it's been operated. Right?

Of course, there are no attachments to that declaration. It's the statement of one ICE officer, admittedly a higher ranking one, and there are no dates by the policy. We basically have what I think is a reference to the *Lyons*-type factors at some point, and, I think, a reference to an ICE memo from earlier this year. But other than that, it's kind of devoid of dates, specifics. It's basically a declaration that amounts to, well, we abide by the law and we abide by the ICE policy. There's nothing wrong with that, but it has no exhibits, specifics, or supporting information. And as we'll get to later, there's a real problem with Ms. Almadovar's declaration, which we'll get to.

So how am I to figure out whether there is, in fact, a policy where one side says this is what's going on here are the anecdotal evidence of some people. And I

are in different places, it would be exceptionally difficult to do so, right?

But we certainly know, unless I'm wrong, how many people are held at the MDC. That's a place in the Eastern District of New York. And if we didn't know that, that would be a real problem if we didn't know how many people were being held in the Eastern District not on a criminal violation, but on the civil immigration side. That should be both a knowable number and a knowable person. If that's not, help us. That's a real problem if we don't know.

So one place to start and then go from there are the people currently held in the Eastern District of New York who were picked up by the defendants and arrested by the defendants to tell us who they are, to tell us whether they were arrested pursuant to a warrant, and if they were arrested pursuant to a warrant, to produce that warrant, and then to tell us -- I should say, to produce the NTA for that person. I can't imagine that that population is tens of thousands of people.

And after that, we can talk about people who are arrested here and detained elsewhere, including New Jersey and the Southern District of New York, and maybe we leave it at that. But it does strike me that that's not the whole United States, that it's a knowable population, and

District, so it's not just one office we would be dealing with. I don't know if any of the Jersey arrests would come to MDC. It's possible also.

THE COURT: Look, I'm not trying to be deaf to that concern, but in order to figure out what grace we're giving for this exercise, I need to know some numbers, and so I would like to know at least how many immigration detainees are at MDC.

Is there another ICE detention facility in Long Island being held in Nassau County more than 24 hours?

MS. LEONARDO: Nassau County is 72 hours, but that's -- the only one is MDC, then.

THE COURT: Okay. So it's MDC. Look, if it's 500 people, and I'm really talking -- let me be clear, the number of people and who were arrested in the Eastern District or the Southern District. And the reason that matters is because of the proximity. I need to know what that number is. I will give you a week to give me the number, okay? But I can't say you get lots of time if it turns out to be ten people. And we have to figure out what it looks like after the fact, but I need to get hard data on that quickly. It's really not for me, it's for them, but at this point, you should give it to me and just file the number in a letter.

Go ahead.

MR. PERBIX: So, your Honor, just in terms of thinking about who is arrested where and where they wind up, and understanding of course that this is being conceptualized as proceeding in phases, in terms of people arrested in the Eastern District and the Southern District, New Jersey, Moshannon in Pennsylvania, Orange County --

THE COURT: We'll get there.

MR. PERBIX: Yes.

THE COURT: I'm not trying to say that that's not part of this case, but I need some meaningful slice of data that we can get to in a reasonable amount of short time. Unless you say, look, we're happy to do it all and put this off for six weeks.

MR. PERBIX: The thought is, your Honor, that if what's being produced is a list of names, effectively for MDC --

THE COURT: Not yet.

MR. PERBIX: Well, if that what were being considered, it could be helpful to know names, numbers, at those other facilities as well to perhaps have a more representative sample --

THE COURT: Well, I was trying to figure out the number, not the names right now. But if your point is that there turn out to be ten people at MDC only that were

in opposition to the motion for motions that are pending seems to live in an alternative reality, if you don't withdraw this in 24 hours, we will have a hearing about whether she's committing false statements and attempting to mislead the Court, and that's how we will begin on Thursday. Because if I can't trust that, you can sure as bet I'm not trusting a single other word that's submitted in that statement, which goes to the training and lack of policy and existence of policy. She can't even get the basic facts right when they've been adjudicated against her for one of these plaintiffs months after the fact the adjudication happened, well after other declarants from the agency submitted other information, is a stunning document. I will expect a letter from the respondents by 1:00 tomorrow as to how they intend to proceed.

We will have oral argument on the motions based on the current record next Thursday, as scheduled.

I will give each side 30 minutes of argument time to use however they wish, in whatever order they wish to address the issues. In other words, I will give each side 30 minutes in which I will not ask any questions so as to take away from your argument time, which gives you ten minutes per lawyer to argue whatever arguments you would like to make, and then I will ask some series of questions probably after each attorney presents on his or