**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RENE ANTONIO BENITEZ *et al.*,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY *et al.*,

*Defendants*.

Case No. 26-cv-02082-SJB-JMW

**SUPPLEMENTAL REPLY IN SUPPORT OF PLAINTIFFS' MOTIONS FOR A PRELIMINARY INJUNCTION OR STAY AND PROVISIONAL CLASS CERTIFICATION AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiffs Have Standing. ........ 1

A. The Challenged Policy Exists, and Plaintiffs Were Arrested Under It. ...... 1

B. Plaintiffs Remain at Risk of Unlawful Warrantless Arrest. ........ 3

II. Plaintiffs Are Entitled to Preliminary Relief. ........ 5

A. The Preliminary Injunction Factors Favor Relief. ........ 5

B. The Challenged Policy Is Final Agency Action. ........ 6

III. No Statute Deprives This Court of Subject Matter Jurisdiction. ........ 7

IV. Plaintiffs Satisfy the Criteria for Provisional Class Certification. ........ 9

A. Rule 23 Is Satisfied. ........ 9

B. 8 U.S.C. § 1252(f)(1) Does Not Preclude Class-Wide Relief. ........ 11

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)....................9

*Bennett v. Spear*,
520 U.S. 154 (1997)....................7

*Biden v. Texas*,
597 U.S. 785 (2022)....................11

*Castañon Nava v. Dep't of Homeland Sec.*,
435 F. Supp. 3d 880 (N.D. Ill. 2020)....................7

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)....................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)....................10

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)....................8

*Mahdawi v. Trump*,
183 F.4th 103 (2d Cir. 2026)....................8

*Onosamba-Ohindo v. Ball*,
184 F.4th 74 (2d Cir. 2026)....................11

*Peralta-Veras v. Ashcroft*,
2002 WL 1267998 (E.D.N.Y. Mar. 29, 2002)....................5

*In re Petrobras Securities*,
862 F.3d 250 (2d Cir. 2017)....................10

*Plaintiffs #1-21 v. County of Suffolk*,
2021 WL 1255011 (E.D.N.Y. Mar. 12, 2021)....................10

*R.F.M. v. Nielsen*,
365 F. Supp. 3d 350 (S.D.N.Y. 2019)....................7

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999)....................11

*Texas v. United States*,
40 F.4th 205 (5th Cir. 2022) ....................................................................................11

*Vasquez Perdomo v. Mullin*,
2026 WL 2751388 (C.D. Cal. Sept. 2, 2026) ............................................................5, 6

*Velasaca v. Decker*,
458 F. Supp. 3d 224 (S.D.N.Y. 2020)........................................................................6, 7

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).......................................................................................................9

**Statutes**

5 U.S.C. § 705..............................................................................................................11

8 U.S.C. §§ 1221-1231 ..................................................................................................11

8 U.S.C. § 1252..................................................................................................7, 8, 11

**Other Authorities**

8 C.F.R. § 236.1(b)(1)......................................................................................................2

8 C.F.R. § 1236.1(b)(1)....................................................................................................2

1 Newberg & Rubenstein on Class Actions § 3:67 (6th ed.) .........................................10

## INTRODUCTION

Defendants' arguments all flow from their denial that they have a policy and practice of making warrantless arrests without probable cause. But limited discovery only confirms that this policy exists, that Plaintiffs were arrested pursuant to it, and that Plaintiffs remain at risk of re-arrest. The full record on the pending motions conclusively supports provisional class certification and preliminary relief.

## ARGUMENT

### I. Plaintiffs Have Standing.

#### A. The Challenged Policy Exists, and Plaintiffs Were Arrested Under It.

Defendants' claim that they do not have a pervasive policy and practice of conducting warrantless arrests without assessing escape risk, *see* Docket Entry ("DE") 89 at 3-5, 7, is premised in part on a fundamental misunderstanding of what constitutes a warrantless arrest. Defendants suggest that a warrant issued *after* an arrest transforms a warrantless arrest into an arrest made pursuant to a warrant. Their interpretation of Mr. Garcia Lanza's arrest and the MDC data is revealing.

As for the former, Mr. Garcia Lanza was arrested when he was placed in handcuffs and a waist-chain and transported to another location—before Officer Petito signed his arrest warrant. DE 90-11, Petito Tr. 150:19-151:24, 174:5-14, 188:5-11, 192:8-25, 199:25-200:10; *see also* DE 90-14, Mascia Tr. 266:2-23 (supervisor informed officer he "was signing" warrant after H.L.A.O. had been handcuffed and relocated). Yet Defendants persist in claiming this was not a warrantless arrest. *See* DE 89 at 7 n.6.

Defendants' interpretation of the MDC data goes further, suggesting that anyone arrested on the *same day* a warrant was issued was arrested pursuant to a warrant, DE 89 at 3, eliding the

critical distinction between those who had a warrant issued *before* their arrest and those whose warrants were *post hoc*.[1]

Defendants similarly argue that a warrant that predates an NTA is valid, *see* DE 89 at 4 n.4, despite regulations requiring the NTA to be issued prior to or contemporaneous with the I-200, *see* 8 C.F.R. §§ 236.1(b)(1), 1236.1(b)(1). They suggest that an NTA issued the same day as a warrant—no matter the timing—suffices. *See* DE 89 at 4 n.4. As Defendants acknowledge, this Court disagrees.

Defendants' officers betrayed the same confusion about their arrest authority. *See* DE 90 at 7-9. For this reason, their contention that they rarely conduct warrantless arrests, DE 89 at 3, 14, cannot be credited.[2] Indeed, Defendants do not claim that officers meet § 1357(a)(2)'s requirements with respect to people issued post-hoc or pre-NTA warrants, instead arguing that these are not warrantless arrests at all. DE 89 at 4.

Finally, it is neither surprising nor relevant that some Plaintiffs did not precisely define Defendants' broader policy during their depositions. *See* DE 89 at 14. Their credible testimony reflects their experience and desire to protect others from similar harm. *See* Belsher Supp. Decl. Ex. 5, Garcia Medrano Tr. 101:12-102:3 (bringing suit "[s]o that [others] are not arrested without an arrest warrant"); Ex. 8, H.L.A.O. Tr. 105:2-14 ("[T]hey take you away when you're not the right person"); Ex. 6, Garcia Lanza Tr. 122:15-21 (seeking to "prevent someone else from being racially profiled just for being brown or being Latino"); Ex. 3, A.M.C. Tr. 17:7-14.

---

[1] Defendants' omission of this critical context should be construed against them, as they provided explanations where they believed it supported their position, *see* DE 90-5 at 2 (explaining why specific detainees lacked NTAs).

[2] Nor does Defendants' continued reliance on the Lyons Memo, DE 89 at 14, help disprove the policy Plaintiffs allege, *see* DE 59 at 3-6, 25-27.

**B. Plaintiffs Remain at Risk of Unlawful Warrantless Arrest.**

Officers' testimony illuminates how Defendants' policy of arresting everyone without an escape risk analysis leaves Plaintiffs vulnerable to re-arrest. *See* DE 89 at 5-7. Officers testified that they are not required to ask *any* questions relevant to escape risk, much less those necessary to establish probable cause under § 1357(a)(2), before making an arrest. Belsher Supp. Decl. Ex. 7, Mascia Tr. 149:17-18 ("[T]here's nothing that mandates us asking questions to the person"); Ex. 2, Cuni Tr. 155:22-156:5 (stating he did not know when he would need to do an escape risk analysis for a warrantless arrest), or interpreted escape risk so broadly that anyone with the means to leave the scene of the encounter is deemed an escape risk, Ex. 1, Rey Tr. 71:14-72:1 (considers whether someone "has means to escape" or "attempted to escape").

Just because Defendants have not re-arrested any Plaintiff does not mean there is not a substantial *risk* of future arrest. *See* DE 89 at 6-7. Re-arrests do happen, as Defendants twice arrested non-party declarant G.E.V.S. *See* DE 21-13 ¶¶ 7, 16-18. And as the additional uncontested declarations in the record demonstrate, officers frequently arrest Latino men without knowing their identity. *See, e.g.*, DE 21-19 ¶¶ 6-12 (officers jumped X.P.F. in a deli and handcuffed him before identifying him); DE 21-25 ¶ 6 (officers handcuffed Mr. Quintero Campos after he said he did not have his ID on him); DE 21-14 ¶¶ 8-10 (officers held J.G.G. at gunpoint and handcuffed him before identifying him); DE 21-24 ¶¶ 5-6 (officers handcuffed and drove Mr. Tobar Estrada to another location to search him after he exercised his right to remain silent); *see also* Belsher Supp. Decl. Ex. 4, Petito Tr. 34:3-6 (stating "most of the time" he will not ask any questions of people he suspects to be targets). Although several officers testified that they conduct database checks prior to making arrests, there is no guarantee officers would conduct these checks or that the databases would show Plaintiffs had been granted habeas or bond, preventing their re-arrest. *See* Belsher Supp. Decl. Ex. 7, Mascia Tr. 155:13-17 (testifying that there is no set list of databases which

officers must check). The record thus establishes a real and imminent risk that Plaintiffs will be unlawfully arrested pursuant to the challenged policy.

Defendants' contention that no deposed Plaintiff "has seen ICE," DE 89 at 6, is false. Mr. Garcia Medrano testified to watching ICE arrest two Hispanic men near his home.[3] Belsher Supp. Decl. Ex. 5, Garcia Medrano Tr. 94:1-15. Nor is it material that the remaining Plaintiff-deponents have not. Officers testified that they conduct enforcement operations in unmarked cars with tinted windows, *see* Belsher Supp. Decl. Ex. 7, Mascia Tr. 188:8-24; Ex. 4 Petito Tr. 132:2-20; Ex. 1, Rey Tr. 136:6-7, and sometimes wear plainclothes or unadorned vests that could lead them to be mistaken for local police, *see* Ex. 2, Cuni Tr. 79:21-23. Further, all Plaintiffs expressed fear of re-arrest, and many have changed their behavior to avoid encountering ICE. *See* Belsher Supp. Decl. Ex. 8, H.L.A.O. Tr. 112:3-16 (describing his fear of ICE increasing after his warrantless arrest); Ex. 5, Garcia Medrano Tr. 91:19-92:19, 104:2-6 (staying home because "they can stop me anywhere" and removing Salvadorean flag from his car); Ex. 6, Garcia Lanza Tr. 102:13-19 (taking Ubers to avoid encounters with ICE); DE 21-6 ¶ 21 (same for J.R.H.L.); Ex. 3, A.M.C. Tr. 120:2-4 (looking out for ICE agents or unfamiliar cars when leaving for work). That these Plaintiffs have not observed Defendants' agents since their release is hardly probative of Defendants' policies and practices.[4]

[3] Plaintiff R.C.R., who was not deposed, also witnessed ICE arrest "a Hispanic looking man with a construction vest" in a parking lot after her release. DE 21-9 ¶ 19.

[4] Defendants suggest that H.L.A.O. does not fear re-arrest because his name was used on a crowdfunding website and in a news article. DE 89 at 9. But H.L.A.O. testified that he asked the reporter to use only his initials, Belsher Supp. Decl. Ex. 8, H.L.A.O. Tr. 9:6-15, and he learned of the crowdfunding post about five months ago, after his release, *see id.* at 10:21-11:8.

Finally, some Plaintiffs' unfamiliarity with, or membership in, WCCNY, DE 89 at 8, has no bearing on its associational or organizational standing. *See* DE 59 at 18-22. For these reasons, and those previously given, *see* DE 59 at 11-23; DE 90 at 13-15, Plaintiffs are likely to establish standing for prospective relief.

## II. Plaintiffs Are Entitled to Preliminary Relief.

### A. The Preliminary Injunction Factors Favor Relief.

In disputing Plaintiffs' entitlement to preliminary relief, Defendants largely repeat arguments addressed in prior briefing, *see* DE 59 at 25-33. For example, Defendants' arguments against irreparable harm, DE 89 at 16, restate their flawed standing arguments and denials that any policy exists, *see supra* Section I. To the contrary, Plaintiffs have shown that Defendants' warrantless arrest policy leaves them vulnerable to wrongful arrest and the deprivation of their liberty. DE 21-1 at 23-25; *Peralta-Veras v. Ashcroft*, 2002 WL 1267998, at *6 (E.D.N.Y. Mar. 29, 2002) ("The deprivation of [a noncitizen's] liberty is, in and of itself, irreparable harm."); *Vasquez Perdomo v. Mullin*, 2026 WL 2751388, at *24 (C.D. Cal. Sept. 2, 2026) (detention following unlawful arrest "naturally constitutes irreparable harm"). Plaintiffs' testimony starkly illustrates the threatened harms. In addition to their detention, in and of itself irreparable harm, Plaintiffs suffered resultant cascading and predictable harms. *See, e.g.,* Belsher Supp. Decl. Ex. 6, Garcia Lanza Tr. 90:18-25, 91:10-92:8, 121:20-122:9 (held in a cell for multiple days without a working sink after which ICE kept his work permit and terminated his deferred action, leaving him unable to work until the court ordered them returned); Belsher Supp. Decl. Ex. 3, A.M.C. Tr. 16:22-25, 107:17-25 (A.M.C.'s detention caused his wife to move from their apartment); DE 90-15, H.L.A.O. Tr. 26:17-22, 73:21-24, 84:25-85:3, 85:7-16 (H.L.A.O. lost precious time with his wife and medically vulnerable young children while detained).

Defendants' assertion that Plaintiffs rely on past harm, DE 89 at 16, ignores that Plaintiffs live in continuing fear of re-arrest and have altered their routines where they can. *Supra* Section I.B. But Plaintiffs cannot afford to stay home. Each Plaintiff testified that they must still commute to work and other necessary appointments. *E.g.*, Belsher Supp. Decl. Ex. 8, H.L.A.O. Tr. 23:24-24:12, 27:12-23, 28:11-13, 29:16-31:5; Ex. 6, Garcia Lanza Tr. 113:14-114:24; Ex. 5, Garcia Medrano Tr. 92:4-8; DE 90-10, A.M.C. Tr. 35:13-36:14. Plaintiffs returned to those routines because they must support themselves and their families, not because the risk abated. That no Plaintiff has been arrested again, DE 89 at 6, does not alter the analysis; preliminary relief exists to prevent a threatened injury, and, as expedited discovery establishes, Defendants' policy that caused Plaintiffs' injuries remains in place, and there is a substantial risk that these harms will recur, *supra* Section I.

The equities and public interest likewise favor preliminary relief. *See* DE 21-1 at 25-26. Defendants offer nothing new, and a federal court recently rejected their asserted interest in the "steady enforcement of [the] immigration laws" where, as here, plaintiffs sought compliance with § 1357(a)(2). *Vasquez Perdomo*, 2026 WL 2751388, at *25.

**B. The Challenged Policy Is Final Agency Action.**

Defendants assert that the challenged policy is not final agency action. DE 89 at 14-15. But the discovery, limited to four officer depositions and one day's detention data, and not including policy documents or Rule 30(b)(6) testimony, *see* DE 68; DE 73, only confirms that the challenged policy exists. *See* DE 90 at 8-9. And Defendants' MDC data show the practice is widespread. *See supra* Section I.A; DE 90 at 11-12.

The absence of a written policy is immaterial. DE 59 at 25-26. "[F]inality can be gleaned from agency action and the effects thereof and does not require any written evidence." *Velasaca v. Decker*, 458 F. Supp. 3d 224, 243 (S.D.N.Y. 2020). Courts routinely infer agency policies from

declarations, data, and shifts in outcomes. *See, e.g.*, *id.*; *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 373-75 (S.D.N.Y. 2019). The record contains such evidence, including thirty-five sworn declarations describing warrantless arrests across New York and Defendants' own statements describing the practice. DE 21-1 at 3-10, 16-18. Finally, having withdrawn the Almodovar declaration without a supervisory-level replacement, *see* DE 62, Defendants offer no evidence of ICE's training, policies, and practices to rebut Plaintiffs' showing. Thus, Plaintiffs are likely to succeed in demonstrating the challenged policy marks the consummation of Defendants' decision-making process and has "direct and appreciable legal consequences" for those arrested under it. *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

**III. No Statute Deprives This Court of Subject Matter Jurisdiction.**

Defendants claim for the first time that 8 U.S.C. § 1252(b)(9) deprives the Court of subject matter jurisdiction over this action. DE 89 at 8-9.[5] This argument rests on a flawed statutory interpretation and mischaracterizes Plaintiffs' claims and the relief they seek.

As the Supreme Court has held—and Defendants have yet to acknowledge—the "targeted language" in 8 U.S.C. § 1252(b)(9) is "certainly not a bar" to a suit where "the parties are not challenging any removal proceedings." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). And claims concerning conduct that "occurred before [officers] had any reason to believe that" Plaintiffs "had violated an immigration law, and before the government had initiated removal proceedings against them," are too "remote" from removal proceedings to implicate § 1252(b)(9). *Castañon Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880, 891-92 (N.D. Ill. 2020).

[5] Defendants previously invoked 8 U.S.C. § 1252(b)(9), but did not claim it required dismissal, *see* DE 54 at 22-23, asserting it barred an injunction only "with respect to aliens that ICE seeks to detain who are the subject of a final order of removal," *id.* at 23.

As in *Regents*, Plaintiffs do not challenge their own, or any putative class member's, removal proceedings. *See* DE 1 ¶¶ 494-521 & Prayer for Relief. No Plaintiff had been issued an NTA when they were stopped and arrested, let alone an order of removal. *See* DE 21-3 ¶ 11; DE 21-4, ¶ 1; DE 21-5 ¶¶ 1, 16; DE 21-6 ¶ 3; DE 21-7 ¶ 4; DE 21-8 ¶ 4; DE 21-9 ¶ 4; Belsher Supp. Decl. Ex. 5, Garcia Medrano Tr. 90:4-91:17; Ex. 6, Garcia Lanza Tr. 97:11-22. Although all were subsequently placed in removal proceedings,[6] there is no dispute that Plaintiffs Garcia Medrano's and Garcia Lanza's removal cases were terminated in May and June 2026, respectively. Accepting Defendants' implausible interpretation of § 1252(b)(9) would accordingly deprive Plaintiffs of "any meaningful chance for judicial review." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion).

Defendants' reliance on *Mahdawi v. Trump,* DE 89 at 8-9, is misplaced. That decision held that § 1252(b)(9) barred subject matter jurisdiction over a habeas petition seeking, *inter alia*, vacatur of a determination that petitioner was "removable under the INA," 183 F.4th 103, 109, 115-23 (2d Cir. 2026). No such challenge to the basis of removal is present here. Accordingly, Plaintiffs' claims are not "inextricably intertwined with the claim that removal itself is unlawful," *id.* at 117, and § 1252(b)(9) is no bar. In any event, the Second Circuit's decision to grant en banc review, *see Mahdawi v. Trump*, 25-1113, DE 244 (2d Cir. Sept. 3, 2026), casts significant doubt on the merits panel's reasoning and the decision's continued validity.[7]

---

[6] During Phase II of expedited discovery, *see* DE 73 at 2, Defendants provided Plaintiffs with a notice to appear for each individual Plaintiff, issued on or after the date of the individual Plaintiff's arrest, which Plaintiffs will provide upon request.

[7] Nor do H.L.A.O.'s and A.M.C.'s subjective hopes that this lawsuit might impact their ability to stay in the country, *see* DE 89 at 9, alter the relief sought here, *see* DE 1 at 92-95. H.L.A.O. made clear that he is trying to prevent his deportation through his separate immigration case. Belsher Supp. Decl. Ex. 8, H.L.A.O. Tr. 113:4-10.

## IV. Plaintiffs Satisfy the Criteria for Provisional Class Certification.

### A. Rule 23 Is Satisfied.

Defendants' threshold class-certification argument, that Plaintiffs lack standing, is incorrect. *See supra* Section I. Defendants' remaining arguments also fail.

**Numerosity.** Defendants dispute numerosity by asserting that Plaintiffs' first-hand accounts of warrantless arrests are "[m]ore likely than not . . . mistaken." DE 89 at 10. But as demonstrated, *see* DE 90 at 4-7, Plaintiffs were subject to warrantless arrests, and Defendants did not dispute Plaintiffs' evidence from non-party declarants.

Defendants also argue that the data they provided for detainees on a single day "reflect that only three individuals (out of 155) were arrested without a warrant." DE 89 at 11. Defendants misconstrue their data, omitting what appears to be a much higher number of warrantless arrests from that count. *See supra* Section I.A; DE 90 at 11-12. But even accepting Defendants' skewed interpretation, a ratio of 3 warrantless arrests out of 155 individuals suggests about 300 warrantless arrests out of the 15,000 individuals ICE arrested in New York since January 2025. That amply satisfies numerosity. *See* DE 63 at 3-4; DE 89 at 11.

**Commonality and Typicality.** Defendants recycle their argument that there is no commonality or typicality because there is no "policy of making unlawful warrantless arrests," DE 89 at 12. That is untrue, *see supra* Section I.A; DE 90 at 11-12, but that argument concedes the existence of a common question—whether Defendants maintain the challenged policy. And "even a single common question" suffices to establish commonality. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations incorporated); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) (a question is common where "the failure of proof . . . would end the case for one and for all"); DE 63 at 4-6. Differences in the factual circumstances surrounding

Plaintiffs' arrests do not negate this common question or render Plaintiffs' claims atypical when they challenge the same policy. *See* DE 63 at 4-6.

**Adequacy of Representation.** Defendants' argument that Plaintiffs lack standing fails, *see supra* Section I,[8] and they identify no "fundamental" conflict of interest rendering Plaintiffs inadequate representatives, *see* DE 63 at 7. Defendants' attempt to fault certain Plaintiffs for not being intimately familiar with the details of this litigation also fails, as each has "knowledge of [his] role as a class representative and is committed to serving in that role in the litigation." 1 Newberg & Rubenstein on Class Actions § 3:67 (6th ed.); *see* DE 21-4 ¶¶ 25-28; DE 21-5 ¶ 23; DE 21-8 ¶ 21; DE 21-7 ¶ 19; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 42 (2d Cir. 2009) (noting "general disfavor of 'attacks on the adequacy of a class representative based on the representative's ignorance'" (citation omitted)).

**Ascertainability.** Defendants continue to seek to impose an administrative feasibility requirement where none exists. DE 89 at 13. *In re Petrobras Securities* requires only "objective criteria" to define an ascertainable class—not administrative feasibility. *See* 862 F.3d 250, 268-69 (2d Cir. 2017); DE 63 at 7-8.

**Rule 23(b)(2).** Defendants again do not dispute the governing legal standard or that Rule 23(b)(2) "is particularly appropriate in civil rights litigation." *Plaintiffs #1-21 v. County of Suffolk*, 2021 WL 1255011, at *17 (E.D.N.Y. Mar. 12, 2021); *see* DE 89 at 14-15. Defendants merely repeat their incorrect arguments that they do not have a policy and practice of making unlawful, warrantless arrests. *See* DE 89 at 14-15; DE 90 at 4-7 (discussing evidence of warrantless arrests),

[8] Defendants' argument that counsel would be adequate class representatives, DE 89 at 13, is a *non sequitur*. *Plaintiffs*, not their counsel, were harmed, and continue to be at risk of being harmed, by Defendants' challenged policy. Plaintiffs' injuries due to Defendants' policy, not their mere "common interest," *id.*, make them adequate class representatives.

7-9 (discussing evidence of absent escape risk analysis), and 9-10 (discussing evidence of post-hoc warrants).

**B. 8 U.S.C. § 1252(f)(1) Does Not Preclude Class-Wide Relief.**

Finally, Defendants' claim that § 1252(f)(1) precludes certification of the proposed class because it would "interfere[] with the apprehension and detention" of noncitizens pursuant to the statutes listed in 8 U.S.C. §§ 1221-1231 is incorrect. DE 89 at 15. Mere collateral effects on the operation of a covered provision do not violate § 1252(f)(1). *See* DE 63 at 11.

In any event, § 1252(f)(1) presents no bar to the APA relief sought here. "By its plain terms," § 1252(f)(1) "is nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999); *see also Biden v. Texas*, 597 U.S. 785, 786 (2022). Section 1252(f)(1) thus does not limit a district court's ability to grant APA relief to members of the putative class. *See, e.g.*, *Texas v. United States*, 40 F.4th 205, 219-20 (5th Cir. 2022) (declining to extend *Aleman Gonzalez* to bar APA vacatur). Accordingly, § 1252(f)(1) does not bar this Court granting the requested stay pursuant to 5 U.S.C. § 705 or provisionally certifying the proposed class in support thereof.[9]

**CONCLUSION**

The Court should grant Plaintiffs' motions for preliminary relief and provisional class certification and deny Defendants' motion to dismiss.

[9] Nor does § 1252(f)(1) "bar district courts from granting class-wide declaratory relief," *Onosamba-Ohindo v. Ball*, 184 F.4th 74, 83 (2d Cir. 2026), which Plaintiffs also seek, *see* DE 1, Prayer for Relief ¶¶ 3, 6, 8-9.

Dated: September 28, 2026
Washington, D.C.

*/s/ Jeffrey Cao*
Jeffrey Cao (admitted pro hac vice)
Jillian Feirson (admitted pro hac vice)
Nicole Robinson (admitted pro hac vice)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
Phone: 202-662-6000
jcao@cov.com
jfeirson@cov.com
nrobinson@cov.com

Mark Gimbel
Giovanni Scarcella
Cecile Duncan (admitted pro hac vice)
Kezia Otinkorang (admitted pro hac vice)
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
Phone: 212-841-1000
mgimbel@cov.com
gscarcella@cov.com
cduncan@cov.com
kotinkorang@cov.com

Amy Belsher
Jessica Perry
Wafa Junaid
Molly Biklen
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
Phone: 212-607-3300
abelsher@nyclu.org
jperry@nyclu.org
wjunaid@nyclu.org
mbiklen@nyclu.org

Philip Desgranges
Hasan Shafiqullah
Evan Henley
Brian Perbix
Alice Min
THE LEGAL AID SOCIETY
49 Thomas Street, 10th Floor

New York, NY 10013
Phone: 212-577-3300
pdesgranges@legal-aid.org
hhshafiqullah@legal-aid.org
ewhenley@legal-aid.org
bperbix@legal-aid.org
amin@legal-aid.org

Paige Austin
Harold Solis
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: 718-418-7690
paige.austin@maketheroadny.org
harold.solis@maketheroadny.org

*Attorneys for Plaintiffs*

**WORD COUNT CERTIFICATION**

The undersigned certifies that, using the "word count" feature of Microsoft Word and excluding the caption, table of contents, table of authorities, signature blocks, and any certifications, the Supplemental Reply in Support of Plaintiffs' Motions for a Preliminary Injunction or Stay and Provisional Class Certification and in Opposition to Defendants' Motion to Dismiss dated September 28, 2026, contains 3,498 words.

*/s/ Jeffrey Cao*
Jeffrey Cao