**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RENE ANTONIO BENITEZ *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY *et al.*<br><br>*Defendants*. | Case No. 2:26-cv-2082-SJB-JMW |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT THE RECORD IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION OR STAY AND PROVISIONAL CLASS CERTIFICATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
PROCEDURAL BACKGROUND ........ 2
ARGUMENT ........ 3
I. The Supplemental Evidence Enhances the Record Before the Court. ........ 4
II. Plaintiffs Are Acting in Good Faith. ........ 9
III. Supplementing the Record Will Not Prejudice Defendants. ........ 10
CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chaglla v. Maldonado*,
2026 WL 2529494 (E.D.N.Y. Aug. 27, 2026) .......... 8

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) .......... 9

*F.T.C. v. Med. Billers Network, Inc.*,
543 F. Supp. 2d 283 (S.D.N.Y. 2008) .......... 11

*Hart v. Rick's Cabaret Int'l, Inc.*,
967 F. Supp. 2d 901 (S.D.N.Y. 2013) .......... 11

*Jordan S. v. Hewlett Woodmere Union Free Sch. Dist.*,
2009 WL 910804 (E.D.N.Y. Mar. 31, 2009) .......... 9

*Katz v. Metro. Transp. Auth.*,
2017 WL 6734185 (E.D.N.Y. Dec. 29, 2017) .......... 3, 11

*Labarca v. Bausch*,
2026 WL 2364293 (W.D.N.Y. Aug. 14, 2026) .......... 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco P.L.C.*,
2003 WL 1618534 (S.D.N.Y. Mar. 27, 2003) .......... 3

*Okeke v. Maldonado*,
2026 WL 2056904 (E.D.N.Y. July 16, 2026) .......... 8

*Perry v. Spano*,
328 F. App'x 104 (2d Cir. 2009) .......... 9

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 585 F. Supp. 3d 540 (S.D.N.Y. 2022), *aff'd sub nom. Phoenix Light SF Ltd. v. Bank of New York Mellon*,
66 F.4th 365 (2d Cir. 2023) .......... 10

*Quaratino v. Tiffany & Co.*,
71 F.3d 58 (2d Cir. 1995) .......... 11

*RCPI Landmark Props., LLC v. Rockefeller Grp., Inc.*,
2009 WL 398082 (S.D.N.Y. Feb. 18, 2009) .......... 11

*Rea v. Ball*,
2026 WL 1959270 (N.D.N.Y. July 2, 2026) ..................................................................... 8

*Sharma v. Burberry Ltd.*,
52 F. Supp. 3d 443 (E.D.N.Y. 2014) ............................................................................ 3

*Spano v. V & J Nat'l Enters.,*
*LLC,* 264 F. Supp. 3d 440 (W.D.N.Y. 2017) .................................................................. 10

*Vansh v. Ball*,
2026 WL 2096666 (W.D.N.Y. July 21, 2026) ................................................................... 8

**Statutes**

N.Y. Veh. & Traf. Law § 508 .......................................................................................... 8

## INTRODUCTION

Significant developments have transpired in the five months since the filing of Plaintiffs' Motion for a Preliminary Injunction or Stay and Plaintiffs' Motion for Provisional Class Certification, DE 21; DE 21-1 at 27; DE 22. Defendants' practices have not only continued unabated—they have ramped up, with the number of arrests increasing significantly each month. Min Decl. Ex 1 (Deportation Data Project). Between July 27 and August 29, 2026, Defendants arrested 2,197 individuals across New York as part of "Operation Rotten Apple," over 40 percent more than in July 2026, and 2.5 times the number of arrests in April 2026. *Id.*; Min Decl. Ex. 2 (Escobar). Supplemental declarations from individuals caught by Defendants' dragnet since April 2026 corroborate what Plaintiffs described in their motions: Defendants routinely make warrantless arrests without conducting individualized escape risk assessments, resulting in irreparable harm to Plaintiffs and putative class members.

The recently completed expedited discovery process helped to fill the "evidentiary gap[s]" that the Court identified in both Plaintiffs' and Defendants' submissions on the pending motions. DE 67-1 at 3 (ECF pagination). However, given the significant passage of time, the recent surge in arrests, and Defendants' claim that their practices have changed, DE 54 at 14-15, Plaintiffs respectfully submit that the Court would benefit from additional evidence. Specifically, Plaintiffs seek to supplement the record with declarations from individuals arrested during the intervening months, recent reporting, and other evidence that will permit the Court to have a more comprehensive and up-to-date view of Defendants' arrest practices and the impact that Defendants' unlawful warrantless arrest policy is having across the state.

A more complete factual record will benefit the Court in evaluating Plaintiffs' pending motions. Defendants will not be prejudiced by Plaintiffs' supplementation of the record: they

cannot claim prejudice from the Court having a more accurate or up-to-date view of the facts (and, in all events, Defendants will have the opportunity to respond to this new evidence). Therefore, the Court should grant Plaintiffs' motion to supplement the record and consider the attached materials when deciding Plaintiffs' pending motions for preliminary relief and class certification.

**PROCEDURAL BACKGROUND**

Plaintiffs brought this suit on April 8, 2026, alleging, *inter alia*, that "Defendants have a policy and practice of making warrantless immigration arrests without probable cause that the person being arrested is unlawfully present in the country and is likely to escape before a warrant can be obtained, as 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) require." DE 1 ¶ 116.

Shortly after filing their complaint, Plaintiffs filed a motion requesting that the Court preliminarily enjoin or stay Defendants' policy and practice of making warrantless immigration arrests without probable cause of escape risk. DE 21. In support of the motion, Plaintiffs submitted declarations from Plaintiffs and 26 arrested individuals, attorneys, and community members. *See* DE 21-3-21-37. These declarations evidenced Defendants' unlawful warrantless arrest policy and the irreparable harm that it has caused. *See* DE 21-1 at 5-12, 17-18. The same day, Plaintiffs filed a motion requesting class certification of the "unassessed escape risk" subclass, i.e., people who have been or will be arrested without a warrant and without an individualized determination that they are likely to escape before a warrant can be obtained. DE 22.

At a June 18, 2026, conference regarding the pending motions, the Court advised the parties that there were "evidentiary gap[s] on both sides," including with respect to the pervasiveness of the alleged policy of making warrantless stops without an individualized determination of a likelihood of escape, suggested that additional evidence would be helpful, and expressed concerns regarding potential "false statements" in one of Defendants' declarations, from Deputy Director

Judith Almodovar. DE 67-1 at 3-5, 20 (ECF pagination). The following day, Defendants withdrew the declaration and submitted four new officer declarations with their sur-reply. *See* DE 62, 65-1-65-4. Plaintiffs then sought limited expedited discovery to address the evidentiary gaps identified by the Court and the new factual representations made in the sur-reply declarations. DE 67-68. On July 2, 2026, Magistrate Judge Wicks issued an order setting three phases of expedited discovery, encompassing limited data-sharing, requests for admission, and depositions. DE 73. The parties completed the expedited discovery process by August 21, 2026. DE 79 at 1.

**ARGUMENT**

Courts in the Second Circuit generally "loo[k] favorably upon efforts to supplement the record absent prejudice or bad faith." *Katz v. Metro. Transp. Auth*., 2017 WL 6734185, at *12 (E.D.N.Y. Dec. 29, 2017) (collecting cases); *see also Sharma v. Burberry Ltd.*, 52 F.Supp.3d 443, 455-56 (E.D.N.Y. 2014) (granting motions to supplement the record when the parties had a good faith basis for the motions in light of changed circumstances). Supplementing the record is particularly appropriate where the new evidence will allow the Court to decide the issues "presented to it on the most complete factual basis as possible." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco P.L.C.*, 2003 WL 1618534, at *1 (S.D.N.Y. Mar. 27, 2003).

The Court should permit Plaintiffs to supplement the record for Plaintiffs' pending motions with the attached declarations and exhibits. First, the supplemental materials help provide a "complete factual basis" for the Court to decide the pending motions, as they bridge the temporal gap between the filing of the motions in April 2026 and the present. *Id.* The attached declarations, news stories, and other materials corroborate Plaintiffs' experiences, substantiate Plaintiffs' allegations that Defendants have an ongoing policy and practice of making unlawful warrantless arrests without probable cause of escape risk, and demonstrate the irreparable harm caused by this

policy. They also illuminate Defendants' current practices. Second, Plaintiffs are acting in good faith. None of the attached declarations or other evidence was available at the time that Plaintiffs filed their motions because they concern arrests and operations that postdate the motions. Third, granting Plaintiffs leave to supplement the record will not prejudice Defendants.

**I. The Supplemental Evidence Enhances the Record Before the Court.**

The supplemental materials enhance the current record by bringing the record before the Court more up to date, including by providing the Court with information regarding Defendants' recent, major increase in arrests across New York and recent examples of Defendants' unlawful warrantless arrest policy and practice, which has evolved since Plaintiffs filed their motions for preliminary relief and class certification.

Plaintiffs' supplemental evidence demonstrates that Defendants' unlawful practice has expanded and adapted to meet increasing arrest quotas since April 2026. On September 1, 2026, DHS Secretary Markwayne Mullin announced that Operation Rotten Apple resulted in the arrest of nearly 2,200 people in New York between July 27, 2026, and August 29, 2026. Min Decl. Ex. 3 at 2 (Arnold). This marked a more than 40% increase in arrests over the month of July 2026, which previously held the record for monthly arrests during the second Trump Administration for New York. *Id.* Ex. 2 at 2 (Escobar). This dramatic surge in arrests followed months of threats from "Border Czar" Tom Homan to "flood the zone" with ICE agents following the enactment of statewide sanctuary laws. *E.g.*, DE 59 at 6. Secretary Mullin announced that DHS launched Operation Rotten Apple to retaliate against Governor Kathy Hochul and New York City Mayor Zohran Mamdani for refusing to cooperate with DHS's deportation program. *See* Min Decl. Ex. 4 at 2, 5 (DHS Press Release).

The surge in arrests has been enabled by Defendants' unlawful policy of making warrantless arrests without probable cause of escape risk, *see, e.g.*, DE 21-1 at 5, which has continued unabated. Declarants' statements and other evidence illustrate how Defendants' unlawful policy operates and harms New Yorkers.

First, immigration officers continue to stop Latinos as they engage in routine tasks in their communities and then quickly arrest them without warrants and without conducting an escape risk inquiry. *See, e.g.,* C.E.G.G. Decl. ¶¶ 4-10 (Latino man arrested in Queens on May 13, 2026, without a warrant and without being asked for identification while he was on his way to pick up medication for his partner and his five-day-old newborn); F.G. Decl. ¶¶ 7-16 (Latino man subject to violent warrantless arrest on May 20, 2026, as he left work in the Bronx). Defendants also still use photos of Latino targets to manufacture encounters and as a pretext to make street stops of other Latino men. *See* Aliaga Valdiviezo Decl. ¶ 3 (ICE agent dressed as a construction worker stopped him and asked him to identify a man in a photograph); Lopez Romero Decl. ¶¶ 4-9, 11 (Latino man stopped in front of his home in Brooklyn, while with his grandchildren, and questioned about a target he did not recognize).

Second, Defendants' agents still make arrests within minutes after stops, even when the stopped individual is not the target. Alvarez Farfan Decl. ¶¶ 3-4 (officers told him, "It's not you," upon seeing his ID, but still arrested him); Lopez Romero Decl. ¶¶ 6-9 (officers stopped him, showed him a photo of a target, and handcuffed him after he failed to identify the target, all within 4 minutes). Indeed, declarants' statements reaffirm that officers continue to make warrantless arrests without probable cause of escape risk and in fact ignore important equities and benefits demonstrating a lack of escape risk. *E.g.*, S.M.T.M. Decl. ¶¶ 7, 21 (August 7, 2026, warrantless arrest of a Latino man who affirmatively told officers about his young family of four and sick

wife); Aliaga Valdiviezo Decl. ¶¶ 3-4 (July 31, 2026, warrantless arrest without probable cause of escape risk of Latino man outside of his home after officers asked if he recognized a purported target shown in a photograph and reviewed his New York State identification card); Alvarez Farfan Decl. ¶¶ 2-4 (July 28, 2026, warrantless arrest without escape risk inquiry of Latino man in Queens walking to a doctor's appointment after officers claimed to be searching for someone else); Rodriguez Macedo Decl. ¶¶ 4-8 (July 8, 2026, warrantless arrest of two Latino men—again without warrants and without inquiring as to escape risk—while the men were waiting at a bus stop in Brooklyn); J.A.S.E. Decl. ¶¶ 3, 8 (July 7, 2026, warrantless arrest of a Latino man who was stopped in a car with his wife and one-year-old son and who offered to show officers his asylum paperwork); C.O.V.P. Decl. ¶¶ 3, 6-11 (July 6, 2026, warrantless arrest of a 22 year-old Latino man with Special Immigrant Juvenile Status and his boss at their workplace, a construction site in Binghamton); Ponce Cellan Decl. ¶¶ 5-6, 12, 15 (June 16, 2026, warrantless arrest of a Latino man who affirmatively told agents that he had an upcoming immigration hearing, a work permit, and a social security card).

Indeed, Defendants have streamlined their practices to speed up stops and arrests. Declarants describe being immediately surrounded by multiple officers. S.M.T.M. Decl. ¶¶ 11-12; Alvarez Farfan Decl. ¶ 2; Lopez Romero Decl. ¶ 4; Rodriguez Macedo Decl. ¶ 6; J.A.S.E. Decl. ¶ 7; J.B.L.C. Decl. ¶ 9; Ponce Cellan Decl. ¶12. C.E.G.G. Decl. ¶¶ 7-8; F.G. Decl. ¶¶ 8-9. For many declarants, officers placed them in handcuffs within a few minutes of stopping them. S.M.T.M. Decl. ¶ 16 (officers stopped his car and handcuffed him within two to three minutes); Lopez Romero Decl. ¶ 9 (officers stopped, arrested, and placed him in their vehicle over the course of four minutes); Rodriguez Macedo Decl. ¶ 7 (officers immediately grabbed and handcuffed him after he handed over ID); J.A.S.E. Decl. ¶ 11 (officers stopped his car and handcuffed him within

five to six minutes); C.E.G.G. Decl. ¶¶ 7-10 (officers grabbed him, shoved him against a fence, handcuffed him, and put him in their car, all within 30 seconds). Also, for many declarants, the few minutes before they were handcuffed involved violence or a substantial and imminent threat of violence that forced them to comply, meaning that Defendants arrested them even before they were handcuffed. J.A.S.E. Decl. ¶¶ 4, 8 (an officer repeatedly told him he could "do things the easy way or the hard way" and threatened to break his window); F.G. Decl. ¶ 12-14 (describing how officers backed him into a wall, threw him to the ground, and pointed a gun at him). C.E.G.G. describes how he initially thought he was being kidnapped, as officers simply handcuffed him and shoved him into a car without saying a word to him. C.E.G.G. Decl. ¶¶ 7-11.

Third, Defendants continue to target predominantly Latino communities. J.A.S.E. Decl. ¶ 22 (describing how his wife and other people in his community check online for reports of ICE sightings before going outside); C.E.G.G. Decl. ¶ 30 ("I live in a very Latino area, so I feel like ICE is out there hunting us"); F.G. Decl. ¶¶ 23-25 (describing the fear he feels seeing ICE patrolling his neighborhood "because a lot of Latinos work there"). Defendants stake out predominately immigrant neighborhoods like College Point, Queens, and scan out-of-state license plates to find noncitizens. Min Decl. Ex. 5 (Hogan); *id.* Ex. 6 (Velasquez). Declarants confirm this practice. *See* S.M.T.M. Decl. ¶ 13 (pulled over and arrested while driving a car with out-of-state plates in College Point); J.A.S.E. Decl. ¶ 3 (pulled over and arrested while driving); Ponce Cellan Decl. ¶ 15 (same). Therefore, declarants, like Plaintiffs, have a reasonable fear of re-arrest and re-detention. Alvarez Farfan Decl. ¶ 15 (describing living in constant fear of being re-detained: "I used to be very active and now I am traumatized and afraid"); Rodriguez Macedo Decl. ¶ 31 ("I continue to suffer from the trauma of my detention and live with constant fear of being detained again.").

Recent decisions on habeas petitions describe facts that show that declarants' experiences are not unique and are therefore highly relevant. *See*, *e.g.*, *Labarca v. Bausch*, 2026 WL 2364293, at *6 (W.D.N.Y. Aug. 14, 2026) (warrantless arrest unlawful where officers did not meet requirements of § 1357(a)(2)); *Vansh v. Ball*, 2026 WL 2096666, at *3 (W.D.N.Y. July 21, 2026) (same); *Rea v. Ball,* 2026 WL 1959270, at *3 (N.D.N.Y. July 2, 2026) (same); *Curimilma Quille v. Blanche*, 2026 WL 1453889, at *6 (E.D.N.Y. May 22, 2026) (same); *see also Chaglla v. Maldonado*, 2026 WL 2529494, at *2-3 (E.D.N.Y. Aug. 27, 2026) (arrest was unlawful where it preceded an NTA or warrant); *Pavlo Viner v. Maldonado*, 2026 WL 2355437, at *2 (E.D.N.Y. Aug. 14, 2026); *Okeke v. Maldonado*, 2026 WL 2056904, at *4 (E.D.N.Y. July 16, 2026) (same); *Lopez Romero v. Genalo*, 2026 WL 2240720, at *2-3 & *2 n.2 (arrest was unlawful where it preceded warrant and NTA, and the arresting officers did not establish probable cause of escape risk under § 1357(a)(2)).

Defendants' celebration of Operation Rotten Apple's arrest numbers and their explicit targeting of New Yorkers due to policy disagreements with New York's elected officials underscore that the surge in immigration enforcement—and the unlawful warrantless arrests policy that enables it—is here to stay. In fact, both New York City Field Office Director Kenneth Genalo and Buffalo Acting Field Office Director Philip Rhoney have promised to continue their enforcement practices. Min Decl. Ex. 4 (DHS Press Release). Officers in Defendants' New York field offices carried out Operation Rotten Apple, Min Decl. Ex. 3 (Arnold), and they remain in place to either continue the operation's tactics or revive them at any time. As Plaintiffs' and declarants' experiences demonstrate, whether Defendants patrol communities during a named operation or not, their imperative is to "catch" and arrest as many people as possible. *See* S.M.T.M. Decl. ¶ 19 (overhearing officers bemoan that they were unlikely to "catch anyone else" after him

because of the rain and late hour). To achieve this imperative, Defendants continue to make warrantless arrests without probable cause of escape risk.

In short, the supplemental evidence establishes Defendants' continued "policy and practice of conducting warrantless arrests in New York without making individualized probable cause determinations of escape risk." DE 21-1 at 12-13. This practice is not only contrary to law; it irreparably harms Plaintiffs and other New Yorkers. *See, e.g.*, *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F.Supp.3d 1, 50-52 (D.D.C. 2025). The continuation of the policy, and the throughline from Plaintiffs' to declarants' arrests, bolsters Plaintiffs' entitlement to preliminary relief and provisional class certification. *See id.* at 58-60.

**II. Plaintiffs Are Acting in Good Faith.**

Plaintiffs have a "good faith basis" for supplementing the record and can demonstrate that the proposed evidence is both relevant and new. *Compare Jordan S. v. Hewlett Woodmere Union Free Sch. Dist.,* 2009 WL 910804, at *3-4 (E.D.N.Y. Mar. 31, 2009) (permitting plaintiff to supplement the record with materials that could not have previously been disclosed and were non-duplicative), *with Perry v. Spano,* 328 F. App'x 104, 105 (2d Cir. 2009) (affirming the denial of a motion to supplement the record at the summary judgment stage where the plaintiff sought to introduce evidence that existed at the time of filing).

Here, all declarants were arrested and detained by Defendants after Plaintiffs' motions were filed. S.M.T.M. Decl. ¶¶ 2, 7 (arrested on August 7, 2026); Aliaga Valdiviezo Decl. ¶ 3 (arrested on July 31, 2026); Alvarez Farfan Decl. ¶ 2 (arrested on July 28, 2026); Lopez Romero Decl. ¶ 4 (arrested on July 21, 2026); Rodriguez Macedo Decl. ¶ 4 (arrested on July 8, 2026); J.A.S.E. Decl. ¶ 3 (arrested on July 7, 2026); C.O.V.P. Decl. ¶ 6 (arrested on July 6, 2026); J.B.L.C. Decl. ¶ 5 (arrested on July 6, 2026); Ponce Cellan Decl. ¶¶ 5-6 (arrested on June 16, 2026); F.G. Decl. ¶ 7

(arrested on May 20, 2026); C.E.G.G. Decl. ¶ 4 (arrested on May 13, 2026). The news stories and other supplemental materials presented by Plaintiffs were created after Plaintiffs' June 11, 2026, Reply in Further Support of Motion for a Preliminary Injunction, DE 59, and most concern Operation Rotten Apple, an operation that Defendants only publicly revealed on September 1, 2026. Min Decl. Ex. 1 (Deportation Data Project); *id.* Ex. 2 (Escobar); *id.* Ex. 3 (Arnold); *id.* Ex. 4 (DHS Press Release); *id.* Ex. 5 (Hogan); *id.* Ex. 6 (Velasquez); *id.* Ex. 7 (Arnold).

Additionally, Plaintiffs' evidence is highly relevant to the pending motions for the reasons explained above, and a more complete factual record would only benefit the Court in deciding the motions. *See Spano v. V & J Nat'l Enters., LLC,* 264 F.Supp.3d 440, 453 (W.D.N.Y. 2017).

**III. Supplementing the Record Will Not Prejudice Defendants.**

Plaintiffs' request to supplement the record is timely and will not prejudice Defendants. Plaintiffs make this request to supplement the record soon after the declarants' arrests[1] and less than two weeks after Defendants announced the results of Operation Rotten Apple. Defendants cannot claim prejudice based on the Court having a more complete and up-to-date record before it in resolving the pending motions. *Cf. Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 585 F.Supp.3d 540, 568 n.21 (S.D.N.Y. 2022), *aff'd sub nom. Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365 (2d Cir. 2023) ("[T]he parties will be best served by the Court deciding the issues presented to it on the most complete factual basis possible."); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 943 (S.D.N.Y. 2013) (allowing supplementation of record with "potentially probative" evidence relating "events that occurred after the close of discovery"). And this principle applies with particular force where Defendants themselves contend that they have

[1] Defendants arrested most of the declarants in July 2026 (or later).

changed their practices since Plaintiffs filed their motions. *See* DE 54 at 14-15; *RCPI Landmark Props., LLC v. Rockefeller Grp., Inc.*, 2009 WL 398082, at *1 (S.D.N.Y. Feb. 18, 2009) ("Defendants are not prejudiced by allowing plaintiff to submit documents that merely rebut the assertions made by defendants in their filings.").

Further, the supplemental evidence does not unfairly surprise Defendants or create an unfair burden. As described above, Plaintiffs offer "factual support related to the original complaint;" therefore, "no prejudice to defendants is apparent." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995); *see also Taylor v. Schaffer*, 2015 WL 541058, at *4 (D. Vt. Feb. 10, 2015) (finding no prejudice in considering "additional materials" that "merely support what [Plaintiff] has already pleaded"); *accord Katz*, 2017 WL 6734185, at *12; *cf. S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous. Dev. Fund Co.,* 608 F.2d 28, 43 (2d Cir. 1979) (allowing a motion to amend to "permi[t] the parties to obtain an adjudication of the merits").

These principles foreclose any claim of prejudice by Defendants. But to the extent any potential prejudice remains, the supplemental briefing process previously ordered by the Court affords Defendants an opportunity to respond.[2] *See F.T.C. v. Med. Billers Network, Inc.*, 543 F.Supp.2d 283, 308 n.26 (S.D.N.Y. 2008) (finding no prejudice where defendants responded to supplemental evidence).

Nor can Defendants claim prejudice from certain nonparty declarants submitting their declarations under initialisms instead of their true names.[3] Plaintiffs are willing to share the

---

[2] Defendants have not, to date, submitted evidence regarding the factual circumstances of the arrests described in the non-party declarations submitted with Plaintiffs' motion for a preliminary injunction or stay on April 13, 2026.

[3] Plaintiffs are concurrently filing a motion requesting that the Court grant certain declarants leave to proceed using their initials.

declarants' identities pursuant to the protective order already entered in this case, DE 40-1, consistent with the parties' existing practice.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and permit Plaintiffs to supplement the record, as it will enable the Court to fully consider all relevant facts—including those that have arisen after the motions were filed—in determining whether to grant preliminary relief and to provisionally certify Plaintiffs' proposed unassessed escape risk subclass.

Dated: September 14, 2026
New York, NY

/s/ Evan Henley
Philip Desgranges
Hasan Shafiqullah
Evan Henley
Brian Perbix
Alice Min
THE LEGAL AID SOCIETY
49 Thomas Street, 10th Floor
New York, NY 100013
Phone: 212-577-3300
pdesgranges@legal-aid.org
hhshafiqullah@legal-aid.org
ewhenley@legal-aid.org
bperbix@legal-aid.org
amin@legal-aid.org

Amy Belsher
Ifeyinwa Chikezie
Wafa Junaid
Molly Biklen
NEW YORK CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
Phone: 212-607-3300
abelsher@nyclu.org
ichikezie@nyclu.org
wjunaid@nyclu.org
mbiklen@nyclu.org

Paige Austin
Harold Solis

MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: 718-418-7690
paige.austin@maketheroadny.org
harold.solis@maketheroadny.org

Mark Gimbel
Giovanni Scarcella
Cecile Duncan (admitted pro hac vice)
Kezia Otinkorang (admitted pro hac vice)
COVINGTON & BURLING LLP
30 Hudson Yards
New York, New York, 10001
Phone: 212-841-1000
mgimbel@cov.com
gscarcella@cov.com
cduncan@cov.com
kotinkorang@cov.com

Jeffrey Cao (admitted pro hac vice)
Jillian Feirson (admitted pro hac vice)
Nicole Robinson (admitted pro hac vice)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
Phone: 202-662-6000
jcao@cov.com
jfeirson@cov.com
nrobinson@cov.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum of Law complies with the length restrictions in Local Civil Rule 7.1(c) because it contains 3,609 words, as counted by the Microsoft Word processing program used to prepare this document. This word count excludes the caption, table of contents, table of authorities, signature blocks, and this certificate as provided for by Local Civil Rule 7.1(c).

/s/ Evan Henley