UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RENE ANTONIO BENITEZ *et al.*,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY *et al.*,

*Defendants*.

**STIPULATION AND ORDER REGARDING THE FORMAT OF ELECTRONICALLY STORED INFORMATION AND DOCUMENT PRODUCTION**

Case No. 2:26-cv-2082-SJB-JMW

This Stipulation and Order ("Stipulation") shall govern the format and procedure for the production of electronically stored information ("ESI"), hard-copy Documents, and related document production in this action.

## I. DEFINITIONS

A. "**Producing Party**" means any Party that discloses or produces any Documents or ESI.

B. "**Receiving Party**" means the Party to whom the Producing Party discloses or produces any Documents or ESI.

C. "**Party**" or "**Parties**" means any Plaintiff or Defendant to the above-captioned matter.

D. "**Protected Information**" means Documents or ESI subject to a legally recognized claim of privilege or other protection from production or other disclosure pursuant to agreements in this case or reached by the Parties.

E. "**ESI**" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed R. Evid. 1001.

F. “**Document**” carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed R. Evid. 1001.

## II. SCOPE OF DISCOVERY

A. **Timeframe.** The Parties shall collect Documents and ESI created, sent, received, modified, or maintained since January 20, 2025. In serving requests for production of Documents, the Parties may state a time period for Documents to be produced that is applicable to each or multiple such requests. The Parties acknowledge that the appropriate timeframe for Documents to be produced may be different depending on the particular Documents requested. The Producing Party shall produce non-privileged responsive Documents to any request for production, subject to the Parties’ conferral regarding the requested time period. The Parties acknowledge that discovery may reveal a need for Documents outside such timeframe. In such circumstances, the Parties shall promptly meet and confer in good faith regarding any proposed adjustment to the temporal scope of discovery. If the Parties are unable to reach agreement, either Party may seek appropriate relief from the Court.

B. **Custodians.** The Parties may collect non-privileged Documents and ESI from any individuals or entities who are reasonably believed to have possession, custody, or control over potentially relevant ESI, including any individuals or entities identified in the Parties’ initial disclosures. The Parties shall meet and confer in good faith regarding the number and identity of custodians, as well as any requests to add or remove custodians as discovery progresses. Nothing in this Stipulation shall preclude a Party from seeking additional custodians based on information learned during discovery.

C. **Devices and Sources of ESI to be Searched.** Each Party shall conduct a reasonable and proportional search of devices, systems, applications, and data repositories that are in the Party’s possession, custody, and control, and reasonably likely to contain responsive ESI

or hard-copy Documents. Such sources may include, as appropriate, custodian email accounts, network drives, document management systems, cloud-based storage repositories, databases, collaboration and messaging platforms, shared drives, mobile device hard drives, and local computer hard drives that are owned, issued, or managed by the Producing Party. The Parties shall meet and confer in good faith if any request to search additional sources is made. If a Party contends that a particular requested source should not be searched, the Parties shall meet and confer before seeking relief from the Court.

D. **Culling and Search Parameters.** Each Party may use search parameters to locate potentially responsive ESI or Documents for collection and/or culling. If using search parameters, the Producing Party will (a) promptly identify such search parameters, (b) meet and confer with the Receiving Party regarding any amendment to the search parameters the Receiving Party requests, and (c) explain any opposition to the Receiving Party's requested search parameters based on burden by referencing document hit counts.

## III. GENERAL PROVISIONS

A. To the extent not unduly burdensome, the Parties shall produce Documents and ESI in accordance with the agreed-upon specifications set forth below.

B. Nothing in this Stipulation alters a Party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure and applicable decisional authority, nor does anything in this Stipulation impose additional burdens beyond those imposed by the Federal Rules of Civil Procedure and applicable decisional authority. The Parties reserve all objections under the Federal Rules of Civil Procedure and applicable decisional authority for matters not specifically addressed in this Stipulation. Nothing in this Stipulation is intended to or shall limit a Party's right to conduct a review of Documents

for relevance, responsiveness, and/or segregation of privileged information before production.

C. This Stipulation shall not imply that discovery produced under its terms is properly discoverable, relevant, or admissible. This Stipulation is not intended to waive or concede any arguments related to Defendants' motion to stay further discovery or any objections to the Memorandum and Order regarding such motion. *See* ECF Nos. 88, 96, 100, 105.

## IV. PRESERVATION

A. The Parties have discussed their preservation obligations and needs, and they agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

1. The Parties will continue to meet and confer to identify the sources and types of relevant ESI they believe should be preserved.
2. Only ESI created, received, or modified on or after January 1, 2025, need be preserved.
3. The Parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved. The Parties shall add or remove custodians as reasonably necessary. The Parties agree to notify all custodians of their preservation obligations and to verify that custodians have disabled all auto-deletion features on mobile messaging applications, email applications, and other messaging applications (including law enforcement messaging applications) on devices owned, issued, or managed by the Producing Party, according to the technical requirements and capabilities of the application(s). Nothing in this

Stipulation shall be construed as an admission that any ESI deleted, overwritten, or not retained prior to the entry of this Stipulation in the ordinary course and in accordance with applicable retention schedules or application settings was subject to a duty to preserve. The Parties reserve their respective rights under Fed. R. Civ. P. 37(e).

4. Preservation and collection obligations under this Order extend to the following:

   a) Data and associated images, video recordings, and audio recordings from devices owned, issued, or managed by the Producing Party, which shall include but not be limited to agents' government-owned, issued, authorized or managed phones or recording devices used when conducting immigration enforcement operations.

   b) Metadata associated with agent body camera footage to minimally include date of recording and duration of recording.

## V. PRODUCTION OF ESI

A. **General.** The procedures and protocols set forth in this Stipulation shall govern the production of ESI in this action, unless the Parties agree in writing to change them or they are changed by the Court. To the extent that third parties may produce Documents or ESI in this case, the Parties agree to request that such third parties abide by this Stipulation.

B. **Production Medium**. All electronic materials will be produced via secure File Transfer Protocol (FTP), or if FTP is unavailable, on CD, DVD, flash drive, or hard drive. Productions may be exchanged in encrypted form.

C. **Native and Color Productions.** Except as specified in this section, the Parties shall produce all Documents and ESI as single-page, black-and-white Group IV Tagged Image File Format ("TIFF") image files.

1. The parties shall produce color images for Documents and ESI where necessary to understand the meaning or content of the Document. Upon written request, and for good cause shown, the parties shall produce color images for a reasonable number of selected additional Documents and ESI. Documents and ESI produced in color shall be produced as JPEG images with Exif compression, 300 dpi or higher, and 24-bit color depth. Each color image file shall be named with the unique production number for the first page of the Document or ESI in question followed by the file extension "JPG."
2. For Documents and ESI whose native format is MS Excel, MS PowerPoint, MS Access, QuickBooks, other database formats, multi-media files (audio or video), and any other file type that cannot be converted to TIFF, the original native files shall be produced in addition to a single-page TIFF placeholder. The provisions of this Section V.C.2 notwithstanding, the Parties shall not be required to produce in the first instance an original native file of such Documents and ESI if a claim of attorney-client privilege, attorney work product protection and/or any other privilege, protection or immunity from disclosure necessitates the application of redactions to such Documents and ESI. Upon written request, and for good cause shown, the parties shall produce in native format, with any applicable redactions applied natively, Documents and ESI that necessitate the application of redactions to such Documents and ESI.
3. "Native" files refer to electronic files in the same format in which they were originally collected. Native file productions shall include extracted text, metadata, and a single page TIFF image indicating that the associated file was

produced in native form. Each produced native file shall be named with a unique production number (e.g., [Party Abbreviation]_BEN00000001.XLS) that is assigned to that specific record in the production. Native Files should be provided in a self-identified Natives directory. A "NativeLink" entry for each Native File should be included in the .DAT load file indicating the relative file path to each Native File on the production media. Any metadata fields for redacted Documents that would reveal privileged information may be excluded.

4. To the extent any such native files are used in any pretrial motion or proceeding, those files will be referred to by the production number assigned during processing.

D. **TIFF Productions**

1. **Image Production Standard.** Except as provided herein, the Parties shall produce all non-database ESI and hard copy Documents in TIFF format. All TIFF formatted Documents will be single page, black and white, Group 4 TIFFs at 300 x 300 dpi resolution and 8 1/2 X 11 inch page size. If a Party requests that a Document be imaged at a higher resolution or different page size in order to adequately understand the contents of a specific Document(s), the Producing Party shall make reasonable efforts to reproduce the Document(s) in the different format.

   Each page should be branded with a production number and confidentiality designation, if any, on the face of the image. Original Document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). All TIFF images shall be produced in a folder named "IMAGES," which shall

contain sub-folders named "0001," "0002," etc. Each sub-folder shall contain no more than 3,000 images. Images from a single Document shall not span multiple sub-folders.

2. **Load Files.** The parties' Document productions shall include Concordance-compatible Load Files, including a Concordance DAT file and an Opticon delimited file, that indicate Document breaks of the TIFF images and additional fields as identified in Appendix A below. All Load and Cross-reference files shall be produced in a folder named "DATA."

3. **File Name.** Each Document image file name shall match the page identifier for that specific image followed by the file extension "TIFF."

4. **Document Unitization.** If a Document is more than one page, the unitization of the Document and any attachments and/or notes shall be maintained as they existed in the original Document.

5. **System Files.** Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

6. **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent Document) should be preserved and appropriately reflected in the metadata. Production numbering of a parent Document and any attachments shall be sequential such that a parent Document has the lowest value production number when compared to its attachment(s).

7. **Email Threading.** Where multiple email messages are part of a single chain or "thread," a Producing Party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent Document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced. Where an earlier-in-thread email contains a responsive attachment not contained within the most inclusive email, the most inclusive earlier-in-thread email containing that attachment will also be produced together with its attachment.

8. **Metadata Fields and Processing.** Each of the metadata and coding fields that can be extracted from an electronic Document shall be produced for that Document. The Parties are not obligated to populate manually any field that cannot be extracted from a document, with the exception of the following: (1) BegDoc, (2) EndDoc, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) NativeLink, (7) Confidentiality fields, (8) TextLink, and (9) Record Type (which may be populated by the Party or the Party's vendor). Where the Custodian field cannot be extracted from an electronic Document located in a shared drive (e.g., OneDrive), the Custodian field may be manually populated with the name of the entity from whose system the Document was extracted. The Parties shall include the metadata fields in a searchable fielded data file, regardless of the production format (unless otherwise specified, time- and date-related metadata will reflect Eastern Time). A Party shall

produce additional metadata, if any, for a reasonable number of specific Documents upon the other Party's request.

9. **Redactions.** If any Party makes any redactions on the ground of attorney client privilege, the attorney work product doctrine, or any other claim of privilege, protection or immunity from disclosure, these redactions will be listed on a Privilege Log. In the event a Document is redacted, the redaction will be marked by either a box that covers the protected text and/or the term "Redacted." The extracted text described above will not be delivered for that Document; rather, in place of extracted text, OCR output will be delivered based on the redacted images, to the extent reasonably feasible. Redacted Documents may be produced in TIFF format.

10. **Fully Withheld Documents.** For Documents entirely withheld from production pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity, the designating Party shall produce one or more Privilege Logs.

11. **Privilege Logs.** The format, content, and production of privilege logs is governed by the provisions in Section VIII, *infra*.

E. **Searchable Text.** In addition to TIFF images and/or Native files, each production will include text files corresponding to the TIFF image or Native files described above.

1. **Extracted Text or OCR Text for TIFF Images and Native Files.** To the extent practicable, each individual Document based on an electronic file shall be accompanied by one corresponding text file with text that is extracted from the electronic file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a language requiring

characters outside of the ASCII character set) and shall be named with the unique production number of the first page of the corresponding TIFF Document followed by the extension "TXT." When there is no extractable text or when an electronic Document has been redacted, OCR text will be provided. For the avoidance of doubt, redacted text need not be provided. The production of relevant ESI in searchable, full text format is limited to those forms of ESI that have text (in other words, any non-text formats [e.g., .wav and .jpeg] would not produce any corresponding text files).

2. **All Extracted Text and OCR files shall be produced in a folder named "TEXT."** The Concordance load file will contain a link to the extracted text or OCR text file if applicable. The text should not be included in the Concordance.DAT load file.

F. **Bates Numbering.** All Documents must be assigned a Bates number that: (1) must be unique across the entire document production; (2) must maintain a constant length (zero/0-padded) across the entire production; (3) must contain no special characters or embedded spaces; (4) must be sequential within a given Document; (5) must not obscure any part of the underlying image; (6) must, to the extent possible, be oriented in the same manner as the majority of the text on the page. An endorsement must also be burned into each image for Documents produced in TIFF format.

G. **Confidentiality Designations.** The production of Documents or ESI pursuant to this Stipulation shall be governed by the Protective Order (DE 40-1) entered in this action. A Party may designate Documents, ESI, or other information as "Confidential," "Confidential–Attorneys' Eyes Only," or any other designation authorized by the Protective Order in accordance with the terms thereof. If a Party reduces Native Files or

other ESI designated “Confidential” or “Confidential–Attorneys’ Eyes Only” to hardcopy form, it shall mark the hardcopy with the appropriate designation. The designations must not obscure any material part of the underlying image or Bates number. The failure of a Party to mark such hardcopy Documents with the appropriate designation shall not affect such Document’s designation as “Confidential” or “Confidential–Attorneys’ Eyes Only.”

H. **De-Duplication of Productions.** To the extent that exact duplicate Documents (based on email threading, MD5 hash values) reside within a Party’s ESI data set, the Party may produce only a single copy of a responsive Document. “Duplicate ESI” means files that are exact duplicates based on the files’ MD5 hash, SHA-1 hash, or SHA-256 hash values. For Duplicate ESI, the metadata described in Section V.C herein shall be produced for the produced copy. De duplication shall be done at the Document family level, such that where any Duplicate ESI have attachments, hash values must be identical for both the Document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. Duplicate ESI may be deduplicated vertically (i.e., by custodian) and horizontally (i.e., globally across custodians).

I. **Embedded or Hyperlinked Objects.** The Parties will not review or produce embedded or hyperlinked files (a/k/a “modern attachments”) (e.g., .vcf files embedded in emails, .xlsx files embedded in PowerPoint presentations produced natively). The Parties will consider reasonable and proportional requests made in good faith for the production of embedded or hyperlinked objects on a case-by-case basis. Non-substantive Documents, such as logos, may be omitted from production. For the avoidance of doubt, this provision does not apply to the production of attachments to parent Documents, governed by Section V.D.6 *supra*.

J. **Compressed Files.** Compressed file types will be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

K. **Structured Data.** In instances in which ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the parties must produce the information in such a report form, in the reasonably usable TIFF-image format described above. If an existing report form is not reasonably available, then the parties will meet and confer to find a mutually agreeable report form.

L. **Messaging Data.** Short message communications (e.g., text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Signal, etc.) may be converted to RSMF format and will be produced in TIFF format. To the extent RSMF, PST, or HTML is not available, the Parties will meet and confer regarding the appropriate format of collection and production and accompanying metadata considerations, if applicable.

1. **Time Frame:** The complete responsive communication will be produced, separated into 24-hour increments to provide necessary context to the responsive communications, if possible.
2. **Redaction of RSMF:** To ensure complete responsive communications will be produced, the Producing Party may redact messages that contain privileged information or information that is both (i) not responsive, and (ii) highly sensitive and personal (e.g., personal health or family matters). But the reason for the redaction must be clearly stated on the face of the Document.
3. If a Document is produced in RSMF or native format, a single-page Bates stamped image slip sheet stating the Document has been produced in native format should be provided. Each native file should be named according to the Bates number it has been

assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

M. **Presentations**. The Parties shall make reasonable efforts to process presentations with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF of .jpg image.

N. **Foreign Language Documents.** No Party is required to produce translations of any foreign language Documents, except as may be required under the Federal Rules of Evidence or by the Court.

O. **File Size Limitation/Non-Standard Files.** To the extent necessary or practical, the format of production of unusually large files and non-standard electronic files, large oversized Documents (e.g. blueprints) etc., will be discussed before production to determine the optimal production format.

P. **Technology-Assisted Review and Analytics.** A Producing Party may use technology-assisted review ("TAR"), continuous active learning ("CAL"), email threading, other advanced analytic tools, and/or artificial intelligence (also referred to by Defendants as "super intelligence") tools methodologies, to search, filter, cull, review, and produce ESI.

1. Where a Producing Party does so, it must (1) notify the Receiving Party that it intends to use such tool(s) and disclosing the name of the tool(s), (2) provide a general description of the tool(s) and the method by which the tool(s) will be used. If a Party objects to the method by which the tool(s) will be used, or the use of the tool, the Parties shall meet and confer to resolve the dispute. If the Parties cannot agree on usage of the tool or method of use, the objecting Party may seek intervention of the Court.

2. The Parties may not enter into an artificial intelligence tool or service any information or Documents produced under this Stipulation, unless such a tool or service is deployed

in a closed environment that does not use such information or Documents to train or improve any model. A permissible closed environment includes an environment shared only among people subject to the Protective Order. Should a Receiving Party load, import, submit, feed, or otherwise transfer information or Documents into a closed artificial intelligence environment in compliance with this Stipulation, the Party shall not use or permit the tool or its model providers to use, such material to train or improve any model or otherwise inform other cases or matters. Deletion of uploaded information or Documents will occur upon termination of this case in accordance with the Protective Order.

3. Artificial intelligence tools or services shall not be given access to produced Documents or information designated as "Confidential Information" or "Confidential—Attorneys' Eyes Only Information" in such a way that would result in access to such information or Documents by any person not permitted such access by the Protective Order.

Q. **Previously Produced Documents.** Documents previously processed and produced in another litigation or in response to governmental or regulatory inquiries or investigations, and that the Parties agree are responsive in the current litigation, may be produced in the same format as produced in that particular litigation, inquiry, or investigation, regardless of whether the format complies with the other specifications described herein.

## VI. PRODUCTION OF HARD-COPY DOCUMENTS

A. **Hard-Copy Documents.** The Parties must produce hard-copy Documents as scanned images. Each hard-copy Document must be scanned as black and white, single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI) with corresponding OCR text in document level .TXT format and standard load files which can

be used with commercially available litigation software packages. Each image must have a unique file name, which is the Bates number of the image. To the extent technically available, original Document orientation, and document breaks and organization must be maintained (i.e., portrait to portrait and landscape to landscape). The Parties will accommodate reasonable requests for production of specific images in color.

B. **Index Fields.** For each hard-copy Document, the following information must be produced and provided in the data load file at the same time that the TIFF images and the OpticalCharacter Recognition (OCR) acquired text files are produced. Each index field must be labeled as set forth in Appendix A.

C. **Unitizing of Documents.** Distinct Documents must not be merged into a single record, and single Documents will not be split into multiple records (i.e. hard-copy Documents should be logically unitized). In the case of an organized compilation of separate Documents—for example, a binder containing several separate Documents behind numbered tabs, the Document behind each tab should be scanned separately. The Parties will make their best efforts to unitize Documents.

## VII. PROCESSING OF THIRD-PARTY DOCUMENTS

A. A Party that issues a non-party subpoena after the date this Stipulation is entered by the Court ("Issuing Party") shall include a copy of this Stipulation with the subpoena and request that the non-party produce Documents in accordance with the specifications set forth herein. If a Party issued a non-party subpoena prior to the execution of this Stipulation, that Party shall promptly forward a copy of this Stipulation to the non-party and request that the non-party produce Documents in accordance with the specifications set forth herein.

B. The Issuing Party is responsible for producing to all other Parties any Documents obtained pursuant to a subpoena within a commercially reasonably time after receipt. If a non-party fails to produce Documents in accordance with the specifications set forth herein, the Issuing Party shall undertake reasonable efforts to conform the non-party's production to the specifications described herein, and shall assign a unique identification number to each Document. Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third parties to object to a subpoena, including the Issuing Party's obligation under Rule 45(a)(4) to provide notice and a copy of any non-party subpoena to all Parties.

## VIII. PRIVILEGE LOGS

A. Pursuant to Federal Rules of Civil Procedure ("Rules") 26(b)(5), 29(b) and 34, and Local Civil Rule 26.2, the Parties stipulate and agree that notwithstanding any federal or local rule, case law, or other potentially-applicable requirement, the following shall be the protocol used by the Parties when a Party asserts that Documents otherwise responsive to a written discovery request directed at a Party (a "Request") are not subject to production because such Documents are privileged.

1. **Privilege Log Production Timing**. Privilege logs will be produced: (1) on January 15, 2027, for any Documents withheld from productions prior to January 1, 2027; and (2) within two weeks after the close of fact discovery for any Documents withheld from productions on or after January 1, 2027. The Parties agree that, for any Documents included in privilege logs produced after the close of fact discovery, a Producing Party must produce any Documents that are deemed not privileged following the close of fact discovery, subject to the procedures outlined in this Section.

**2. Privilege Log Content**

a) Privilege logs shall be produced in a sortable Excel (or comparable electronically searchable and sortable) format that provides for each log entry (as applicable and to the extent reasonably available) at least the following information (whether by column heading or otherwise) to the extent reasonably determinable:

(1) Unique document identification number;

(2) Bates number (if indicated in the production);

(3) Date (date sent for correspondence such as emails, memos, and letters; date created for other Documents);

(4) Author;

(5) To;

(6) From;

(7) Cc;

(8) Bcc;

(9) Subject. This field may be redacted to the extent it contains privileged or Protected Information.

(10) File Name. This field may be redacted to the extent it contains privileged or Protected Information.

(11) All privilege(s) or protection(s) claimed;

(12) The type of privilege being asserted: e.g., Attorney/Client, Attorney Work Product, Law Enforcement Privilege, Deliberative Process Privilege, or Common Interest.

(13) A description of the Document and its contents sufficient to establish the privilege under Fed. R. Civ. P. 26(b)(5);

(14) An indication of whether the Document has been redacted and produced or wholly withheld.

3. Should it be necessary at any time for the Producing Party to provide an amended log, the Producing Party shall provide a redline or otherwise indicate changes from the prior log.

4. Family-Level Logging: Where the same asserted privilege basis applies to all members of a Document family (a group of related Documents that include parent and child Documents, e.g., a parent email and subsequent emails, and any attachments thereto), the claim of privilege need not be separately logged for each family member.

5. A Party's Privilege Log shall be produced pursuant to the Protective Order in this case.

B. **Exemptions from Logging**

1. The following privileged items need not be included in the privilege log:

a) Communications undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) that are protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) and (B);

b) Communications or Documents relating to litigating this matter post-complaint;

c) Communications between any Party and counsel of record for that Party, whether in-house counsel (including agency counsel) or outside counsel (including the Department of Justice), if the communications were created

after the date when the complaint in this case was filed and were made entirely for the purpose of seeking or receiving legal advice.

2. The above-mentioned exceptions are made without prejudice to any Party's ability and right to assert that materials are discoverable and not privileged or otherwise protected.

C. **Privilege Challenges**

**1. As Concerns Documents**

a) The Parties agree that the Receiving Party may challenge a specific privilege designation by notifying the Producing Party in writing of the basis for the challenge and identifying the individual Documents whose privilege designation is being challenged. Such challenges shall be made within 14 calendar days of the production of the privilege log. The Producing Party receiving a challenge shall respond to the challenge within 14 calendar days either (a) withdrawing the privilege claim and providing the previously withheld information or (b) identifying all bases for rejecting the challenge to the privilege claim(s) asserted. To the extent any privilege claims are not withdrawn, the Parties shall meet and confer over any disputed issues, and if, after seven days from receipt of the response to the privilege challenge, the Parties are not able to resolve all the disputed issues, the challenging Party may seek relief from the Court.

b) In the event a Party believes that proceeding in the fashion described above for the resolution of privilege challenges would irreparably harm its ability to prosecute or defend this action, the Party shall meet and confer with the Party claiming privilege about proceeding more expeditiously. If the parties

do not reach an agreement, the challenging Party may seek relief from the Court more expeditiously.

c) If the Court determines that a Document or information that is the subject of a privilege challenge is not privileged, the Producing Party shall provide the Document or information within 7 days of the Court's ruling, or if the Producing Party challenges such a ruling, within 7 days of the conclusion of any and all proceedings or appeals challenging the decision, or within any time otherwise specified by the Court. The Document or information shall remain withheld or redacted and may not be used as evidence by either Party at trial or in any hearing, nor may it be relied upon by either Party's experts, until final ruling on the privilege challenge.

2. As Concerns Testimony. The Parties agree to meet and confer in good faith to resolve privilege disputes that arise in the context of a deposition and involve the Court as necessary under the circumstances.

D. The Party providing the Privilege Log shall keep, maintain, and provide to the Party receiving the Privilege Log, a list of attorneys with their respective component office (e.g., CBP Office of Chief Counsel) for any attorney named in any Privilege Log or any Document that is withheld or redacted on the basis of attorney-client privilege or attorney work product doctrine protections. The list of attorneys will be produced subject to the Protective Order in this case. Nothing in this paragraph shall prevent the Party receiving the Privilege Log from otherwise requesting information about author(s) and recipient(s), or subject matter, in order to reasonably assess the basis or bases for withholding or redacting a Document. The Party providing the Privilege Log retains its ability to object to any such request. Where a Party or non-party determines in good faith that any of the

privilege log disclosures called for by this paragraph would be privileged themselves, the Party or non-party shall disclose as much non-privileged information called for by this paragraph as possible.

E. **Receipt of Privileged Materials**

1. If any Document or ESI received by a Party is on its face clearly subject to a legally recognizable privilege, immunity, or other right not to produce such information, the Receiving Party will promptly notify the Producing Party in writing that it has discovered Protected Information, identify the Protected Information by Bates Number range, and sequester such Protected Information until the Producing Party confirms whether it does indeed assert any privilege over this information.
2. If the Producing Party intends to assert a claim of privilege or other protection over Protected Information identified by the Receiving Party, the Producing Party will, within seven days of receiving the Receiving Party's written notification, inform the Receiving Party of such intention in writing and shall provide the Receiving Party with a log for such Protected Information. If any portion of the Protected Information is within the scope of discovery and does not contain privileged or protected information, the Producing Party shall also provide to the Receiving Party a redacted copy of the Protected Information that redacts the information that the Producing Party believes is subject to a claim of privilege, immunity, or other protection.
3. Once the Producing Party asserts privilege over such Protected Information, the Receiving Party will return or destroy all copies of such Protected Information, along with any notes, abstracts or compilations of the content thereof, within three business days of receiving such notice from the Producing Party.

F. **Claw-Back Provisions**

1. The disclosure of a Document in discovery does not, in and of itself, waive any privilege by the Producing Party in this action or in any other federal, state, or administrative proceeding.

2. In accordance with Federal Rule of Civil Procedure 26(b)(5)(B), the Producing Party is entitled to the immediate return, destruction, or sequestration of a produced Document designated in writing as privileged, without having to first demonstrate that the disclosure was inadvertent, that the Producing Party took reasonable steps to prevent the disclosure of the privileged Document, or that the Producing Party took reasonable steps to rectify the error.

3. Upon a request from any Producing Party who has produced what it believes is Protected Information, each Receiving Party shall return to the Producing Party, or destroy and certify as such, such material and all copies within three business days. See also Protective Order, DE 40-1, ¶ 30. For the avoidance of doubt, a Receiving Party may not sequester, use, or disclose the Protected Information while the claim of privilege or other protection is pending and may not present the Protected Information to the Court for a determination of the claim of privilege or other protection except pursuant to the procedures of Section III above. If a Receiving Party disclosed the Document or information specified in the notice before the notice, it must immediately: (a) notify, in writing, the Producing Party of the disclosure; (b) use best efforts to retrieve all copies of the Documents or information over which the privilege is asserted; and (c) notify, in writing, the Producing Party of its efforts to retrieve the Document or information and whether all copies have been retrieved.

4. If the purportedly Protected Information is ultimately deemed not privileged by either the Court or by agreement between the Parties, the Producing Party shall re-produce the returned or destroyed information within three business days.

5. A Receiving Party's return, sequestration, or destruction of such Protected Information as provided in the subparagraphs above will not act as a waiver of the Receiving Party's right to move for the production of the returned, sequestered, or destroyed Protected Information on grounds that the Protected Information is not in fact subject to a viable claim of privilege or other protection.

## IX. MISCELLANEOUS PROVISIONS

A. This Stipulation is intended solely to address the matters stated herein. Nothing in this Stipulation establishes any agreement as to either the subject matter scope of discovery in the Action or as to the relevance or admissibility of any Document. Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, protection or immunity from disclosure. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hard-copy Documents or ESI.

B. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this Stipulation or if compliance with such material aspect would be unreasonable, such Party shall inform the Receiving Party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable. No Party may seek relief from the Court

concerning compliance with the Stipulation unless it has first conferred with the other Party.

C. Nothing in this Stipulation shall affect, in any way, a Producing Party's right to seek reimbursement for costs associated with collection, review, and/or production of Documents or ESI. That the Court has so-ordered this Stipulation shall not be construed to indicate that the Court has made any finding regarding whether there is any basis for shifting of costs.

D. Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

E. Any application to the Court regarding this Stipulation shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of New York, and this Court's Individual Rules and Practices.

F. The Court will not retain jurisdiction after conclusion of the Action for enforcement of this Stipulation.

*Remainder Of Page Intentionally Left Blank*

Respectfully submitted,

Dated: November 4, 2026
Washington, D.C.

*/s/ Jeffrey Cao*

Jeffrey Cao (admitted pro hac vice)
Jillian Feirson (admitted pro hac vice)
Nicole Robinson (admitted pro hac vice)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
Phone: 202-662-6000
jcao@cov.com
jfeirson@cov.com
nrobinson@cov.com

Mark Gimbel
Giovanni J. Scarcella
Cecile Duncan (admitted pro hac vice)
Kezia Otinkorang (admitted pro hac vice)
COVINGTON & BURLING LLP
30 Hudson Yards
New York, New York, 10001
Phone: 212-841-1000
mgimbel@cov.com
gscarcella@cov.com
cduncan@cov.com
kotinkorang@cov.com

Amy Belsher
Jessica Perry
Wafa Junaid
Molly Biklen
NEW YORK CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
Phone: 212-607-3300
abelsher@nyclu.org
jperry@nyclu.org
wjunaid@nyclu.org
mbiklen@nyclu.org

Philip Desgranges
Hasan Shafiqullah
Evan Henley
Brian Perbix

Alice Min
THE LEGAL AID SOCIETY
49 Thomas Street, 10th Floor
New York, NY 10013
Phone: 212-577-3300
pdesgranges@legal-aid.org
hhshafiqullah@legal-aid.org
ewhenley@legal-aid.org
bperbix@legal-aid.org
amin@legal-aid.org

Paige Austin
Harold Solis
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: 718-418-7690
paige.austin@maketheroadny.org
harold.solis@maketheroadny.org

*Attorneys for Plaintiffs*

Dated: November 4, 2026
Brooklyn, New York

*/s/ Justin S. Kirschner*___________

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

Diane C. Leonardo
diane.beckmann@usdoj.gov
(631) 715-7854

Marika Lyons
marika.lyons@usdoj.gov
(631) 715-7822

Thomas R. Price
thomas.price@usdoj.gov
(631) 715-7893

Kathleen A. Mahoney
kathleen.mahoney@usdoj.gov
(718) 254-6026

Philip DePaul
philip.depaul@usdoj.gov
(718) 254-7503

Justin Kirschner
justin.kirschner@usdoj.gov
(718) 254-6884

*Attorneys for Defendants*

Dated: ___________________

**SO ORDERED:**

___________________________

JAMES W. WICKS
United States Magistrate Judge

## APPENDIX A

### Production Fields

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| PRODVOL | Production Volume Identifier (*e.g.*, DEF001) | Production Volume Identifier (*e.g.*, DEF001) | Production Volume Identifier (*e.g.*, DEF001) |
| PRIMARY CUSTODIAN[1] | The name of the primary custodian (or non-custodial source) who had an identical copy of the Document. | The name of the primary custodian (or non-custodial source) who had an identical copy of the Document. | The name of the primary custodian (or non-custodial source) who had an identical copy of the Document. |
| ALL CUSTODIANS | The name of all custodians other than the primary custodian who had an identical copy of the Document. | The name of all custodians other than the primary custodian who had an identical copy of the Document. | The name of all custodians other than the primary custodian who had an identical copy of the Document. |
| PRODBEG | Number endorsed on first page of Document. | Number endorsed on first page of Document. | Number endorsed on first page of Document. |
| PRODEND | Number endorsed on last page of Document. | Number endorsed on last page of Document. | Number endorsed on last page of Document. |

[1] The Producing Party may provide primary-custodian and duplicate-custodian information through reasonably usable, searchable metadata fields, including All Path, DupeCustodian File Path, or comparable fields maintained in its ESI processing environment, rather than in separately populated Primary Custodian or All Custodians fields, provided that the production supplies substantially equivalent custodian and path information.

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| PRODBEGFAMILY | Number endorsed on first page of first Document in a family (*i.e.*, Documents and all attachments thereto). | Number endorsed on first page of first Document in a family (*i.e.*, Documents and all attachments thereto). | Number endorsed on first page of first Document in a family (*i.e.*, Documents and all attachments thereto). |
| PRODENDFAMILY | Number endorsed on last page of last Document in a family (*i.e.*, Documents and all attachments thereto). | Number endorsed on last page of last Document in a family (*i.e.*, Documents and all attachments thereto). | Number endorsed on last page of last Document in a family (*i.e.*, Documents and all attachments thereto). |
| CONFDESIGNATION | The confidential designation endorsed on the Document. | The confidential designation endorsed on the Document. | The confidential designation endorsed on the Document. |
| AUTHOR | N/A | If available, the person(s) who created, wrote, reviewed, signed, or approved the Document. | If available, the person(s) who created, wrote, reviewed, signed, or approved the Document. |
| SUBJECT | Verbatim subject or re: line, as stated in the e-mail. | If available, the title or subject line of the Document | N/A |
| FROM | The sender of the e-mail | N/A | N/A |
| TO | All information contained in the "To" field of the e-mail. | N/A | N/A |

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| CC | All information contained in the “CC” field of the e-mail. | N/A | N/A |
| BCC | All information contained in the “BCC” field of the e-mail, to the extent it is available from collected email (*e.g.*, a regular recipient of an email will not see names of anyone who is BCC’d) | N/A | N/A |
| DATE/TIME SENT | Date and time the E-mail was sent, including month, date and year and hour, minute, second | N/A | N/A |
| DATE/TIME CREATED | N/A | Date the non-email Document was created, for non-e-mail electronic Documents, including the month, date and year and hour, minute, second. | N/A |
| DATE/TIME MODIFIED | N/A | Date the Document was last modified, for non-e-mail electronic Documents, including the month, date and year and hour, minute, second. | N/A |

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| FILENAME | N/A | Original file name. | N/A |
| FILEEXT | File Extension of the Native File (*e.g.*, .msg, .doc). | File Extension of the Native File (*e.g.,* .msg, .doc). | N/A |
| TEXTPATH | File path on production media to text file containing full text of the e-mail. | File path on production media to text file containing full text of the Document. | N/A |
| NATIVELINK | The full path to Native File on production media if producing in Native. | The full path to Native File on production media if producing in Native. | N/A |
| FILEPATH | Original folder name within the e-mail account (*e.g.*, Outlook subfolder). | Original folder name where the electronic file resided. | N/A |
| RECORDTYPE | Describes the application associated with the Document. | Describes the application associated with the Document. | N/A |
| DOCTYPE | Whether the Document is an email, email attachment, eDoc, eDoc attachment, or hardcopy Document. | Whether the Document is an email, email attachment, eDoc, eDoc attachment, or hardcopy Document. | Whether the Document is an email, email attachment, eDoc, eDoc attachment, or hardcopy Document. |

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| NUMATTACH | The number of attachments to a particular email. | The number of attachments to a particular loose ESI Document. | N/A |
| HASH VALUE | Hash Value | Hash Value | N/A |