NYCLU
ACLU of New York

New York Civil Liberties Union
125 Broad Street, 19th Fl.
New York, NY 10004
(212) 607-3300
www.nyclu.org

November 4, 2026

Hon. Sanket J. Bulsara
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 903
Central Islip, NY 11722

Re: *Benitez et al. v. U.S. Department of Homeland Security et al.*, 26-cv-2082-SJB-JMW

Dear Judge Bulsara:

Plaintiffs write in response to the Court's Order dated October 21, 2026, directing the parties to address *Sanchez Alfaro v. Mullin*, 2026 WL 1382985 (E.D.N.Y. May 18, 2026). That decision reaffirms Plaintiffs' arguments, and the resulting injunction aligns with the remedies sought in this case. However, ICE has not conformed its practices to that injunction, and even if it did so, compliance would not provide the full relief Plaintiffs seek here.

## I. *Sanchez Alfaro* Confirms Plaintiffs' Arguments.

In *Sanchez Alfaro*—a habeas petition raising constitutional and statutory challenges to a noncitizen's arrest and detention—Judge Brown made several holdings relevant to Plaintiffs' arguments. The court held that ICE must conduct the escape risk analysis required by Section 1357(a)(2) unless the officer has "obtain[ed] a valid warrant of arrest in advance" of the arrest. *Sanchez Alfaro*, 2026 WL 1382985, at *3. The court explained that a "valid warrant" is one "obtained in advance of an arrest" and warrants issued "post-arrest or prior to the commencement of removal proceedings" are "plainly illegal." *Id*. Thus, the court concluded, an injunction requiring ICE to either obtain a valid warrant in advance or conduct a pre-arrest determination that the person is likely to escape is "coextensive with—and no greater than—the statutory requirements of 8 U.S.C. § 1357." *Id.* at *2.

Here, Plaintiffs have argued that Defendants maintain a policy of conducting warrantless arrests without assessing escape risk. DE 1, Compl. ¶ 131 n.127 ("An arrest under authority of a Form I-200 warrant issued before the issuance of a notice to appear is unlawful and invalid," and such arrests "must be treated as warrantless arrests."); DE 90 at 1 ("Defendants' post-hoc warrants do not alter the warrantless nature of the initial arrest or obviate compliance with § 1357(a)(2)."). In denying any such policy exists, Defendants have pointed to arrests where warrants were issued post-hoc or prior to the issuance of an NTA. *See* DE 58 at 10; DE 89 at 12-13; DE 90 at 5-7. But

*Sanchez Alfaro* confirms, as Plaintiffs have argued, that the issuance of post-hoc or invalid warrants does not eliminate the need for compliance with 8 U.S.C. § 1357(a)(2). To the contrary, they are evidence that Defendants have eschewed their obligations under the statute in favor of post-hoc and invalid warrants and further demonstrate the existence of the policy. Defendants' position in this litigation cannot be reconciled with the *Sanchez Alfaro* injunction or the decisions of this Court.

## II. The *Sanchez Alfaro* Injunction Does Not Diminish Risk to Plaintiffs Because ICE Has Not Complied.

In the five months since Judge Brown issued the *Sanchez Alfaro* injunction, ICE has continued to issue post-hoc and otherwise invalid warrants and make warrantless arrests without meeting the requirements of § 1357(a)(2), and courts in this district have continued to find these practices unlawful. *See, e.g.*, *P.A.G.C. v. Genalo*, 2026 WL 3216694 (E.D.N.Y. Oct. 27, 2026) (granting habeas after finding that warrant was invalid because NTA was issued and filed after the arrest); *Anacona-Uni v. Warden of MDC*, 2026 WL 3168485 (E.D.N.Y. Oct. 22, 2026) (granting habeas petition after finding warrant was invalid because the NTA was issued post-arrest). Unfortunately, this means that Judge Brown's injunction has not reduced the risk of unlawful re-arrests for Plaintiffs.

These unlawful arrest practices have also continued unabated across New York State, beyond the reach of the *Sanchez Alfaro* injunction. *See, e.g.*, *Meza v. Genalo*, 2026 WL 2875630 (S.D.N.Y. Sept. 24, 2026) (granting habeas after finding NTA was issued post-arrest); *Vergel Gonzalez v. Rhoney*, 2026 WL 2327690 (N.D.N.Y. Aug. 12, 2026) (ordering release of seven petitioners as each of their arrest warrants were issued post-arrest and no individualized escape risk assessment was conducted); *Khan v. Venturella*, 2026 WL 2969757 (N.D.N.Y. Oct. 2, 2026) (granting habeas after finding warrant was issued post-arrest and no individualized escape risk assessment occurred); *Loja v. Venturella*, 2026 WL 2654956 (N.D.N.Y. Sept. 9, 2026) (ordering release after finding NTA was issued post-arrest); DE 90 at 12-13 (collecting cases).

The day after Judge Brown's order, Defendants represented to this Court that "warrants are not going to be issued after the fact." *Benitez v. Genalo*, No. 26-cv-1122, May 19, 2026 Hr'g Tr. 42:8-13. Yet, three months later, ICE officers testified to the continuation of the same practices: they carry "blank printed copies of NTAs and blank I-200s," DE 90-11 at 32, Petito Tr. 70:8-16; obtain warrants by telephone, in one instance in "seconds," DE 90-9 at 26-28, Cuni Tr. 99:24-100:3; DE 97-2 at 11, Rey Tr. 63:7-11; "execut[e]" warrants they have never seen, DE 97-2 at 12, Rey Tr. 64:5-23; and seek warrants where no NTA exists, DE 90-9 at 32-33, Cuni Tr. 134:18-135:18; DE 90-14 at 16, Mascia Tr. 62:20-22. Officers do not regard arrests using such post-hoc or pre-NTA warrants as warrantless, DE 90-9 at 36, Cuni Tr. 157:14-21; *see* DE 90 at 7-9, in direct violation of Judge Brown's order that officers must comply with § 1357(a)(2) unless they obtain a *valid* warrant before the arrest, *Sanchez Alfaro*, 2026 WL 1382985, at *3. None of the deponents mentioned the *Sanchez Alfaro* injunction, and several testified that they were unaware of any changes in policy or practice following the decision. DE 90-14 at 26-27, Mascia Tr. 162:8-163:14; DE 90-11 at 50-52, Petito Tr. 103:20-105:2. Officers who described an instruction to issue the NTA before the I-200, as 8 C.F.R. § 236.1(b)(1) requires, treated it as optional. DE 90-9 at 31-33, Cuni Tr. 133:22-135:18; Exhibit 1, Mascia Tr. 62:17-64:13.

Complying with the injunction would have required ICE to change how its officers make arrests as the order "represent[ed] a departure from ICE's existing practices." *Sanchez Alfaro*, 2026 WL 1382985, at *2. The court specifically instructed that "it would behoove respondents to ensure that adequate training and policies are being provided to ICE agents." *Id.* at 2 n.2. Tellingly, Defendants have identified no such training or policy implementing the injunction. The only training materials in the record, from February 2026, instruct that officers may carry a blank I-200 for arrests "so that an individualized 'likelihood of [e]scape' analysis is not needed." DE 90-16 at 90. Further, the record contains no declaration from any official responsible for ICE policy.[1] Nor do Defendants claim to be complying with the injunction. Their supplemental brief, filed after the injunction issued, does not mention it, and they persist in treating arrests using warrants issued after the arrest or before an NTA as arrests pursuant to a valid warrant. *See, e.g.*, DE 89 at 7, 12-13.

## III. Compliance With the Injunction Would Not Resolve Plaintiffs' Claims.

Even if Defendants complied with the *Sanchez Alfaro* injunction, such compliance would not resolve Plaintiffs' warrantless arrest claims.[2] Plaintiffs seek relief that exceeds the *Sanchez Alfaro* injunction in both nature and scope.

First, the *Sanchez Alfaro* injunction was entered as relief for an individual petitioner. And while the court recognized that it "might have the practical effect of benefiting nonparties[,]" 2026 WL 1382985 at *3 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025)), it has not had that effect, *see supra* II. Moreover, class members are not parties to the *Sanchez Alfaro* judgment and have no legal or practical ability to enforce its terms. The injunction also binds only ICE, whereas Plaintiffs seek relief on behalf of a class against several government agencies.

Second, the relief differs in kind. *Sanchez Alfaro*'s injunction directs ICE to obtain valid warrants in advance of an arrest or otherwise comply with § 1357(a)(2). In addition to seeking injunctive relief, Plaintiffs' APA claims ultimately seek to vacate the policy itself under 5 U.S.C. § 706.

Third, the injunction does not specify what the escape determination in § 1357(a)(2) requires, and the parties disagree on that question. *Compare* DE 89 at 5-7, *with* DE 90 at 7-11. Defendants rely on the escape risk assessment in the Lyons Memo, which Plaintiffs have shown is insufficient. *See* DE 59 at 3-6, 25-27; DE 90 at 7. Plaintiffs therefore seek relief clarifying that § 1357(a)(2) requires an individualized determination, made before the arrest on facts known to the officer, and directing that each determination be documented. DE 1, Compl. ¶ 118 & at 92-94; DE 21-1. The *Sanchez Alfaro* injunction does neither. Without a contemporaneous record of the facts supporting the escape determination, compliance cannot be monitored or enforced.

---

[1] The only such declaration submitted was withdrawn. DE 53, 62.

[2] Plaintiffs also bring claims related to Defendants' policy and practice of making unlawful stops. DE 1 at 86-87.

Finally, the injunction is limited to ICE arrests "in this judicial district." *Sanchez Alfaro*, 2026 WL 1382985, at *3. Plaintiffs—many of whom do not reside in this district—seek relief for a class of individuals arrested anywhere in New York, against Defendants who continue to conduct unlawful stops and arrests across the State.[3] *See supra* II.

The *Sanchez Alfaro* injunction confirms Plaintiffs' position and demonstrates the continued need for the relief they seek.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

By: *s/Amy Belsher*
Amy Belsher
Wafa Junaid
Jessica Perry
Molly K. Biklen
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300

Copy to:
All counsel of record
*Via ECF*

[3] ICE's New York Field Offices operate across multiple judicial districts.

WORD COUNT CERTIFICATION

I hereby certify that the foregoing letter is 1,500 words, not including the address or signature blocks or this certification.

/s/ *Amy Belsher*